# EXHIBIT D

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

### SUBPOENA DUCES TECUM

**TO:** Arthrex, Inc.

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Gregg Shapiro, an official of the United States Department of Justice, and you are hereby required to bring with you and produce the following:*

See Attachment A

*which are necessary in the performance of the responsibility of the United States Department of Justice to investigate Federal health care offenses, defined in 18 U.S.C. § 24(a) to mean violations of, or conspiracies to violate: 18 U.S.C. §§ 669, 1035, 1347, or 1518; and 18 U.S.C. §§ 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 if the violation or conspiracy relates to a health care benefit program (defined in 18 U.S.C. § 24(b)).*

**PLACE AND TIME FOR APPEARANCE:**
United States Attorney's Office, 2110 First Street, Suite 3-137, Ft. Myers, FL 33901, on February 7, 2020, at 10 o'clock A.M, or, at your option, the documents may be mailed to the Assistant United States Attorney listed at:

> Gregg Shapiro
> United States Attorney's Office,
> John Joseph Moakley United States Courthouse, Suite 9200
> 1 Courthouse Way
> Boston, MA 02210

if received prior to the date and time for appearance.

Failure to comply with the requirements of this subpoena will render you liable to proceedings in the district Court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Sec. 248 of the Health Insurance
Portability & Accountability Act of 1996, Public Law No. 104-91
(18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

*Amanda Strachan, Health Care Fraud Chief, the undersigned official of the UNITED STATES DEPARTMENT OF JUSTICE, has hereunto set her hand this 31st day of January, 2020.*

_____
(SIGNATURE)

FORM CRM-180
MAR.. 97

# ATTACHMENT A

**I.    DEFINITIONS**

A.    "Document(s)" means, without limitation, any written, printed, typed, photographed, recorded, transcribed, taped, filmed, or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of documents contemporaneously or subsequently created which have any non-conforming notes or other markings, including any additions, deletions, alterations, or notations, as well as the backsides of any communication or representation which contains any of the above. "Document" also includes all attachments, enclosures, or other matter affixed to or incorporated by reference within documents responsive to this Attachment, including, but not limited to, any pages that show who reviewed, approved, or rejected a particular document.

By way of example, "document(s)" includes, but is not limited to: writings; correspondence; memoranda; notes; drafts; records; files; letters; envelopes; messages; electronic mail; electronic messages; text messages; instant messages; analyses; agreements; accounts; working papers; reports and summaries of investigations; trade letters; press releases; comparisons; books; ledgers; journals; bills; vouchers; checks; statements; worksheets; summaries; notices; drawings; diagrams; graphic presentations; instructions; manuals; calendars; diaries; telephone message records or logs; routing slips; activity reports; articles; magazines; newspapers; brochures; guidelines; notes or minutes of meetings or of other communications of any type, including inter- and intra-office or Company communications; reports; plans; questionnaires; forecasts; briefing materials; surveys; charts; graphs; diagrams; compilations;

computations; photographs; films or videos; tapes; discs; data cells; databases; spreadsheets; software; bulletins; voice mails; information stored or maintained by electronic data processing or word processing equipment; electronic claims filings; invoices; computer and network activity logs; all other data compilations from which information can be obtained, including electromagnetically sensitive stored media such as floppy disks, hard disks, hard drives, and magnetic tapes; Web pages; any preliminary versions, drafts, or revisions of any of the foregoing; and all attachments to any of the items set forth in this paragraph.

    B.    "You," the "Company," or "Arthrex" means any and all of the following:

        1.    the entity on which this subpoena was served, irrespective of the name under which it has operated;

        2.    Arthrex, Inc., and any of its predecessors, successors, parents, subsidiaries, affiliates, segments, departments, branches, groups, operations, units, and divisions, both presently existing and those which previously existed, as well as any joint ventures of which any of them is a part;

        3.    each of the Company's present or former officers, directors, representatives, employees, attorneys, consultants, contractors, or agents acting or purporting to act or appearing to act on behalf of the Company, whether or not their actions were authorized by the Company or were within the proper scope of their authority.

    C.    "Employee" means any person, including but not limited to any independent contractor or agent, all past and present directors, officers, agents, representatives, attorneys, accountants, advisors, and consultants who acted or purported to act on behalf of the Company

or who have performed any service for the Company or under its name (whether on a full-time, part-time, piece-work, commission, or other basis, and whether paid or unpaid).

    D.    "Person" includes within its meaning natural persons and corporations, companies, partnerships, unincorporated business associations, and any other entity composed of natural persons.

    E.    "Concerning" means referring to, evidencing, describing, or constituting.

    F.    "Communication" means any transmission or exchange of information between two or more persons orally or in writing and includes, without limitation, any conversation or discussion, whether face-to-face or by means of telephone or other media, whether by chance or by design.

## II. INSTRUCTIONS

    A.    If a claim of privilege is asserted in response to any document requested by this subpoena, and such document, or any part thereof, is not produced on the basis of such claim, for each such document or part thereof that is not produced, you are directed to provide a privilege log wherein you identify the type of document being withheld (*e.g.*, letter, memorandum, handwritten notes, marginalia, etc.), all actual and intended recipients of the document, its date, and the specific privilege being asserted, all with sufficient particularity so as to allow the Department of Justice, and potentially the Court, to assess the validity of the claim of privilege.

    B.    The words "and" and "or" in this subpoena shall be read in both the conjunctive and the disjunctive (*i.e.*, "and/or"), so as to give the document request its broadest meaning.

    C.    The term "any" shall be construed to include the word "all" and the term "all" shall be construed to include the word "any."

D. Scope of search required: This subpoena calls for all documents in your possession, custody or control, including, but not limited to, your officers, directors, employees, agents, consultants and contractors. You are required to search all files, including electronic sources, reasonably likely to contain responsive documents, including files left behind by former officers, directors, agents and employees.

E. Manner of production: All documents produced in response to this subpoena shall comply with the following instructions:

1. You shall conduct a search for responsive documents in a manner sufficient to identify the source and location where each responsive document is found.

2. To the extent that documents are found in file folders, computer disks, hard drives and/or other storage media which have labels or other identifying information, the documents shall be produced with such file folder and label information intact.

3. To the extent that documents are found attached to other documents, by means of paper clips, staples or other means of attachment, such documents shall be produced together in their condition when found.

F. In the event there are no documents responsive to a particular request, please specify that you have no responsive documents.

G. If you know of documents you once possessed or controlled, but no longer possess or control, which would have been responsive to this subpoena, state what disposition

was made of such documents, including identification of the persons who are or are believed to be in possession or control of such documents currently.

H. To facilitate the handling and return of the submitted documents, please mark each page with an identifying logo or the first three letters of your Company's name and number each page sequentially beginning with "000001." The marks should be placed in the lower right hand corner of each page but should not obscure any information on the document.

### III. DOCUMENTS TO BE PRODUCED

1. For the period from January 1, 2013, through the present, documents sufficient to show all royalties, consulting fees, and other remuneration Arthrex has paid to any physician or to any entity owned or controlled by one or more physicians.

2. All documents that Arthrex has produced to any party in *Joseph B. Shea v. Dr. Peter Millett, ALM Research LLC*, No. 1:17-cv-12233-ADB (D. Mass.).

3. For the period from January 1, 2010, through the present, all documents concerning Dr. Peter Millett or ALM Research, LLC ("ALM"). The requested documents include, without limitation, (1) all communications with or concerning Dr. Millett or ALM, and (2) all documents concerning services Dr. Millett or ALM performed on behalf of Arthrex.

4. For the period from January 1, 2010, through the present, all Arthrex policies concerning the anti-kickback statute.

5. For the period from January 1, 2010, through the present, all Arthrex policies concerning the payment of royalties, consulting fees, and other remuneration to physicians.

6. For the period from January 1, 2010, through the present, all documents concerning any analysis or assessment of whether remuneration that Arthrex paid, or considered paying, to a physician was compliant with the anti-kickback statute or an Arthrex policy.

7. For the period from January 1, 2010, through the present, all documents concerning any analysis or assessment of the fair market value of services Arthrex received, or expected to receive, from a physician or physician-controlled entity that Arthrex remunerated.