## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARTHREX, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION. NO: 1:22-cv-00465 |
| | ) | CFC |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA, and | ) | JURY TRIAL DEMANDED |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

**BLANK ROME LLP**

Larry R. Wood, Jr. (No. 3262)
Adam V. Orlacchio (No. 5520)
Anna E. Currier (No. 6271)
James G. Gorman (No. 6284)
1201 N. Market St., Suite 800
Wilmington, DE  19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
larry.wood@blankrome.com
adam.orlacchio@blankrome.com
anna.currier@blankrome.com
james.gorman@blankrome.com

OF COUNSEL
Justin F. Lavella (*Pro Hac Vice*)
Alexander H. Berman (*Pro Hac Vice*)
1825 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 420-4834
Facsimile: (202) 379-9046
justin.lavella@blankrome.com
alex.berman@blankrome.com

*Counsel for Plaintiff Arthrex, Inc.*

## **TABLE OF CONTENTS**

Page

NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ............................................................................... 1

STATEMENT OF FACTS .................................................................................... 2

ARGUMENT ...................................................................................................... 4

    I.      Legal Standards ................................................................................... 4

    II.     The First-Filed Rule Supports Retaining Jurisdiction ......................... 6

    III.    The *Jumara* Factors Support Retaining Jurisdiction .......................... 9

          1.     Arthrex's Forum Preference ..................................................... 9

          2.     Insurers' Preference ................................................................. 9

          3.     Whether Claim Arose Elsewhere ............................................. 9

          4.     Convenience Given Parties' Relative Physical and
                  Financial Conditions ............................................................. 11

          5.     Convenience of Witnesses ...................................................... 12

          6.     Location of Books and Records ............................................... 14

          7.     Enforceability of Judgment .................................................... 14

          8.     Considerations Making Trial Easy, Expeditious, or
                  Inexpensive ........................................................................... 15

          9.     Relative Administrative Difficulty Resulting from Court
                  Congestion ............................................................................ 16

          10.    Interest in Deciding Local Controversies at Home ................... 16

          11.    Public Policies of Fora ............................................................ 17

          12.    Familiarity of Trial Judge with Applicable State Law ............. 19

    IV.    Interests of Justice Weigh Strongly Against Transfer ....................... 20

CONCLUSION ................................................................................................. 21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F.Supp.2d 192 (D. Del. 1998)......................................................................12

*Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
    No. CV18-1510 (MN), 2019 WL 2117647 (D. Del. May 15, 2019) .........*passim*

*Chase Manhattan Bank v. Freedom Card, Inc.*,
    265 F.Supp.2d 445 (D. Del. 2003)......................................................................7

*Crosley Corp. v. Hazeltine Corp.*,
    122 F.2d 925 (3d Cir. 1941) ...............................................................................6

*Datex-Ohmeda Inc. v. Hill-ROM Servs., Inc.*,
    185 F.Supp. 2d 407 (D. Del. 2002).....................................................................7

*EEOC v. Univ. of Penn.*,
    850 F.2d 969 (3d Cir. 1988) ...........................................................................1, 7

*Excentus Corp. v. Kroger Co.*,
    No. 3:10-CV-0483-B, 2010 WL 3606016 (N.D. Tex. Sept. 16,
    2010) ...................................................................................................................7

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990)......................................................................2, 20, 21

*FG SRC LLC v. Xilinx, Inc.*,
    No. CV20-601-LPS, 2021 WL 495614 (D. Del. Feb. 10, 2021) .......................12

*Gielata v. Heckmann*,
    No. CIV.A. 10-378-LPS-MP, 2010 WL 3940815 (D. Del. Oct. 6,
    2010) ...............................................................................................................5, 8

*Hiscox Insurance Co., Inc. v. Bollea*,
    No. 8:20-CV-221-T-30SPF, 2020 WL 5878212 (M.D. Fla. Mar.
    31, 2020) ...........................................................................................................21

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) .......................................................................*passim*

*Lighting Science Group Corp. v. Liberty Ins. Underwriters, Inc.*,
   C.A. No. 16-725-LPS (D. Del. Feb. 15, 2017)......................................................9

*Matsushita Battery Industrial Co. v. Energy Conversion Devices, Inc.*,
   1996 WL 328594 (D. Del. Apr. 23, 1996) ...........................................................7

*Navisiontech, Inc. v. Pet Specialties, LLC*,
   No. 8:18-CV-2643-MSS-JSS, 2019 WL 13020776 (M.D. Fla. July
   8, 2019) ...................................................................................................................7

*P Tech, LLC v. Arthrex, Inc.*,
   No. CV21-968 (MN), 2022 WL 1490733 (D. Del. May 11, 2022) ...........*passim*

*Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   No. CV21-01403-CFC, 2022 WL 1063845 (D. Del. Apr. 8, 2022)...........*passim*

*Ross v. Institutional Longevity Assets LLC*,
   No. CV12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20,
   2013) .....................................................................................................................19

*RSUI Indem. Co. v. Murdock*, 248 A.3d 887 (Del. 2021) .................................11, 18

*Salperto v. Pohlad*,
   No. CIV.A. 93-167 MMS, 1994 WL 794756 (D. Del. Jan. 6, 1994)...............5, 8

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ................................................................5, 6, 9, 22

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)........................................................................................20, 21

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
   386 F.3d 581 (4th Cir. 2004) ..............................................................................21

*Whalen v. On-Deck, Inc.*,
   514 A.2d 1072 (Del. 1986) .................................................................................18

**Statutes**

8 Del. C. § 145 .........................................................................................................10

28 USC § 1404(a) ....................................................................................*passim*

Fla. Stat. § 624.155 ...............................................................................15

## Other Authorities

Fed. R. Civ. P. 15(a)(2)..........................................................................15

Fed. R. Civ. P. 45 ..................................................................................13

## NATURE AND STAGE OF PROCEEDINGS

Arthrex, Inc., purposefully brought this insurance coverage action in Delaware, one of its two home jurisdictions along with Florida, the state of its principal place of business.  Approximately 24 hours after Arthrex filed this suit, the defendant insurance companies ("Insurers") filed their own declaratory judgment suit on the same dispute in the Middle District of Florida, no. 2:22-cv-00226 ("Florida Action").  Prior to any merits briefing in either case, the Insurers, whose states of incorporation and principal places of business are variously in Pennsylvania, New York, Indiana, and New Jersey, seek to transfer this matter to the Middle District of Florida under 28 USC §1404(a).  Arthrex opposes this motion because the §1404(a) considerations, including the first-filed rule and the interests of justice, weigh strongly against transfer.  Arthrex has filed its own motion to transfer in the Florida Action.

## SUMMARY OF ARGUMENT

The Court should decline to transfer for three reasons:

1.    This action was filed before the Florida Action, involves the same parties and substantially the same issues, and there are no extraordinary circumstances militating departure from the well-settled first-filed rule.  *EEOC v. Univ. of Penn.,* 850 F.2d 969, 971-72 (3d Cir. 1988) ("first filed" rule promotes

1

"sound judicial administration" and should not be disturbed absent "rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping").

2.    The factors presented in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) weigh in favor of keeping this case in Delaware.  Many of the factors the Insurers argue support transfer to Florida—such as where the claims arose and the convenience of non-party witnesses—point to jurisdictions that *neither* party is arguing is the appropriate forum, such as Massachusetts, New York, and Pennsylvania.

3.    The interests of justice weigh strongly against transfer, which is designed to be no more than a "change of courtrooms" in the interest of justice and efficiency that does not impact the substantive rights of the parties.  *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).  However, with the Insurers' second-filed declaratory judgment claim pending in the Middle District of Florida, transfer of this case could throw into jeopardy whether Arthrex is entitled to the Delaware choice-of-law framework it chose as the "natural" or "true" plaintiff seeking monetary damages, in direct contravention of the policies underpinning §1404(a).

## STATEMENT OF FACTS

The Insurers issued D&O insurance policies to Arthrex for the policy period April 26, 2019 to April 26, 2020 ("AIG Policy" and "Chubb Policy," respectively, and collectively, "D&O Policies").  The complaint in this action ("Complaint") was

filed on April 9, 2022, and asserts claims for breach of contract and breach of the implied duty of good faith and fair dealing arising out of the Insurers' wrongful denial of coverage. (Compl. ¶¶155, 162)

In January 2020, the United States Attorneys' Office for the District of Massachusetts ("DOJ") began investigating Arthrex by issuing two subpoenas ("Subpoenas") to Arthrex, for potential "federal healthcare offenses." (ECF 1-4, 1-5). The Subpoenas were issued from Massachusetts (*id.*), which is also where the Arthrex produced its responsive documents. (Declaration of Justin F. Lavella, attached as Exhibit A ("Decl.") ¶8).

Arthrex noticed the Subpoenas as "Claims" under the D&O Policies. (Compl. ¶¶95-96). AIG denied coverage from its corporate offices in New York. (ECF 1-7). Arthrex told the Insurers that the Subpoenas almost certainly arose from a pending, but sealed, *qui tam* lawsuit. (Compl. ¶105, 122).

On November 4, 2021, Arthrex reached a settlement with the DOJ to resolve the investigation and the *qui tam* lawsuit ("Settlement"). (*See* ECF 1-6). Upon its unsealing, Arthrex forwarded the *qui tam* complaint to the Insurers. (Decl. ¶2). The Insurers have not reimbursed any of the millions of dollars in Defense Costs incurred in connection with the Subpoenas, the *qui tam* complaint, or the Settlement, paying only $103,603.00 in supposed "Pre-Claim Inquiry" costs. (Compl. ¶151).

As required by the D&O Policies, Arthrex engaged in non-binding mediation, which was initiated and concluded without resolution on February 8, 2022. (Compl. ¶¶136-38). After the 60-day "cooling off" period, Arthrex commenced this litigation on April 9, 2022. Just over twenty-four hours later, the Insurers filed the competing Florida Action. (Decl. ¶¶3-4). The parties in the Florida Action are identical to those here. (**Ex. A1** ¶¶5-7). The issues presented by the Florida Action—whether the D&O Policies provide insurance coverage for the Subpoenas, *qui tam* action, and Settlement—are fully encompassed within Arthrex's breach of contract claim here. (Compl. ¶¶147-56). However, this action also presents a claim for bad faith against the Insurers, not addressed by the Florida Action. (*Id.* ¶¶158-63).

## ARGUMENT

### I.    Legal Standards

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The Third Circuit has stated that this analysis is not limited "to the three enumerated factors in §1404(a)," but also includes at least twelve "private and public interests":

> Plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the

4

> location of books and records (similarly limited to the extent
> that the files could not be produced in the alternative forum).
>
> . . .
>
> [T]he enforceability of the judgment; practical considerations
> that could make the trial easy, expeditious, or inexpensive;
> the relative administrative difficulty in the two fora resulting
> from court congestion; the local interest in deciding local
> controversies at home; the public policies of the fora; and the
> familiarity of the trial judge with the applicable state law in
> diversity cases.

*Jumara*, 55 F.3d at 879-80.

The *Jumara* factors are not an exhaustive list.  As the Third Circuit noted, a court should "consider all relevant factors" because "there is no definitive formula or list."  *Id.* at 879.  One such relevant factor is whether the case sought to be transferred is the first-filed action when two competing cases have been initiated. *Gielata v. Heckmann*, No. CIV.A. 10-378-LPS-MP, 2010 WL 3940815, at *5, n.92 (D. Del. Oct. 6, 2010) (first-filed nature of case is a "consideration that weighs against transfer"); *Salperto v. Pohlad*, No. CIV.A. 93-167 MMS, 1994 WL 794756, at *3 (D. Del. Jan. 6, 1994) (same).

A district court's analysis is discretionary, and applies on "an individualized, case-by-case basis."  *Jumara*, 55 F.3d at 883.  However, the burden rests with the moving party "to establish that a balancing of proper interests weigh[s] in favor of transfer."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  And this burden is weighted heavily against the movant:  "unless the balance of convenience

of the parties is ***strongly*** in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis added).

Here, the parties agree that this action "might have been brought" in the Middle District of Florida. However, the first-filed rule, the *Jumara* factors, and the broader interests of justice all militate against transfer.

## II.   The First-Filed Rule Supports Retaining Jurisdiction

Under the first-filed rule, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941). "[I]nvocation of the rule will usually be the norm, not the exception. Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *Id.* at 979.

Here, the Insurers do not dispute that (1) this action was filed before the Florida Action, (2) the parties are identical, (3) the issues are largely the same, and (4) no "exceptional circumstances" apply to defeat the first-filed rule. Instead, the Insurers argue that the first-filed rule should not apply because the parties' respective filings were close together in time (Insurers' Opening Brief ("Br."), at 8), and that application of the first-filed rule could create "inconsistent" results with prior case law (Br., at 10-11). The Insurers are wrong on both points.

First, this Court has routinely applied the first-filed rule even when the second-filed case was filed a day or less after the first. *Chase Manhattan Bank v. Freedom Card, Inc.*, 265 F.Supp.2d 445, 447, 451 (D. Del. 2003) (actions filed one and a half hours apart); *Datex-Ohmeda Inc. v. Hill-ROM Servs., Inc.*, 185 F.Supp. 2d 407, 408, 412 (D. Del. 2002) (actions filed same day); *Matsushita Battery Industrial Co. v. Energy Conversion Devices, Inc.*, 1996 WL 328594, at *2-3 (D. Del. Apr. 23, 1996) (actions filed one day apart). Therefore, the fact that this proceeding was filed slightly more than 24 hours before the Florida Action does not affect the applicability of the first-filed rule.

The Delaware state cases cited by the Insurers are inapposite. The first-filed rule is inherently a procedural rule governed by regional federal law. *See Univ. of Penn.*, 850 F.2d at 971. Thus, state rules on the *Delaware* first-filed rule are irrelevant to the application of the *federal* first-filed rule at issue here. The Insurers' cherry-picked out-of-Circuit federal cases are similarly irrelevant, as numerous other out-of-Circuit cases favor application of the first-filed rule under these circumstances. *See, e.g.*, *Navisiontech, Inc. v. Pet Specialties, LLC*, No. 8:18-CV-2643-MSS-JSS, 2019 WL 13020776, at *3 (M.D. Fla. July 8, 2019) (applying first-filed rule to filings "a few hours" apart); *Excentus Corp. v. Kroger Co.*, No. 3:10-CV-0483-B, 2010 WL 3606016, at *3 (N.D. Tex. Sept. 16, 2010) (filings two hours and six minutes apart).

7

Second, the Insurers provide no authority for their suggestion that this Court should ignore the first-filed rule entirely lest it create "inconsistent" results with prior §1404(a) cases "where the only difference is that the Insurers in this case filed a competing action in a different district." Br. at 11-12. To the contrary, the fact that there are two competing actions distinguishes this situation from the precedent on which the Insurers rely. *Id.* (relying predominantly on *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. CV21-01403-CFC, 2022 WL 1063845 (D. Del. Apr. 8, 2022)). As discussed in Section IV, *infra*, the Insurers' suggestion that the Florida Action is irrelevant to the Court's analysis wrongly minimizes the profound impact its pendency may have on the parties' substantive rights in direct contravention of the interests of justice and the policy underpinnings of §1404(a). The Insurers' remaining cases simply stand for the unremarkable proposition that a first-filed case is not immunized from transfer under §1404(a). Br. at 8, 11. However, this authority does not contest that a proceeding being first-filed remains an important "consideration that weighs against transfer." *Gielata*, 2010 WL 3940815, at *5, n.92; *Salperto*, 1994 WL 794756, at *3 (under §1404(a) "district courts consider various factors, including ... first-filed rule").

## III.   The *Jumara* Factors Support Retaining Jurisdiction

### 1.   Arthrex's Forum Preference

As this Court recently noted, "binding Third Circuit law compels [this Court] to treat [Arthrex's] forum choice as 'a ***paramount consideration'*** in the §1404(a) balancing analysis." *Paycom*, 2022 WL 1063845, *3 (citing *Shutte*, 431 F.2d at 25). As a Delaware corporation, Arthrex's supposed lack of physical presence in Delaware does not lessen the weight of this factor.  *See id.*; *P Tech, LLC v. Arthrex, Inc.*, No. CV21-968 (MN), 2022 WL 1490733, at *3 (D. Del. May 11, 2022).  Thus, Arthrex's choice to litigate in Delaware is entitled to paramount consideration and strongly weighs in favor of denying the Insurers' motion.

### 2.   Insurers' Preference

The Insurers prefer to transfer this case to the Middle District of Florida. However, while this factor self-evidently weighs in favor of transfer, the Insurers have presented no authority supporting the position that this factor should receive any particular significance.

### 3.   Whether Claim Arose Elsewhere

This factor is neutral.  Insurance disputes have been determined to have "arisen" variously where the policy was negotiated and executed; where the claim against the insured was "pursued" (*Calamos Asset Mgmt., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. CV18-1510 (MN), 2019 WL 2117647, at *3 (D. Del. May 15, 2019); and where the coverage denial occurred (*Lighting Science Group Corp. v.*

9

*Liberty Ins. Underwriters, Inc.*, C.A. No. 16-725-LPS, at 44:11-21 (D. Del. Feb. 15, 2017) (bench ruling) (**Ex. A2**)).

Here, none of these tests point to either Florida or Delaware:  (1) Arthrex's insurance broker negotiated with the Insurers from Philadelphia (ECF 21, ¶4); (2) the *qui tam* lawsuit and DOJ investigation were "pursued" in Massachusetts which is where Arthrex produced its responsive documents (ECF 1-3, 1-4, 1-5 (*qui tam* complaint and Subpoenas all filed/issued in Massachusetts); Decl. ¶8); and (3) AIG's denial of coverage occurred in New York (ECF 1-7).

Despite the Insurers' statements to the contrary, significant conduct giving rise to this dispute arose in Delaware, the jurisdiction governing both Arthrex's indemnification obligation toward its executives and its ability to insure that obligation through the D&O Policies.  8 Del. C. §145.  Accordingly, the harm arising from the Insurers' denial of coverage to a Delaware corporation, for its obligations under Delaware law, under a policy authorized by Delaware law, occurred equally in Delaware as it did in Florida.

Ignoring these facts, the Insurers erroneously argue that the "relevant" facts are that Arthrex received the Subpoenas in Florida, and Arthrex "was a resident of the transferee state."  Br. at 13-14 (citing *Paycom*, 2022 WL 1063845, at *3-4).  The Insurers are wrong on both accounts.  Only one of the Subpoenas was received in Florida; the second was received in Massachusetts.  (Decl. ¶5-6).  And Arthrex is

equally a resident of both Delaware and Florida. *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, at 901 (Del. 2021).[1]

The Insurers' statement that these facts are "identical" to those in *Paycom* is also incorrect. The *Paycom* court did not address whether the policyholder was a resident of the transferee state, but instead, where "the insurance policies were issued to [the policyholder]." 2022 WL 1063845, at *4. Unlike *Paycom*, Arthrex's policies were not issued in the transferee state, but to Arthrex's insurance broker in Pennsylvania and New York, respectively. (**Exs. A3, A4**).

Thus, this factor is, at best for the Insurers, neutral.

### 4.     Convenience Given Parties' Relative Physical and Financial Conditions

Arthrex "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is ***most*** convenient for it." *Calamos*, 2019 WL 2117647, at *3. Indeed, this Court recently ***rejected*** Arthrex's assertion in a separate litigation that the Middle District of Florida would be more convenient than this district. *Arthrex*, 2022 WL 1490733, at *4.

---

[1] Also mentioned by the Insurers, though not within the facts they describe as "relevant," are that the Subpoenas were returnable in Florida, and the DOJ's sole interview of Arthrex was of a Florida-based executive. Br. at 13. However, while both Subpoenas were returnable in Massachusetts *or* Florida (ECF 1-4, 1-5), Arthrex actually produced its responsive documents from and to Massachusetts. (Decl. ¶8). Moreover, the DOJ interview occurred in Massachusetts. (Decl. ¶7).

Where a defendant "does not argue that [the transferee court] would be more convenient for Defendant and acknowledges that 'litigating in Delaware would likely not impose a severe financial hardship on either side,' this factor weighs against transfer." *Calamos*, 2019 WL 2117647, at *3.  Here, the Insurers are quick with concern for Arthrex's convenience, but are conspicuously silent about their own.  The Insurers' principal places of business are in New York and New Jersey, states significantly closer to Delaware than to Florida.  Because litigating here would be easier for the Insurers than litigating in Florida (or at least, no harder), this factor is either neutral or weighs against transfer.

### 5.   Convenience of Witnesses

This factor weighs against transfer, as there are more potentially-unavailable witnesses within the subpoena power of this Court than within the subpoena power of the Middle District of Florida.  This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  "[W]itnesses who are employed by a party carry no weight" because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 203 (D. Del. 1998).

As an initial matter, the Insurers do not attempt to carry their burden of showing that any "non-party witnesses would refuse to testify" at trial.  *FG SRC LLC v. Xilinx, Inc.*, No. CV20-601-LPS, 2021 WL 495614, at *5 (D. Del. Feb. 10, 2021).

For this reason alone, this factor cannot weigh in favor of transfer.  But even if the Insurers had attempted to satisfy their burden, this factor would still weigh against transfer.  First, almost all of the witnesses the Insurers identify are Arthrex employees.  Unlike in *Paycom*, Arthrex **guarantees** the attendance of employees at trial in Delaware as necessary, and therefore, Arthrex's employees' convenience is irrelevant.[2]

The Insurers identify only *one* non-party-employee witness—Dr. Jeffrey Wyman—who is within the subpoena power of the Middle District of Florida.  The remaining non-party witnesses the Insurers discuss (Br. at 15; ECF 21 at ¶¶5(e)-(j), 6(d)-(h)) are, with one exception, outside the 100-mile subpoena range of *either* court, and therefore have no bearing on this factor.  The exception is the Insurers' reference to "District of Columbia-based federal prosecutors."  Br. at 15.  The District of Columbia is within a 100-mile radius of the Wilmington courthouse, but well beyond 100 miles of any Florida courthouse.  The Insurers have therefore

---

[2] The Insurers have not guaranteed the attendance of their employees at trial in Delaware or Florida.  To the extent they decline to do so, Arthrex notes that Chubb's principal place of business is within Rule 45's 100-mile radius of the Wilmington courthouse, but beyond 100 miles of any Florida courthouse.  While AIG's New York corporate headquarters are just beyond the 100-mile radius, it is possible, and perhaps likely, that some employees live in New Jersey and within the applicable radius.

13

conceded that more non-party witnesses are accessible to this Court than to the Florida court.

Moreover, Arthrex anticipates calling multiple witnesses from Arthrex's insurance broker, Aon.  The Insurers have raised the noticing of Claims, including their knowledge of the *qui tam* complaint.  (Ex. A1 ¶¶54-56, 78-79).  Aon's employees have knowledge of and participated in these communications and their testimony is likely to be necessary at trial because the other persons with comparable knowledge are counsel.  (Decl. ¶13).  Moreover, Arthrex understands at least one such witness, Stephen Feick, a former Aon employee, is located in Philadelphia, which is within 100 miles of every courthouse in Delaware.  (Decl. ¶14).  The same cannot be said for Florida.

This factor weighs against transfer because more potentially unavailable witnesses are within this Court's subpoena range than that of the Florida court.

### 6.    Location of Books and Records

There is no reason the relevant documents in this case cannot be produced in any forum.  In fact, many of the Insurers' identified documents have already been exchanged and have been attached to the Complaint.  This factor is therefore neutral. *Paycom*, 2022 WL 1063845, at *4; *Calamos*, 2019 WL 2117647, at *4.

### 7.    Enforceability of Judgment

The parties agree this factor is neutral.

14

### 8.      Considerations Making Trial Easy, Expeditious, or Inexpensive

This factor weighs against transfer.  Arthrex's damages claims in this case include breach of contract and breach of the implied duty of good faith and fair dealing.  (Compl. ¶¶147-63).  If the Court decides to transfer this case to the Middle District of Florida, Arthrex will, practically speaking, be forced to seek leave to amend the pleadings in the Florida Action (Fed. R. Civ. P. 15(a)(2)) to add a counterclaim asserting Arthrex's right to money damages.  In addition, before Arthrex will be able to assert its bad faith claim, it will first have to comply with a Florida statutory requirement to provide the Florida Department of Financial Services with a detailed notice of the bad faith claim and wait 60 days before seeking its civil remedy.  Fla. Stat. § 624.155(1)(b)-(3)(b).  Arthrex's counterclaims would then necessitate responsive pleadings or motions from the Insurers.  By contrast, these time-consuming administrative steps may be avoided entirely if the court declines transfer, as Arthrex's damages claims are fully pleaded, the Insurers have Answered, and this case is otherwise ready to move beyond the pleading stage.

The Insurers' repetition of the same points in support of this factor that they have used for prior factors is unavailing.  They again emphasize that Arthrex's headquarters is in Florida, and thus Florida is home to employee witnesses and where documents are kept.  Br. at 17.  But when contentions "have been raised, in the same way, as to other *Jumara* factors," the Court "will not 'double-count' them."  *Arthrex*,

15

2022 WL 1490733, at *5.  Moreover, unlike in *Paycom*, Arthrex will (and must) procure its employees for trial at its expense, meaning the Insurers will not be incurring any such expenses.  Thus, this factor weighs against transfer.

### 9.    Relative Administrative Difficulty Resulting from Court Congestion

This factor is neutral.  Arthrex is cognizant of this Court's heavy and complex caseload.  However, the disparity between this Court's caseload and the caseload in the Middle District of Florida is significantly less than the disparity with the Western District of Oklahoma discussed in *Paycom*.  Importantly, in a decision issued just this month, this Court performed this same analysis between the same competing fora and concluded that this factor was neutral.  *Arthrex*, 2022 WL 1490733, at *5.  Moreover, since the *Paycom* decision was issued, Gregory P. Williams has been nominated to fill the judicial vacancy left by the elevation of Judge Stark.

### 10.    Interest in Deciding Local Controversies at Home

This Court has acknowledged that, when a Delaware corporation is involved, Delaware has an interest in resolving the dispute.  *Calamos*, 2019 WL 2117647, at *5.  Similarly, this "is also not a matter of local interest to [Florida].  Although Plaintiff is headquartered there, Defendant[s are] not.  Therefore, it is not a 'local controversy' in" the Middle District of Florida.  *Id.*  Moreover, this Court recently held that Arthrex's "global" nature renders it "not a 'local' company in the Middle

District of Florida such that local interests" are implicated. *Arthrex*, 2022 WL 1490733, at *5.

The Insurers ignore this on-point case law and again argue incorrectly that the considerations here are "essentially identical to those before this Court in *Paycom*." Br. at 19. But the *Paycom* decision for this factor rested on the fact that "the insurance policies in question were issued in Oklahoma" and that "Oklahoma has an interest in deciding a dispute that concerns insurance policies issued within its boundaries by a company headquartered in Oklahoma." *Paycom*, 2022 WL 1063845, at *6. Here, by contrast, the D&O Policies at issue were issued from Pennsylvania and Connecticut to Arthrex's broker in Pennsylvania and New York. (**Exs. A3, A4.**).[3] At best for the Insurers, this factor is neutral.

### 11.    Public Policies of Fora

This factor weighs heavily against transfer.  Florida and Delaware have directly opposing public policies impacting this litigation.  Specifically, as the Insurers highlight, Florida in certain circumstances has a public policy against the insurability of certain types of losses, including punitive damages.  Br. at 12. However, notwithstanding the Insurers' unsupported assertions to the contrary, the

---

[3] The Insurers mention the "Florida amendatory endorsement" in the AIG Policy (Br. at 19) but fail to explain its relevance to this factor beyond containing the word "Florida."

Delaware Supreme Court has repeatedly affirmed that Delaware's paramount public

policy is the freedom of contract, and thus that such "losses" are insurable:

> [W]hen parties have ordered their affairs voluntarily through a
> binding contract, Delaware law is strongly inclined to respect
> their agreement, and will only interfere upon a strong showing
> that dishonoring the contract is required to vindicate a public
> policy interest even stronger than freedom of contract. Such
> public policy interests are not to be lightly found, as the wealth-
> creating and peace-inducing effects of civil contracts are
> undercut if citizens cannot rely on the law to enforce their
> voluntary-undertaken mutual obligations.
>
> The question here then is: does our State have a public policy
> against the insurability of losses occasioned by fraud so strong
> as to vitiate the parties' freedom of contract? We hold that it
> does not.

*Murdock*, 248 A.3d at 903; *see also Whalen v. On-Deck, Inc.*, 514 A.2d 1072, 1074

(Del. 1986) (punitive damages not uninsurable "in light of the importance of the

right of parties to contract as they wish"). Thus, the public policies of Florida and

Delaware conflict in a manner impacting coverage. *See* Answer, Ninth Defense

(ECF 17 at 37).

Because of these opposing public policies, this factor would normally be

neutral. However, the D&O Policies specifically state that such losses ***are***

***insurable***—contrary to Florida public policy—if (1) they are insurable under any

jurisdiction to which any party has a substantial relationship (i.e. Delaware as the

state of the Arthrex's incorporation), and (2) the D&O Policies are construed under

the law of *any jurisdiction* other than Florida. ECF 1-1 at 86. Thus, the parties

18

agreed that an exception to Florida's public policy would control the potential insurability of punitive damage. This contractual arrangement itself triggers Delaware's public policy in support of freedom of contract and expressly subordinates Florida's separate public policy. This is also supported by the fact that the D&O Policies required that consideration be given to "the law of the state where [Arthrex] is incorporated" in pre-suit dispute resolution proceedings without mention of Florida law. *Id.* at 17-18. Thus, the parties have contractually agreed that Delaware's public policy is to receive more significant weight in disputes under the D&O Policies. This conflict between the public policies of the fora also reinforces and heightens the critical importance of the ***first*** *Jumara* factor: Arthrex's choice of forum. And unlike *Paycom* where both sides agreed that Delaware choice-of-law rules would apply regardless of where the case would be adjudicated (2022 WL 1063845, at \*6), the pendency of the Florida Action may impact the substantive rights of the parties, adding yet further importance to this factor. Accordingly, this factor weighs strongly in favor of retaining jurisdiction in this case.

### 12.   Familiarity of Trial Judge with Applicable State Law

The parties agree that this factor is neutral, as choice-of-law has not been decided. However, if Delaware law were to apply, this Court "is likely better equipped to interpret Delaware law than might a court based in another State." *Ross*

*v. Institutional Longevity Assets LLC*, No. CV12-102-LPS-CJB, 2013 WL 5299171,

at *15 (D. Del. Sept. 20, 2013).

## IV.     Interests of Justice Weigh Strongly Against Transfer

Unlike *Paycom*, the impact of the Court's ruling here may be substantive as

opposed to merely procedural.  In such circumstances, the interests of justice weigh

strongly against transfer and potentially prejudicing the legal rights of the parties.

In the ordinary course, the transferor court's choice-of-law rules continue to

apply post-transfer.  *Ferens*, 494 U.S. at 519.  The rationale behind this rule goes to

the heart of the *Erie* doctrine:

> The existence of diversity jurisdiction [gives] the defendants the
> opportunity to make a motion to transfer venue under §1404(a),
> and *if the applicable law were to change after transfer, the
> plaintiff's venue privilege and resulting state-law advantages
> could be defeated at the defendant's option*.  To allow the
> transfer and at the same time preserve the plaintiff's state-law
> advantages ... the choice-of-law rules should not change
> following a transfer initiated by a defendant.

494 U.S. at 524-25.  Similarly, in *Van Dusen v. Barrack*, the Supreme Court found

that "[t]he legislative history of §1404(a) certainly does not justify the rather startling

conclusion that one might get a change of law as a bonus for a change of venue."

376 U.S. 612, 636 (1964).

This long-standing rule and its attendant policy concerns are threatened when

a defendant precedes its motion to transfer by filing a declaratory judgment

complaint in the proposed transferee forum.  In such situations, a transferred first-

20

filed case could sit alongside (and perhaps be consolidated with) a separate action governed under the choice-of-law of the *transferee* forum in which it was filed. Therefore, two similar cases would be pending in the same court but potentially governed by different law.  No clear rules exist for escaping this procedural thicket,[4] but in such circumstances, the policy considerations discussed in *Ferens* and *Van Dusen*, and as informed by *Erie*, strongly advocate for retaining jurisdiction.  In short, Arthrex, as the first-filed and natural plaintiff seeking an award of damages,[5] should be entitled to the substantive benefit of the law of the jurisdiction (including choice-of-law rules) in which it chose to file suit.  Any other ruling is inconsistent with *Erie*, the policy considerations behind §1404(a), and the first-filed rule. Accordingly, the interests of justice weigh strongly against transfer.

## CONCLUSION

Five of the twelve *Jumara* factors—including plaintiff's "paramount" choice of forum factor—weigh against transfer (Factors 1, 4-5, 8, and 11); six are neutral (Factors 3, 6-7, 9-10, and 12); and only one weighs in favor of transfer (Factor 2).

---

[4] These issues were discussed by the Fourth Circuit in *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.* though the court ultimately noted that it "need not definitively decide how this thorny issue should be resolved" because the choice-of-law principles at issue were "sufficiently similar."  386 F.3d 581, 600 (4th Cir. 2004).

[5] *See, e.g., Hiscox Insurance Co., Inc. v. Bollea*, No. 8:20-CV-221-T-30SPF, 2020 WL 5878212, at *2 (M.D. Fla. Mar. 31, 2020) (policyholder entitled to its preferred jurisdiction when, among other things, it was the "true plaintiff," and its action was "broader and encompasse[d] [the insurer's] action.").

21

In addition, both the first-filed rule and the interests of justice weigh particularly strongly against transfer when transfer may alter the parties' substantive rights. Because the Insurers have failed to show that the balance is "strongly" in favor of transfer, their motion should be denied. *Shutte*, 431 F.2d at 25.

Dated:  May 26, 2022                              **BLANK ROME LLP**

*/s/ Adam V. Orlacchio*
Larry R. Wood, Jr. (No. 3262)
Adam V. Orlacchio (No. 5520)
Anna E. Currier (No. 6271)
James G. Gorman (No. 6284)
1201 N. Market St., Suite 800
Wilmington, DE  19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
larry.wood@blankrome.com
adam.orlacchio@blankrome.com
anna.currier@blankrome.com
james.gorman@blankrome.com

OF COUNSEL:

Justin F. Lavella (*Pro Hac Vice*)
Alexander H. Berman (*Pro Hac Vice*)
1825 Eye Street, N.W.
Washington, D.C.  20006
Telephone: (202) 420-4834
Facsimile: (202) 379-9046
justin.lavella@blankrome.com
alex.berman@blankrome.com

*Counsel for Plaintiff Arthrex, Inc.*