# EXHIBIT A2

1

1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                        - - -
     LIGHTING SCIENCE GROUP CORPORATION,
4    RICHARD WEINBERG, and GREGORY KAISER,:    CIVIL ACTION
                                         :
5              Plaintiffs,               :
     v                                   :
6                                        :
     LIBERTY INSURANCE UNDERWRITERS, INC.,:
7    STARR INDEMNITY & LIABILITY COMPANY, :
     and CONTINENTAL CASUALTY COMPANY,    :
8                                        :    NO. 16-725-LPS
               Defendants.
9                        - - -

10                   Wilmington, Delaware
                 Wednesday, February 15, 2017
11                   Oral Argument Hearing

12                        - - -

13   BEFORE:    HONORABLE LEONARD P. STARK, Chief Judge

14   APPEARANCES:            - - -

15

               POTTER ANDERSON & CORROON, LLP
16             BY:  DAVID J. BALDWIN, ESQ., and
                    CARLA JONES, ESQ.
17
                   and
18
               MCKOOL SMITH, P.C.
19             BY:  ADAM S. ZIFFER, ESQ.
                    (New York, New York)
20
                       Counsel for Plaintiffs
21

22             DILWORTH PAXSON, LLP
               BY:  THADDEUS J. WEAVER, ESQ.
23
                   and
24

25                         Brian P. Gaffigan
                           Registered Merit Reporter

2

```
 1   APPEARANCES:  (Continued)

 2

 3            WILEY REIN, LLP
          BY:  RICHARD A. SIMPSON, ESQ.
 4            (Washington, District of Columbia)

 5            Counsel for Defendants

 6

 7

 8

 9

10

11

12                      - oOo -
13            P R O C E E D I N G S
14      (REPORTER'S NOTE:  The following oral argument
15   hearing was held in open court, beginning at 11:05 a.m.)
16            THE COURT:  Good morning.
17            (The attorneys respond, "Good morning, Your
18   Honor.")
19
20            THE COURT:  I'll have you put your appearances
21   on the record for us, please.
22            MR. WEAVER:  Thank you, Your Honor.  Good
23   morning.  My name is Thad J. Weaver from the firm of
24   Dilworth Paxson.  I am counsel for defendants Liberty,
25   Continental, and Starr.  I'm actually here on behalf of
```

3

```
 1   Continental and Starr today.  Liberty has informed me that
 2   they take no position on the present motions.  And I'm
 3   pleased to introduce my co-counsel, Mr. Richard Simpson
 4   of the firm of Wiley Rein.  He will be presenting for the
 5   Court, if the Court is okay with that?
 6            And I also wanted to bring to Your Honor's
 7   attention, Mr. Stewart Day.  He is an associate at the Wiley
 8   Rein firm.  He is not yet admitted pro hac vice, but we
 9   always thought you should know who is in your courtroom.
10            THE COURT:  Okay.  I appreciate that.
11            MR. WEAVER:  Thank you, Your Honor.
12            THE COURT:  Good morning.
13            MR. BALDWIN:  Good morning, Your Honor.  David
14   Baldwin, Potter Anderson & Corroon here for Lighting Science
15   Corporation.  With me is my colleague, Carla Jones, and also
16   Mr. Adam Ziffer who from the McKool Smith firm who will be
17   arguing for us today.
18            Your Honor, we've had some discussion about the
19   sequence.  We will be starting with the remand motion, if
20   that would be okay with you?
21            THE COURT:  If that agreeable to both sides,
22   that is fine.
23            MR. WEAVER:  That is, Your Honor.
24            THE COURT:  Just for the record, Mr. Baldwin,
25   you and your colleagues are here on behalf of all the
```

4

```
 1   plaintiffs; correct?
 2            MR. BALDWIN:  Yes, Your Honor.
 3            THE COURT:  Then we'll start with the remand.
 4            MR. ZIFFER:  Thank you, Your Honor.  And I don't
 5   know if it's your preference for us to argue the two motions
 6   separately or I can run through everything on both motions
 7   and then turn it over to the defendants.
 8            THE COURT:  If you have a mutual preference,
 9   then I'm happy to go with that.
10            MR. ZIFFER:  I think to the extent that they are
11   somewhat interrelated, I can work through both.  I think it
12   would be a little more efficient.
13            THE COURT:  Is that agreeable?
14            MR. SIMPSON:  We have no objection to that.
15            THE COURT:  That's fine.  Since it is cross
16   motions, you can each have a chance to rebut one another, up
17   to your time limit.  Go ahead.
18            MR. ZIFFER:  Thank you, Your Honor.  Again, Adam
19   Ziffer on behalf of all the plaintiffs in the action.
20            With respect to the remand motion, there are I
21   think probably three components to be addressed.  The first
22   is an objection raised by the defendants as to the
23   timeliness of the motion.
24            I am unclear as to whether or not there is a
25   view that the 30 day rule applicable to defects other than
```

5

```
 1   subject matter jurisdiction applies, although it shouldn't
 2   apply under the Court's ruling in the Third Circuit in the
 3   Foster case where it recognized that non-defects such as
 4   whether or not the removal was done within a proper time
 5   period would not be subject to the 30 day time limit.
 6            And we reference the Snapper court out of the
 7   Eleventh Circuit which identified abstention as one of the
 8   non-defect grounds that would not be subject to the 30 day
 9   time limit.
10            With respect to timeliness generally, there
11   has been an objection there as well.  One of the I think
12   considerations with respect to timeliness is why?  We filed
13   our remand motion I believe it was, I think it was 78 days
14   after the removal.
15            So what happened here was the case was removed.
16   We looked at the removal notice for defects as soon as it
17   was filed and didn't see any on its face.  Then defense
18   counsel requested and we granted an extension of time to
19   answer.
20            When we received their response to our
21   complaint, it contained a motion to transfer.
22            In preparing our motion for transfer, we were
23   digging into those issues and related issues and we
24   identified the motion to remand at the time so that is how
25   we came there.
```

6

1    The cases that have evaluated timeliness of
2  non-defect motions, some of them were shorter, some of them
3  were much longer than the time period at issue here, the *10*
4  *Palm* case out of Florida. There was a seven month delay and
5  it was deemed timely. In the *Graphic Communications* case
6  out of Minnesota, there was 104 day delay. It was timed
7  timely.
8    The only case cited by the parties where a
9  remand motion was deemed untimely was a two year delay.
10  Here, there has been no activity or other prejudice that
11  would justify rejection of the remand motion as untimely.
12    THE COURT: It is true though that there was
13  nothing that you learned during those 78 days that wasn't
14  knowable or apparent to you in the first 30, let's say?
15    MR. ZIFFER: It was certainly knowable. It was
16  not apparent to us. We came upon it as we were researching
17  the transfer motion and I refer Your Honor or, in response,
18  the *Foster* case, the basis for removal was a forum selection
19  clause, and they waited 54 days until they moved for remand.
20    The forum selection clause was known, knowable.
21  And maybe more readily apparent to the movant in the *Foster*
22  case in which the Third Circuit confirmed that removal was
23  not untimely even though it was knowable and likely even
24  more apparent than the bases for remand here.
25    Turning to the next question, which is does the

7

1  Court have the discretion to keep or remand the case in
2  light of the fact that we've got a mixed claim here. We've
3  got both declaratory relief and we've also got some coercive
4  claims.
5    The Third Circuit, Your Honor doesn't know if it
6  is pronounced Rei-fer or Reif-er (phonetic)?
7    THE COURT: I don't know.
8    MR. ZIFFER: I don't know either.
9    THE COURT: And the transcript won't show.
10    MR. ZIFFER: There you go. I'll call it Reif-er
11  (phonetic). That is the way it looks like to me. In the
12  *Reifer* case, the Third Circuit recognized that there was a
13  split around the country in terms of the circuits and that
14  the Third Circuit had yet to weigh in directly on whether
15  or not discretion still applies where you have got mixed
16  claims, and the court in *Reifer* didn't decide it. However,
17  there have been a number of District Courts in the Circuit
18  that have addressed the issue and they have all adopted one
19  test or another that permitted the Court to exercise its
20  discretion whether to keep or reject the claim that included
21  both a mixed claim, declaratory claims as well as
22  coercive claims.
23    The two tests -- and we suggest that the reasoning
24  of those cases including the *Tompkins* case, *Coltec*, *ITT*, and
25  *Hartford* all explain why it's important to accommodate the

8

1  Supreme Court's recognition that declaratory judgment actions
2  necessitate separate treatment; and, therefore, Your Honor
3  should adopt either the heart of the action or the independent
4  claim test to determine whether or not it has discretion to
5  remand or keep the case.
6    And I think that this is a case where whether
7  you adopt either the heart of the action or the independent
8  claim test, this is a mixed case where the declaratory
9  relief sought satisfies in the heart of the action and the
10  coercive claims are not independent.
11    Your Honor, this is a case about insurance
12  coverage. There is an underlying litigation pending in
13  Florida, and it's on appeal. There has been some defense
14  costs that have been paid by Liberty who is not here and
15  we're dealing with excess carriers, and the primary question
16  that a court is going to have to decide is: Does the
17  underlying lawsuit against Lighting Science and Mr. Kaiser
18  and Weinberg, is it covered by the policy? And right now,
19  especially where the case is on appeal, we're seeking that
20  ruling and that ruling will drive all of the other claims
21  that are contained in the complaint.
22    So we need a declaration that this policy covers
23  the underlying action. After that is determined, the Court
24  can then assess what are the appropriate amount of damages,
25  if any, for breach of contract. We have anticipatory breach

9

1  of claims against the excess carriers where we're seeking,
2  again, to obtain damages. What is the right amount? And
3  if there is a reversal of the underlying case, we may not
4  be able to get a decision right now on what the amount is
5  because the underlying case is not yet resolved.
6    THE COURT: But the defendants say if that is
7  really all correct, you were the master of the complaint,
8  you could have filed a declaratory judgment later. You didn't
9  do that. Why are they right that that has significance?
10    MR. ZIFFER: It doesn't have significance
11  because the Court can still exercise discretion when there
12  are mixed claims, and often there will be mixed claims,
13  especially here, for example, where you have bad faith
14  claims.
15    Now, we filed an action in state court with all
16  the claims that we intended to bring. The federal court
17  after removal has discretion to not keep those claims if
18  the declaratory judgment claim is at the heart of the
19  action, which it is here, even with respect to these bad
20  faith claims. If there is no coverage because there has
21  been a declaration that there is no coverage, then there is
22  no bad faith claim.
23    So it is a prerequisite or a predicate. The
24  declaratory judgment relief is a prerequisite to the damages
25  claims, both on the bad faith side and on the breach of

10

1  contract side.  And under the decisions of the sister
2  District Courts in this Circuit, it's appropriate for the
3  Court to exercise its discretion in determining whether or
4  not to keep the mixed claim.
5          THE COURT:  All right.  So let's assume that I
6  have the discretion to decline jurisdiction.  Tell me why
7  under the case law I should do that.
8          MR. ZIFFER:  Sure.  I want to start with I think
9  it's Item No. 7.  Well, first let's eliminate a number of
10  the factors, a number of the *Reifer* factors.
11          THE COURT:  Before you do that.
12          MR. ZIFFER:  Sure.
13          THE COURT:  Would you agree there are no
14  parallel state proceedings?
15          MR. ZIFFER:  Absolutely.
16          THE COURT:  So the presumption is I should keep
17  the case.  That is, I should exercise jurisdiction.  I don't
18  mean -- "keep the case" is a broader statement than I meant
19  to say.
20          MR. ZIFFER:  Yes, where there is no parallel
21  proceeding, the court in *Reifer* recognized that the dynamics
22  changes, and there is a heavier burden in terms of keeping
23  the case.
24          THE COURT:  And that burden is on you.
25          MR. ZIFFER:  Yes.

11

1          THE COURT:  And you are going to agree that
2  certain factors are ones that are not even relevant here;
3  correct?
4          MR. ZIFFER:  Well, the lack of a parallel state
5  proceeding is irrelevant once you put the burden on me.
6  The lack of federal questions and federal issues, they don't
7  exist here, but that doesn't mean that they're not relevant.
8  That is, those are now factors that weigh in favor of
9  leaving the state court claim in the state court.  So I
10  wouldn't say that they're not relevant.  Rather, they are
11  absent and, therefore, weigh against proceeding in federal
12  court.
13          The convenience of the parties I would agree,
14  Your Honor, is an irrelevant factor because we're about two
15  blocks away from the state court where we filed.  So there
16  are some that are irrelevant.
17          The availability and relative convenience of
18  other remedies is also an irrelevant factor, one that
19  doesn't apply here.
20          The first factor, which is the likelihood that a
21  federal court declaration will resolve the uncertainty of
22  the obligation, that applies equally whether we're in state
23  or federal court as well.
24          But then we get to, and the avoidance of
25  duplicative litigation is also irrelevant because either the

12

1  case will be here or in Florida.  It will either be in
2  federal court or in state court.  So without parallel
3  proceeding, we don't run the risk of duplicative litigation.
4          But now we get to the factor that should be
5  dispositive.  The Court, in exercising its discretion,
6  should prevent the use of a declaratory judgment action as a
7  method of procedural fencing or a means to provide another
8  forum in a race for res judicata.
9          And this is where the interplay with the motion
10  to transfer comes in.  Defendants could not file this case
11  in federal court in Florida.  They couldn't do it because
12  all they would have would be a declaratory judgment claim
13  which would then be subject to dismissal based on these same
14  factors.
15          So instead they did, what the court in *Reifer* used
16  as the basis for justifying application of discretion where
17  there is no parallel proceeding because of the concern about
18  forum shopping, this is in footnote 14 of the *Reifer* decision
19  and they were describing the District Court's analysis of why,
20  where there is no parallel state proceeding, it still might be
21  appropriate to exercise discretion to not keep the case.
22          It said that it might encourage litigants to
23  forum shop.  And now I'm quoting from footnote 14:  An
24  insurer, instead of filing a declaratory judgment action,
25  could wait for the insured to file the same in state court.

13

1  It could then remove the case to federal court, assured that
2  the lack of parallel state proceedings would prevent the
3  District Court from declining jurisdiction.
4          That's exactly what happened here.  So the
5  forum shopping concern that the *Reifer* court identified as
6  justifying discretion in the context of a remand request
7  where there is no parallel state proceeding, it said this is
8  the kind of forum shopping that we need to be on the lookout
9  for.  And this is why we have to maintain discretion in the
10  context of no parallel state proceeding.  That is exactly
11  what you have here.
12          THE COURT:  All right.  So assume for the moment
13  that is exactly what we have here.  Maybe that is why I have
14  discretion.  Why is that a reason to exercise the discretion
15  in this case in the way you want me to?
16          MR. ZIFFER:  Because of the purpose of the
17  Federal Declaratory Judgment Act.  The purpose of the
18  Federal Declaratory Judgment Act is to afford a new form of
19  relief where it is needed, not to furnish a new choice of
20  tribunals or draw into the federal courts the adjudication
21  of causes properly cognizable by courts of the state.
22          I don't talk that way.  That is the Third
23  Circuit, *Travelers Insurance Co. v Davis*, at 490 F2d 536.
24  It is a 1974 case.
25          So, Your Honor, if you revert back to the

14

1  purpose of the Federal Declaratory Judgment Act, in the
2  context of the very forum shopping that the Third Circuit
3  was worried about, you put those two together, this is the
4  circumstance.  And that is a quote from the *Osenbach* case
5  from 2015 out of the Eastern District of Pennsylvania.  So
6  that is the justification to exercise discretion.
7          The other reason, of course, is that the desire
8  of insurance companies and insureds to receive declarations
9  in federal court on matters purely of state law have no
10  special call on the federal forum.
11          So, Your Honor, the lack of a federal interest,
12  lots of irrelevant factors may not tip the scale where you
13  don't have a parallel state proceeding.  I think that is
14  where Your Honor's initial question was indicating.  However,
15  where you have the specific type of forum shopping that the
16  *Reifer* court was concerned with and you couple that with the
17  purpose of the Federal Declaratory Judgment Act, this is an
18  appropriate case to remand back to state court.
19          THE COURT:  A lot of what you have said about
20  forum shopping in particular is predicated on the risk you
21  perceived literally that I will transfer this case to
22  Florida as the defendants are asking.
23          Assume for the sake of argument that I don't do
24  that.  Does that have implications for whether or not I
25  should exercise my discretion on your motion in the way that

15

1  you are saying?
2          MR. ZIFFER:  It does.  It does.  It's evident
3  in the context of this case, and I think the cases involving
4  the remand motions as well as the cases involving the transfer
5  motions, especially the transfer motion cases, they're very
6  fact specific and they are case-to-case, I believe even
7  day-to-day specific.
8          Here, the forum shopping is exacerbated by the
9  transfer motion.  So to the extent Your Honor were to deny
10  the transfer motion and keep the case, the impact of the
11  forum shopping is lessened.
12          The purpose of the Federal Declaratory Judgment
13  Act still compels a remand.  However, to the extent Your
14  Honor was to reject the transfer motion, it would lessen the
15  impact of the forum shopping that supports the remand motion
16  in the first place.
17          Very briefly, Your Honor, there also seems to
18  be a question as to whether or not remand is an appropriate
19  remedy in the context of the motion for remand.
20          Yes, some of the cases stay or dismiss the
21  federal action as a basis of use of discretion, but that is
22  often where -- that is only where there has been no removal.
23  Remand is only an available remedy where there has been a
24  removal.  And the *Osenbach* case is an example, as is the
25  *Tomkins* case.  Where there are cases that were remanded

16

1  after engaging in this analysis, the solution is to remand.
2          In *Tomkins*, there were two cases.  One was
3  remanded, and the second case, which was not consolidated,
4  was dismissed -- and I'm quoting the court -- "without
5  prejudice to re-file in state court."  It had originally
6  been filed in federal court.  That is why it wasn't
7  susceptible to remand but certainly there is no instruction
8  that remand is an inappropriate remedy.
9          Turning to the transfer motion.
10          THE COURT:  Okay.
11          MR. ZIFFER:  To the extent that Your Honor
12  decides to keep the case in federal court.  Your Honor has
13  authored a number of decisions on transfer motions.  I have
14  a favorite, I'm sure they have a favorite.  My favorite is
15  *Intellectual Ventures*.  And what I would like to drawn from
16  *Intellectual Ventures* is the prism of standard through which
17  this transfer motion should be viewed.
18          This is a case where, or this is an issue where,
19  as opposed to the remand motion, defendants bear a heavy
20  burden.  Plaintiffs' choice of venue should not lightly be
21  disturbed.  Transfer is not to be liberally granted.  Unless
22  balance of convenience of the parties is strongly in favor
23  of the defendant, the plaintiffs' choice of forum should
24  prevail.
25          And that applies here whereas Your Honor

17

1  recognized in *Intellectual Ventures*, Lighting Science sued
2  on its home turf.  There have been many cases, including
3  *Intellectual Ventures*, which recognizes that a Delaware
4  corporation which sues in Delaware has a legitimate basis to
5  file that suit in that jurisdiction.  It is considered its
6  home turf, and it is entitled to the heavy standards that
7  ordinarily apply in 1404 transfer motions.
8          Now, beyond the threshold burden and standard
9  is Your Honor's recognition about a test that concerns the
10  relative convenience of the parties and witnesses and
11  whether or not transfer would serve the interest of justice.
12  That is from the language of the statute.
13          So in viewing that, Your Honor recognized in
14  *Intellectual Ventures* that a threshold question is for these
15  parties, for these defendants, are they truly regional in
16  character.
17          THE COURT:  Before you get into these other
18  factors, there are other plaintiffs here.  They're not
19  Delaware corporations, they're not even individual residents
20  of Delaware; correct?
21          MR. ZIFFER:  Correct.
22          THE COURT:  So how do I factor those in, their
23  interests in?
24          MR. ZIFFER:  Your Honor, one is a resident of
25  Florida, Mr. Kaiser; and Mr. Weinberg is a resident of New

18

1   Jersey which is close to Delaware but not in Delaware.
2           So they don't undermine the standard that
3   applies. But as you get deeper into the convenience of the
4   parties, into the factors themselves, first of all, you have
5   those individuals as plaintiffs coming here. This is their
6   choice of forum. They are not saying that they're going to
7   be inconvenienced here.
8           Mr. Kaiser we wouldn't argue would be
9   inconvenienced by the transfer, but we would argue that, if
10  we do argue, that Mr. Weinberg would be inconvenienced by
11  the transfer. So I would say that it is neutral with
12  respect to the underlying factors, but in terms of how you
13  apply the overall burden in the first place, this is a
14  legitimate choice of forum.
15          They were both sued in their capacities as
16  officers or directors of Lighting Science Corporation which
17  is a Delaware corporation, enhancing the Delaware connection
18  and enhancing the home turf aspect of their choose Delaware
19  as home forum.
20          THE COURT: Are you any longer disputing the
21  Middle District of Florida is the jurisdiction in which the
22  case could have been brought?
23          MR. ZIFFER: No. It appears on their opposition
24  to our -- or maybe in their reply on the transfer motion.
25          THE COURT: Right. And you are not challenging

19

1   that.
2           MR. ZIFFER: Right. So the first question as
3   to whether or not it could have been brought there, we are
4   no longer contesting.
5           So turning back to what I still think is a
6   preliminary assessment, before you get into the factors,
7   and this is an assessment as to the language of the statute
8   itself. Are these defendants regional in character? Do
9   they operate essentially exclusively in a region that
10  doesn't include Delaware? And if they do not, transfer is
11  often inappropriate.
12          This is quoting Your Honor from *Intellectual
13  Ventures:* "When a transfer is sought by defendant with
14  operations on a national or international scale, that
15  defendant must prove that litigating in Delaware would pose
16  a unique or unusual burden on its operations."
17          In evaluating that question, I want to refer
18  Your Honor to paragraphs 22 and 23 of our complaint and to
19  the corresponding answer of the defendants at issue here,
20  Starr and CNA. They both admitted the allegations of this
21  paragraph.
22          And the paragraph states that each of them are,
23  quote, "authorized to sell or write insurance in Delaware"
24  and at all material times has conducted and continues to
25  conduct substantial insurance business in the State of

20

1   Delaware, including engaging in the business of selling
2   insurance, investigating claims, and/or issuing policies
3   that cover policyholders or activities located in Delaware.
4   These are not defendants that are going to be able to meet
5   the burden of proving that litigating in Delaware would pose
6   an unique or unusual burden. And for that reason, before we
7   get into the factors, defendants have failed to meet their
8   burden.
9           But even assessment of the private and public
10  factors, I think through many of these tests, a lot of them
11  don't implicate one or another, transfer would not be
12  warranted.
13          Again, as we discussed and I think some of the
14  cases recognized, that this really is a burden and standard
15  issue. The plaintiffs' choice of forum is entitled to
16  paramount consideration.
17          Now, the defendants express a preference for
18  Florida, but that shouldn't be given significant weight
19  here because it's not that defendants are convenienced by
20  Florida. There is a Florida connection, we recognize that.
21  There is an underlying lawsuit, an underlying judgment that
22  existed in Florida. And I also want to acknowledge, Your
23  Honor, that Florida law will be implicated by this dispute
24  at the very least in terms of what the meaning of some of
25  the underlying claims are.

21

1           So Florida law will be implicated, and that is a
2   factor that weighs in favor of transfer. But, Your Honor,
3   it is the only factor that weighs in favor of transfer, and
4   it is insufficient for them to meet their burden.
5           The claim here, there is no coverage that
6   didn't arise in Florida. The claims handling was conducted
7   at the home offices of each of the insurance companies which
8   are, with respect to Starr and CNA, their principal place of
9   businesses are in New York and Illinois. They're incorporated,
10  Starr in Texas, CNA is incorporated in Illinois. Their claims
11  handlers were located in New York.
12          With respect to convenience of the parties, it is
13  neutral at best. All of these parties operate nationally, as
14  I mentioned before. They conduct substantial business in
15  Delaware.
16          The convenience of the witnesses doesn't support
17  Florida at all. The parties themselves don't count for
18  purposes of this test. The question is who would be
19  unavailable to appear for a trial that is not a party
20  witness? And under the *Jumara* decision, defendants must be
21  specific and identify individuals who would be necessary
22  for trial and would be unavailable. They haven't identified
23  any.
24          Now, I looked through the case and the issues.
25  The one witness that I could conceive of that we would want

22

1   for trial that is not a party is the broker.  Sometimes the
2   broker is typically deposed and sometimes is called as a
3   witness at trial in these insurance cases.  The broker is
4   out of Texas.  So that factor is neutral at worst, because
5   it is neutral, and it is their burden, and it weighs against
6   transfer.
7           Locations of books and records.
8           Oh, and I'm sorry, Your Honor.  One other point
9   on the convenience of witnesses.  Defendants in their papers
10  have indicated that this case is going to be disposed of on
11  motion, which is a further indication that availability or
12  unavailability of witnesses for trial is not a factor that
13  weighs in favor of transfer.
14          Location of books and records in a case like
15  this, like with many of these insurance cases involving
16  large carriers like Starr, CNA, and Liberty, this is
17  electronically -- the books and records are electronically
18  maintained and exchanged, and that is not going to support
19  transfer either.
20          The public factors are either neutral or don't
21  support either.  The enforceability of the judgment doesn't
22  support either.  The practical considerations don't support
23  either.  Court congestion.  My understanding is both the
24  courts in Delaware and in the Middle District of Florida are
25  quite burdened and the expectation is that both courts have

23

1   equal burden with respect to that.
2           Local interest in deciding local controversies
3   at home.  This is not a Florida controversy any more so than
4   it is a Delaware controversy.
5           To the extent that Lighting Science is a
6   Delaware corporation, the Delaware courts do have an
7   interest in deciding the rights of its policy, its residents
8   as policyholders to insurance coverage.  Mr. Kaiser, to the
9   extent that he is a Florida resident, Florida would have
10  an interest in that, as would New Jersey in support of
11  Mr. Weinberg.  So that factor is neutral, doesn't support
12  transfer.
13          THE COURT:  Well, the underlying action in which
14  the trial court at least has entered a judgment based on
15  some sort of, I know it's not a factual finding per se but
16  it was a fraud statute, wasn't it?
17          MR. ZIFFER:  Yes, the Florida Securities Act.
18          THE COURT:  So there is a judgment on fraud out
19  of the Florida court on appeal now to another Florida court.
20  Why doesn't that give Florida a much more significant
21  interest in who is going to pay for all of that than this
22  state does?
23          MR. ZIFFER:  One short response, Your Honor.  I
24  would be remiss on behalf of my client if I didn't indicate
25  that it doesn't implicate fraud, the claim against them.

24

1   That is defendants' position, but the component of the
2   statute that judgment was rendered under doesn't implicate
3   fraud necessarily.
4           But putting that aside, to directly answer Your
5   Honor's question, it is a factor that weighs in favor of
6   Florida because there is a need to apply and understand
7   the Florida law, but that is the only factor.  It doesn't
8   give Florida necessarily an interest in deciding whether
9   a Delaware corporation that has its principal place of
10  business in Rhode Island, a New Jersey individual and a
11  Florida individual have insurance coverage issued by all
12  foreign insurance companies for that Florida judgment.
13          Florida did render that decision but, again,
14  because you have one policyholder resident of Florida, one
15  policyholder resident in Delaware, Florida and Delaware have
16  the same interest in deciding whether or not their resident
17  policyholders are entitled to insurance coverage for that
18  judgment.
19          If Your Honor doesn't have any other questions?
20          THE COURT:  We'll save you some time for rebuttal.
21          MR. ZIFFER:  Great.  Thank you.
22          THE COURT:  Thank you.  Defendants.
23          Good morning.
24          MR. SIMPSON:  Thank you, Your Honor.  And good
25  morning.

25

1           I think counsel actually, in response to your
2   questioning, hit the nail on the head of what is at issue
3   here.  And that is what are the respective interests of
4   Florida and Delaware?
5           And if you start first with the remand motion,
6   the critical point is that this case is about Florida.  One
7   of the critical points, this case was about Florida law.  We
8   pointed out in our brief, the policy was issued in Florida.
9   At the time it was issued, Lighting Science had its
10  principal place of business in Florida.  It has Florida
11  endorsements.  The underlying case in which a judgment was
12  entered for which coverage is now sought was litigated and
13  decided in Florida.  There can be no reasonable dispute that
14  Florida law is going to govern the coverage determination.
15          THE COURT:  Is there any basis on which to
16  conclude there is some conflict between Florida law and
17  Delaware law on the permanent forum?
18          MR. SIMPSON:  It is unclear, Your Honor, but
19  what I would say on that, I think the key thing is, what we
20  know to a certainty is Delaware law is not relevant unless
21  it doesn't matter.  It only matters if it doesn't matter.
22  Because if there is any difference between Delaware law and
23  Florida law, then Florida law is going to control.  And
24  important in that regard is a Florida statute under which
25  this judgment was entered.

26

And so if you step back for a minute, looking at the remand issue first, the usual reason that is given for a federal court to abstain in favor of the state court is that the state court has more expertise in state law.

Well, here, a Delaware state court has less expertise than this court on Florida law because federal courts are more often applying the law of foreign jurisdictions.

So when you talk about forum shopping, for example, what you have here is one of three plaintiffs is incorporated in Delaware. That is the only connection Delaware has to this case. There is no other connection.

And based on that, as a matter of forum shopping, plaintiffs decided to file in state court in Delaware, no other connection. And that state court would have to be applying Florida law, not Delaware law. There is no reason at all for this court to think there is any benefit to the case going back to the state court under the circumstances.

There are other reasons not to remand. One of them is this issue of does the Court have discretion or does it not have discretion to remand in a mixed action?

And there are District Court decisions in the Third Circuit saying that the Court does have discretion. There is no Third Circuit decision on point.

27

The Seventh Circuit has said there is no discretion. You can't remand.

The Second Circuit has agreed.

The question would be, why go out on a limb on an unsettled legal issue unless there is a compelling reason to do it? And there is not.

That is the core -- and then on the timeliness point, as Your Honor pointed out, there is nothing in the motion to remand that should not have been obvious on the day the removal petition was filed. Abstention is a well known doctrine. It could have been filed earlier. So it is untimely.

But the critical thing is on the merits, the presumption is the Court keeps it, because as Your Honor pointed out, because there is no parallel proceeding. And if you say, well, the presumption is I keep it, why would I remand it? The usual reason for that is, well, maybe there is a hard issue of state law and that court has more expertise than the federal court does. The opposite is true. This court has more expertise than the state court does. So there really is no reason to remand here.

Then turning to the motion to transfer. And counsel went through the factors with which we're all familiar. I think the key thing, though, and the cases recognize some of Your Honor's opinions and others, and the

28

*Jumara* court said: The bottom line question is what result best serves the interest of justice?

Because as fact specific, one factor is more important in one case, another in another case. They're useful. The factors are useful as kind of guideposts, make sure that we have thought about all the things we should think about. But it really is let's look at the individual case and say how is the interest of justice served in that particular individual case?

And, here, if you step back and you look at it that way, and you say, well, what are the interests of the two states? We have two choices here. We have Delaware and we have Florida. What are their respective interests?

On the Delaware side, one of the three plaintiffs is incorporated in Delaware, doesn't have his principal place of business here, and, in fact, when the policy was issued, had his principal place of business in Florida and still does business in Florida.

Now, the cases say, plaintiff's choice of forum is entitled to considerable weight. So it is relevant that they filed here, it is significant, but if you think about it, that is all they have.

The arguments on the other factors are all just another way of saying we are incorporated in Delaware, we are one of three, and we want to be in Delaware.

29

One of those three plaintiffs saying I want to be in Delaware is a Florida resident. He had another connection to Florida.

THE COURT: But the individuals were officers or directors of the Delaware corporation.

MR. SIMPSON: Yes. Yes, Your Honor. So I think it is another way of saying the same thing, which is Lighting Science is incorporated in Florida. Therefore, there is that connection, and as officers and directors of a Delaware have that connection. They, of course, have more of a connection to the principal place of business where they're actually operating. And at the relevant time, that was Florida. They still do business in Florida. Now it's Rhode Island is its principal place of business, but that factor is there.

If you step back and look at the rest of the considerations, what are the Florida connections? Let's look at the other side of the ledger.

The policy was issued in Florida. The principal place of business of the insured was in Florida. It has Florida endorsements. Unquestionably, Florida law is going to cover, govern the coverage question. And if we got to it, it's going to cover, reply to the bad faith and others because if you have an insurer located in a state who got a policy in that state seeking coverage or alleging bad faith

30

1    in connection with a loss in that state, that state's law is
2    going to apply.
3              So this is a Florida law case.  And what is the
4    Florida law applying to?  It's a judgment against an insured
5    for making misrepresentations in connection with the sale
6    of securities for which they're now asking their insurance
7    carrier to pay.  And one of the key, probably the threshold
8    key issue will be, as a matter of policy interpretation, in
9    terms of what is insurable and as a matter of public policy,
10   should this be covered?
11             Well, whose public policy is it?  It is Florida's
12   public policy, and so that is the Florida connection.  That is
13   where it ought to be decided.
14             Other factors, again, this court is certainly
15   perfectly capable of applying Florida law; and as I have
16   mentioned, much more capable than a Delaware state court.
17   But the cases recognize that a judge in the Middle District
18   of Florida applies Florida law every single day and is more
19   familiar with Florida public policy than a court in another
20   state.  So that also cuts in favor of the Florida location.
21             If you look at the factors, they all kind of
22   collapse into the issue what is this about?  Where are the
23   witnesses located?  They're potentially.  We don't know.
24   Will there be witnesses?  We hope and expect the case to be
25   decided on a motion, but if there were witnesses, the

31

1    underlying litigation took place in Florida but the insured
2    Lighting Science does business in Florida.  Their attribute
3    witnesses are in Florida.  We know there are no witnesses in
4    Florida.
5              The bottom line, the case is very similar in
6    many respects to Your Honor's decision in the *Andrews* case
7    that, yes, there is jurisdiction here and it is discretionary.
8    The Court just has to exercise its judgment, and it won't
9    second guess whatever that judgment is.
10             So the question is what is in the interest of
11   justice?  And when you get right down to it, other than the
12   fact that one of three plaintiffs has some connection to
13   Delaware, Delaware has absolutely nothing to do with this case,
14   unlike the case counsel cited and which Your Honor denied
15   the motion to transfer.  In that case, not only was the
16   plaintiff incorporated in Delaware but all four defendants
17   were, so a much stronger connection.
18             Here, the only connection, as I said, is one of
19   three plaintiffs has a corporation here.  One of the other
20   plaintiffs is a Florida resident.  Everything else about the
21   case screams out that it should be in Florida, including
22   that the key issue in the case involves applying Florida
23   public policy.
24             So, Your Honor, unless you have questions, that
25   summarizes our position.

32

1              THE COURT:  So I mean the plaintiffs accuse you
2    of forum shopping.  And I hear you essentially accusing them
3    of the same thing, but I assume you plead not guilty, but
4    help me understand why I should put credit in that defense.
5              MR. SIMPSON:  I think like any of these
6    circumstances, I mean in terms of forum shopping, you usually
7    think of s party rushing to court and try to get something
8    filed.  They're the ones who rushed to court and filed in a
9    jurisdiction that really, logically, are they entitled to do
10   it under the law?  Yes.  Does it make any logical sense?  No.
11             A Delaware state court is not a logical place to
12   litigate a dispute about a policy issued in Florida to a
13   Florida address involving coverage for a Florida judgment.
14   So that is the forum shopping.
15             We simply exercised our right to remove to federal
16   court and then, as the transfer of statute contemplates, ask
17   the Court to decide where should this be, in the interest of
18   justice?  I don't think that is forum shopping.  There was
19   nothing here other than we were sued in a very inappropriate
20   forum, and we're asking the Court to judge which of two is
21   more in the interest of justice.
22             THE COURT:  If I ask, as part of the analysis,
23   whether the record shows any unusual, unique, undue burden
24   on your clients to having to litigate here in Delaware, is
25   it correct that I'll see nothing in the record to support

33

1    such a finding?
2              MR. SIMPSON:  That is correct.
3              THE COURT:  And it is undisputed that your
4    clients are registered to do or authorized to do business
5    here and do business here?
6              MR. SIMPSON:  Yes.  Yes.  Both, as counsel say,
7    both Florida and Delaware would have jurisdiction.
8              THE COURT:  Okay.  I have no other questions at
9    this time.
10             MR. SIMPSON:  Thank you, Your Honor.
11             THE COURT:  Thank you.
12             We can get the plaintiffs back.
13             MR. ZIFFER:  So, Your Honor, I think the last
14   concession made by counsel that there be no inordinate
15   difficulty in litigating the case in Delaware, coupled with
16   the standard that Your Honor -- the standards Your Honor
17   articulated in the *ITT* case justified denial of the transfer
18   motion because this is a home turf litigation and not
19   regional defendant or defendants who would be burdened by it.
20             With respect to whether or not this is forum
21   shopping, there is an effort to make it sound plain vanilla.
22   This is the exact circumstance of forum shopping that the
23   Third Circuit in *Reifer* identified as justifying the
24   application of discretion where there is no parallel state
25   proceeding.

34

1        The expertise in state law that is required and
2   the ability of the courts to apply that law that we heard
3   about, that is not a factor that is contemplated by the
4   courts to be considered on the remand motion.
5        I acknowledged, Your Honor, that it was relevant
6   to the transfer motion, but in determining remand, the
7   relative ability of Florida or Delaware, the federal or
8   state courts, it is the federal or state courts in Delaware
9   on remand motion, that is not a factor.
10       Finally, there was a lot of comments about is
11  the policy being issued in Florida?  That is not immediately
12  clear.  The address of Lighting Science on the policy itself
13  is a Florida address, and there are Florida endorsements
14  attached to it.
15       However, each of the insurance companies was
16  both principal place of business and domicile in a different
17  state, and the broker was located in Texas, which I don't
18  know if I have the right note here, I think Starr is maybe
19  either incorporated or principal place of business in Texas.
20  So there may be an additional or alternative jurisdiction.
21       You know, the question of where are the policy
22  was issued, again, not directly a relevant factor on the
23  remand motion, but to the extent that it is a relevant
24  factor under the analysis, it is not at all clear.
25       That is all I have here, Your Honor.

35

1        THE COURT:  On the potential conflict of law or
2   choice of law question, is it correct that if Delaware law
3   applies, it is because there are no differences, otherwise
4   Florida law is going to apply?
5        MR. ZIFFER:  A Delaware court -- not that Florida
6   law would apply.  That has yet to be determined.  And it's not
7   yet clear that it will be Florida law.  Florida law, in terms
8   of interpreting the policy, Florida, some aspects of Florida
9   law will be examined to understand the underlying liability.
10  But the key issues in this case, is there coverage or not?  A
11  Delaware court will first look at the potential jurisdictions,
12  not just Florida.  We may advocate that Texas law applies,
13  depending on what discovery shows or some their jurisdiction.
14       The Court will first look to whether or not
15  there is a true conflict between Delaware and those foreign
16  jurisdictions.  To the extent there is no conflict, it is
17  not that Delaware law doesn't matter.  If there is no
18  conflict, Delaware law applies.  If there is a difference,
19  then Delaware law will not apply, and the Court will
20  endeavor to determine which other states law applies to the
21  insurance coverage issue.
22       Certainly, Florida law will apply to the
23  evaluate the policy holders liability to the extent it is
24  under the Florida Securities Act.
25       THE COURT:  Okay.  Thank you very much.

36

1        MR. ZIFFER:  Thank you, Your Honor.
2        MR. SIMPSON:  Very briefly, Your Honor.
3        I would submit that the failure of plaintiffs to
4   acknowledge that Florida law applies shows just how weak
5   their argument is for this case staying in Delaware.
6        It is Insurance Law 101.  The policy was issued
7   to an insured in Florida at the Florida address.  It is a
8   Florida address on the policy.
9        The insured, the named insured, Lighting Science
10  at the time had its principal place of business in Florida.
11       Now, if the loss were some other state, you
12  might have get a choice of law question.  So the loss was in
13  Florida, the underlying case was in Florida, the judgment is
14  in Florida.
15       Imagine someone coming into court and saying,
16  imagine us coming in and saying because we're incorporated
17  in Illinois, Illinois law would apply.  We would be rightly
18  laughed out of court.  We know now that Florida law applies
19  and the effort to avoid that conclusion shows how weak the
20  connection to Delaware is.
21       THE COURT:  What if discovery shows that the
22  broker was in Texas?
23       MR. SIMPSON:  I think the broker was in Texas.
24  It doesn't matter.  The question is where is the insurer?
25       THE COURT:  What if it were to show the

37

1   negotiations of the policy were in Texas?
2        MR. SIMPSON:  Again, it wouldn't matter.  It is
3   hornbook law on choice of law.  It is a pro-insured rule,
4   but when you look at the choice of law, and there are a lot
5   in Delaware, as Your Honor knows.  There has been a lot of
6   choice of law.  I have had a lot of other cases where, in
7   the asbestos world, for example, where you have got a policy
8   issued in Texas and the company has facilities in eight
9   other states and whose law applies and you have got all
10  these competing connections.  That is when in insurance, you
11  get choice of law.
12       When an insurance company goes into Florida,
13  which is what we did, whether the broker is in Texas and the
14  insurance company is in New York.  If you go into Florida or
15  you go into Delaware and you issue a policy to an insured in
16  Florida and say we'll cover you, and that insured has a loss
17  in Florida, Florida law is going to apply.  Or if you issue
18  the policy in Delaware and the loss is in Delaware, Delaware
19  law is going to apply.
20       So I think, Your Honor, there simply is no
21  reasonable basis on which to contend on these facts that
22  anything other than Florida law applies, and that the
23  Delaware choice of law cases make that definitively clear.
24       The issue arises only when you have got more
25  than one state, that the law says it is State A and the

38

```
1    policy is in State B. And that is the reason why, in terms
2    of the remand motion, the fact that it's a different state's
3    law is entirely relevant, because of the rationale courts
4    that are remanded have used. The rationale that they often
5    use; and it is pretty rare when they do remand because, of
6    course, generally the court has to exercise jurisdiction;
7    but when they do, it is often to say this is a complex issue
8    of state law on which the state court has more expertise,
9    implicitly recognizing the law of that state applies. That
10   rationale simply doesn't apply if you're remanding to a
11   state court that is not in the state where the law applies.
12           THE COURT: Okay.
13           MR. SIMPSON: Thank you.
14           THE COURT: Thank you. Thank you both sides for
15   the helpful and succinct argument. We're going to take a
16   recess. When I come back, I'll give you my decision.
17           (Brief recess taken.)
18           *   *   *
19           (Proceedings reconvened after recess.)
20           THE COURT: Have a seat.
21           So the briefing was very good and the argument
22   today was extremely helpful and succinct; and I appreciate
23   that, all of that. And I think that given the nature of the
24   issues, it's appropriate for me to give you a decision now
25   rather than make you wait. So that is what I'm going to do
```

39

```
1    do unless you have any reason that I shouldn't.
2            Is there any objection from the defendant?
3            MR. ZIFFER: No, Your Honor.
4            MR. SIMPSON: No, Your Honor.
5            THE COURT: Okay. So I'll talk about the two
6    motions in the order that they were for the most part
7    argued, which was first plaintiffs' motion to remand the
8    case to state court.
9            That motion is denied.
10           Because I'm denying it and I'm ultimately
11   denying it based on the balance of factors and the plaintiff
12   not meeting its burden to persuade me that the factors are
13   such that I should decline to exercise jurisdiction, I am
14   assuming away the first two issues.
15           I'm assuming without deciding that the
16   plaintiffs' request for a remand is timely. And I'm assuming
17   without deciding that in this case where there are mixed
18   claims, some for declaratory relief and others for coercive
19   relief, I'm assuming that I have discretion to decline to
20   exercise jurisdiction and therefore have discretion to rule
21   on it.
22           But making those assumptions, that simply takes
23   me to the factors that I need to consider in exercising such
24   discretion. And, again, those factors here do not persuade
25   me that I should remand to state court.
```

40

```
1            They begin with, and I think most importantly,
2    the fact that there is no parallel state proceeding here
3    from which it arises that there is a presumption in favor
4    of exercising declaratory jurisdiction which can only be
5    overcome if outweighed by the other *Reifer* factors. And
6    that comes from *Reifer,* and that comes from other District
7    Court cases applying *Reifer*. I was quoting from the
8    *Nationwide Mutual Insurance Co. v Svitesic* case, which was
9    an Eastern District of Pennsylvania case, November 16th,
10   2005, but there are other cases to the same effect. And the
11   bottom line is that the plaintiff has not made the required
12   showing.
13           I've considered the eight factors that are most
14   commonly looked at. Most of them really don't weigh in
15   here, certainly don't weigh in favor of remand. Some of
16   them are actually neutral.
17           But to be precise, Factor 1 does not weigh in
18   favor of remand. A federal court declaration would
19   unquestionably resolve any uncertainty as to the underlying
20   insurance coverage.
21           Factors 2, 3, and 4 which relate to the
22   convenience of the parties, the public interest and
23   settlement and the availability and convenience of other
24   remedies are all neutral.
25           Factors 5, 6, and 8, which counsel exercise
```

41

```
1    restraint when issues are pending in state court, that we
2    avoid duplicative litigation, and issues related to conflict
3    of interest in the insurance context.
4            Here, those all weigh against remand. Each of
5    these factors concern the relationship of the federal court
6    with the parallel state court proceeding. And, again, there
7    is no such parallel state court proceeding here.
8            Really, most of the argument that the plaintiff
9    makes is about Factor 7 which asks that I prevent the use
10   of a declaratory judgment action from being a method of
11   procedural fencing.
12           And I'm willing to say that here that weighs
13   slightly in favor of remand. But as I will explain in
14   just a moment, I'm also denying the defendants' motion to
15   transfer the case to Florida. I think that reduces the
16   slight weight that this factor might otherwise be given in
17   the analysis about reasoning.
18           In any event, taking all the factors together,
19   the plaintiffs have failed to overcome the presumption, that
20   the case should not be remanded, so the plaintiffs' motion
21   to remand will be denied.
22           That puts before me the issue of now that we
23   know the case is staying in federal court, which federal
24   court should it be in. Should it be here in Delaware, where
25   the case is right now, or should I instead transfer the case
```

42

1   to defendants' preferred federal forum which is the Middle
2   District of Florida?
3            As I have already said, I'm denying the request
4   to transfer the case, and it will stay here in the District
5   of Delaware.
6            How did I reach that decision?
7            Well, of course, I have taken a look at it and
8   am familiar with 28 U.S.C., Section 1404(a) which is the
9   statutory basis for the defendants' motion.  That statute
10  allows the Court to transfer for the convenience of the
11  parties and witnesses in the interest of justice.
12           Two inquiries arise.  The first one is now no
13  longer contested.  Everybody is agreeing that the Middle
14  District of Florida is a jurisdiction in which this case
15  could have been brought;
16           Which makes the issue for me whether or not
17  defendants have met their burden to show that the pertinent
18  factors, including those expressly identified in *Jumara*, a
19  non-exhaustive list of factors, strongly favor transfer to
20  the Middle District of Florida.
21           That is what the defendants have to show, and I
22  find that they have failed to show it.
23           It's important to note, as I think the parties
24  have in their briefs and even somewhat today that the Third
25  Circuit has emphasized in analyzing the factors that the

43

1   plaintiffs' choice of forum is not to be lightly disturbed.
2            The parties seeking transfer must show that the
3   balance of factors is strongly in favor of transfer in order
4   for transfer to be granted.
5            The first factor, and the most important one in
6   the context of this case, is plaintiffs' choice of forum.
7            Here, plaintiffs' choice of Delaware is
8   legitimate and rational.  As the corporate plaintiff, LSGC
9   is a Delaware corporation; and the underlying litigation to
10  which this insurance dispute relates relates to actions that
11  the two individual plaintiffs took in their capacity as
12  officers or directors of that Delaware corporation.
13           This makes the choice of Delaware legitimate
14  and rational for all three of the plaintiffs.  It means
15  that plaintiffs' choice of forum is entitled to paramount
16  consideration.
17           Note, even if the plaintiffs' choice of forum
18  were given less than paramount consideration, and just
19  strong deference, it would change the balance slightly but
20  in my opinion not enough to allow the defendants to meet the
21  strong burden that they face.
22           So, again, this first and most important factor,
23  the plaintiffs' choice of forum, weighs against transfer.
24           The defendants' forum preference obviously
25  weighs in favor of transfer, but it is not given the same

44

1   weight as plaintiffs' preference.
2            I do find that the defendants' preference for
3   the Middle District of Florida is also a rational legitimate
4   preference, given that the underlying action, the governing
5   action is pending in state courts that are located within
6   the Middle District and also given that the Middle District
7   encompasses the location where LSGC maintains its principal
8   place of business when defendants issued the policies in
9   dispute.
10           So, again, that second factor does favor transfer.
11           The third factor I have considered is where the
12  claim arose.
13           In my view, the claim did not arise in either
14  Delaware or Florida.  The operative facts in this case are
15  the denial of the insurance coverage which appear from the
16  record to have taken place in New York where defendants'
17  agents acted and where the failed mediations regarding the
18  underlying governing action took place.
19           New York is also, according to plaintiffs, where
20  the insurance contracts were negotiated.  So I find that
21  this factor does not favor transfer.
22           Convenience of the parties.
23           This factor requires the Court to consider the
24  parties relative physical and financial condition.
25           Here, the plaintiffs are physically located in

45

1   Rhode Island, New Jersey, and Florida.  Defendants are
2   located physically in Illinois, Massachusetts, and New York.
3            It appears that Delaware is more convenient for
4   everyone than Florida is other than for one individual
5   plaintiff, Kaiser, the one who is a Florida resident, but
6   he is not asserting that Delaware is inconvenient.
7            More fundamentally, nothing in the record
8   indicates that litigating in Delaware would impose an undue
9   financial burden or otherwise undue burden on defendants.
10  To the contrary, defendants all operate nationally and admit
11  that they are authorized to do business in Delaware and, in
12  fact, engage in substantial business in Delaware.  So this
13  factor, the convenience of the parties, weighs against transfer.
14           Convenience of witnesses.
15           This factor is considered only to the extent
16  that witnesses may be unavailable for trial, if one is
17  before us.  And this point, nobody seems to believe that a
18  trial is going to be necessary; and statistically, as we all
19  know, most cases end short of trial.
20           That is not what gives me the confidence to say
21  what I said in this case.  It is the fact that the parties
22  are telling me that this is a case that will turn on discrete
23  legal issues and be resolved by motions, perhaps cross
24  motions of a dispositive nature interpreting the legal
25  language in an insurance contract.

46

1    So as an initial matter, this factor doesn't
2    weigh in favor of transfer because nobody thinks there is
3    going to be a trial.
4    Beyond that, no witnesses have been identified
5    or located outside of Delaware and are unwilling or unable
6    to come to Delaware for trial, if a trial is needed.  So,
7    again, this factor weighs against transfer.
8    Next is the location of books and records.  I
9    agree with the parties this factor is neutral.
10   The enforceability of the judgment.  I agree
11   with the parties, this factor is neutral.
12   Practical considerations.  I agree with the
13   parties that this factor is neutral.
14   Court congestion, I agree with the parties that
15   this factor is also neutral.
16   Now, mind you, saying all those factors are
17   neutral means they do not weigh in favor of transfer.
18   Next are the local interests of the forums in
19   question and the public policies of those forums.  And I
20   considered those two together because in my view the analysis
21   is essentially the same for both those factors in this case.
22   Delaware has a strong interest in adjudicating
23   disputes involving its corporate citizens and involving
24   officers and directors of its corporate citizens, particularly
25   a dispute over whether those individuals and corporate

47

1    citizens are being deprived of the benefits of an insurance
2    contract into which they enter, and the dispute here relates
3    to whether or not those plaintiffs are entitled to insurance
4    coverage.
5    It's also Delaware public policy that such a
6    dispute be resolved in a Delaware court.
7    On the other hand, Florida has a strong
8    interest as well.  Here, it has a strong interest in the
9    misrepresentation and/or fraud allegations that led to a
10   judgment in the Florida courts, in the underlying action.
11   Additionally, plaintiff concedes that Florida
12   has such an interest.  Plaintiff also concedes that Florida
13   law will be implicated in resolving the instant action.  And
14   whether there is an insured loss here would seem to be an
15   issue that implicates Florida public policy.
16   At least certainly, I would say Florida public
17   policy whether or not this is an insured covered loss may
18   also implicate Delaware public policy.
19   When you put it all together, I find that the
20   local interest public policy factor slightly favors transfer
21   under the circumstances here.  And,
22   Finally, I have considered the familiarity of
23   the Trial Judge with the applicable state law.
24   This factor does slightly favor transfer.  It's
25   conceded, as I already noted, that Florida law will at least

48

1    be implicated and may well govern.
2    It seems that there is no chance that Delaware
3    substantive law will govern, unless there turns out to be
4    no conflicts between Delaware and Florida or whatever other
5    state laws may be implicated; but in the context of this
6    case, even if you assume that Florida law will govern, I
7    don't think this factor gets very much weight under the
8    circumstances here.
9    No one at this point seems to be suggesting that
10   the legal analysis is going to be particularly complex or
11   turn on a Florida District Judge's greater familiarity with
12   Florida state law, particularly since I'm told that the
13   Florida securities statute under which the underlying
14   judgment arises is based on a federal statute.  So this
15   factor slightly favors transfer but I don't think it merits
16   a great deal of weight.
17   So the law requires me to weigh all those and
18   factor them together as I consider how best to exercise my
19   discretion.
20   When I do that, I find that in sum, several
21   factors weigh against transfer:  the plaintiffs' choice of
22   preferred forum, where the claims arose, the convenience of
23   the parties, and the witnesses.  Several factors weigh for
24   transfer:  the defendants' forum preference, the local
25   interest in public policy, and the familiarity of the state

49

1    law.  The remaining factors are neutral.
2    When I add them up and give them the appropriate
3    weight, I find that defendants have failed to show that the
4    weight of these factors strongly favors transfer, and so I
5    am denying the request for transfer.
6    I would only add I think defendant was correct
7    in saying all of these factors in the statute tell me to
8    focus my interest on the discretion of what is in the
9    interest of justice.  And I find under the circumstances
10   here, it is interest of justice to keep the case here in the
11   District of Delaware.
12   Among other things, neither side wants to be
13   here.  And so my decision today seems, according to the
14   record, to disappoint each side, and that may well be, and
15   appears to be, in the interest of justice.
16   So we'll issue an oral order that indicates that
17   I have given those rulings on the motions.  And I think the
18   case is ready therefore for me to request a scheduling proposal.
19   Do the plaintiffs agree or have any other
20   questions?
21   MR. ZIFFER:  No questions.  We agree.  I'm not
22   sure of Your Honor's procedure, but we would just request
23   the opportunity to meet and confer with defendants on that.
24   THE COURT:  Yes.  Our procedure is, we'll issue
25   an order telling you to meet and confer and to give us a

1    date for the proposed schedule.

2         MR. ZIFFER:  Okay.

3         THE COURT:  Defendants, are there any questions?

4         MR. SIMPSON:  No, Your Honor.  We agree with

5    that approach.

6         THE COURT:  Then you can expect to see some

7    orders from us shortly.  Thank you very much for the helpful

8    argument.  We will be in recess.

9         (Oral argument hearing ends at 12:50 p.m.)

10

11        I hereby certify the foregoing is a true and accurate

     transcript from my stenographic notes in the proceeding.

12

13                    /s/ Brian P. Gaffigan

                    Official Court Reporter

14                    U.S. District Court

15

16

17

18

19

20

21

22

23

24

25

**/**

/s [1] - 50:13

**1**

**1** [1] - 40:17
**10** [1] - 6:3
**101** [1] - 36:6
**104** [1] - 6:6
**11:05** [1] - 2:16
**12:50** [1] - 50:9
**14** [2] - 12:18, 12:23
**1404** [1] - 17:7
**1404(a** [1] - 42:8
**15** [1] - 1:10
**16-725-LPS** [1] - 1:8
**16th** [1] - 40:9
**1974** [1] - 13:24

**2**

**2** [1] - 40:21
**2005** [1] - 40:10
**2015** [1] - 14:5
**2017** [1] - 1:10
**22** [1] - 19:18
**23** [1] - 10:18
**28** [1] - 42:8

**3**

**3** [1] - 40:21
**30** [4] - 4:25, 5:5, 5:8, 6:14

**4**

**4** [1] - 40:21
**490** [1] - 13:23

**5**

**5** [1] - 40:25
**536** [1] - 13:23
**54** [1] - 6:19

**6**

**6** [1] - 40:25

**7**

**7** [2] - 10:9, 41:9
**78** [2] - 5:13, 6:13

**8**

**8** [1] - 40:25

**A**

**a.m** [1] - 2:16
**ability** [2] - 34:2, 34:7
**able** [2] - 9:4, 20:4
**absent** [1] - 11:11
**absolutely** [2] - 10:15, 31:13
**abstain** [1] - 26:3
**abstention** [2] - 5:7, 27:10
**accommodate** [1] - 7:25
**according** [2] - 44:19, 49:13
**accurate** [1] - 50:11
**accuse** [1] - 32:1
**accusing** [1] - 32:2
**acknowledge** [2] - 20:22, 36:4
**acknowledged** [1] - 34:5
**Act** [7] - 13:17, 13:18, 14:1, 14:17, 15:13, 23:17, 35:24
**acted** [1] - 44:17
**ACTION** [1] - 1:4
**action** [18] - 4:19, 8:3, 8:7, 8:9, 8:23, 9:15, 9:19, 12:6, 12:24, 15:21, 23:13, 26:22, 41:10, 44:4, 44:5, 44:18, 47:10, 47:13
**actions** [2] - 8:1, 43:10
**activities** [1] - 20:3
**activity** [1] - 6:10
**Adam** [2] - 3:16, 4:18
**ADAM** [1] - 1:19
**add** [2] - 49:2, 49:6
**additional** [1] - 34:20
**additionally** [1] - 47:11
**address** [5] - 32:13, 34:12, 34:13, 36:7, 36:8
**addressed** [2] - 4:21, 7:18
**adjudicating** [1] - 46:22
**adjudication** [1] - 13:20
**admit** [1] - 45:10
**admitted** [2] - 3:8, 19:20
**adopt** [2] - 8:3, 8:7

**adopted** [1] - 7:18
**advocate** [1] - 35:12
**afford** [1] - 13:18
**agents** [1] - 44:17
**agree** [10] - 10:13, 11:1, 11:13, 46:9, 46:10, 46:12, 46:14, 49:19, 49:21, 50:4
**agreeable** [2] - 3:21, 4:13
**agreed** [1] - 27:3
**agreeing** [1] - 42:13
**ahead** [1] - 4:17
**allegations** [2] - 19:20, 47:9
**alleging** [1] - 29:25
**allow** [1] - 43:20
**allows** [1] - 42:10
**alternative** [1] - 34:20
**amount** [3] - 8:24, 9:2, 9:4
**analysis** [7] - 12:19, 16:1, 32:22, 34:24, 41:17, 46:20, 48:10
**analyzing** [1] - 42:25
**AND** [1] - 1:2
**Anderson** [1] - 3:14
**ANDERSON** [1] - 1:15
**Andrews** [1] - 31:6
**answer** [3] - 5:19, 19:19, 24:4
**anticipatory** [1] - 8:25
**apparent** [4] - 6:14, 6:16, 6:21, 6:24
**appeal** [3] - 8:13, 8:19, 23:19
**appear** [2] - 21:19, 44:15
**appearances** [1] - 2:20
**APPEARANCES** [2] - 1:14, 2:1
**applicable** [2] - 4:25, 47:23
**application** [2] - 12:16, 33:24
**applies** [16] - 5:1, 7:15, 11:22, 16:25, 18:3, 30:18, 35:3, 35:12, 35:18, 35:20, 36:4, 36:18, 37:9, 37:22, 38:9, 38:11
**apply** [15] - 5:2, 11:19, 17:7, 18:13, 24:6, 30:2, 34:2, 35:4, 35:6, 35:19, 35:22, 36:17, 37:17, 37:19, 38:10
**applying** [6] - 26:7, 26:16, 30:4, 30:15, 31:22, 40:7

**appreciate** [2] - 3:10, 38:22
**approach** [1] - 50:5
**appropriate** [7] - 8:24, 10:2, 12:21, 14:18, 15:18, 38:24, 49:2
**argue** [4] - 4:5, 18:8, 18:9, 18:10
**argued** [1] - 39:7
**arguing** [1] - 3:17
**Argument** [1] - 1:11
**argument** [8] - 2:15, 14:23, 36:5, 38:15, 38:21, 41:8, 50:8, 50:9
**arguments** [1] - 28:23
**arise** [3] - 21:6, 42:12, 44:13
**arises** [1] - 37:24, 40:3, 48:14
**arose** [2] - 44:12, 48:22
**articulated** [1] - 33:17
**asbestos** [1] - 37:7
**aside** [1] - 24:4
**aspect** [1] - 18:18
**aspects** [1] - 35:8
**asserting** [1] - 45:6
**assess** [1] - 8:24
**assessment** [3] - 19:6, 19:7, 20:9
**associate** [1] - 7:7
**assume** [5] - 10:5, 13:12, 14:23, 32:3, 48:6
**assuming** [4] - 39:14, 39:15, 39:16, 39:19
**assumptions** [1] - 39:22
**assured** [1] - 13:1
**attached** [1] - 34:14
**attention** [1] - 3:7
**attorneys** [1] - 2:18
**attribute** [1] - 31:2
**authored** [1] - 16:13
**authorized** [3] - 19:23, 33:4, 45:11
**availability** [3] - 11:17, 22:11, 40:23
**available** [1] - 15:23
**avoid** [2] - 36:19, 41:2
**avoidance** [1] - 11:24

**B**

**bad** [6] - 9:13, 9:19, 9:22, 9:25, 29:23, 29:25
**balance** [4] - 16:22, 39:11, 43:3, 43:19

**Baldwin** [2] - 3:14, 3:24
**BALDWIN** [3] - 1:16, 3:13, 4:2
**based** [5] - 12:13, 23:14, 26:13, 39:11, 48:14
**bases** [1] - 6:24
**basis** [7] - 6:18, 12:16, 15:21, 17:4, 25:15, 37:21, 42:9
**bear** [1] - 16:19
**BEFORE** [1] - 1:13
**begin** [1] - 40:1
**beginning** [1] - 2:16
**behalf** [4] - 2:25, 3:25, 4:19, 23:24
**benefit** [1] - 26:18
**benefits** [1] - 47:1
**best** [3] - 21:13, 28:2, 48:18
**between** [4] - 25:16, 25:22, 35:15, 48:4
**beyond** [2] - 17:8, 46:4
**blocks** [1] - 11:15
**books** [4] - 22:7, 22:14, 22:17, 46:8
**bottom** [3] - 28:1, 31:5, 40:11
**breach** [3] - 8:25, 9:25
**Brian** [2] - 1:25, 50:13
**Brief** [1] - 38:17
**brief** [1] - 25:8
**briefing** [1] - 38:21
**briefly** [2] - 15:17, 36:2
**briefs** [1] - 42:24
**bring** [2] - 3:6, 9:16
**broader** [1] - 10:18
**broker** [7] - 22:1, 22:2, 22:3, 34:17, 36:22, 36:23, 37:13
**brought** [3] - 18:22, 19:3, 42:15
**burden** [10] - 10:22, 10:24, 11:5, 16:20, 17:8, 18:13, 19:16, 20:5, 20:6, 20:8, 20:14, 21:4, 22:5, 23:1, 32:23, 39:12, 42:17, 43:21, 45:9
**burdened** [2] - 22:25, 23:19
**business** [21] - 19:25, 20:1, 21:14, 24:10, 25:10, 28:16, 28:17, 28:18, 29:11, 29:13, 29:14, 29:20, 31:2, 33:4, 33:5, 34:16, 34:19, 36:10, 44:8,

45:11, 45:12
**businesses** [1] - 21:9
**BY** [4] - 1:16, 1:19, 1:22, 2:3

# C

**capable** [2] - 30:15, 30:16
**capacities** [1] - 18:15
**capacity** [1] - 43:11
**Carla** [1] - 3:15
**CARLA** [1] - 1:16
**carrier** [1] - 30:7
**carriers** [3] - 8:15, 9:1, 22:16
**case** [85] - 5:3, 5:15, 6:4, 6:5, 6:8, 6:18, 6:22, 7:1, 7:12, 7:24, 8:5, 8:6, 8:8, 8:11, 8:19, 9:3, 9:5, 10:7, 10:17, 10:18, 10:23, 12:1, 12:10, 12:21, 13:1, 13:15, 13:24, 14:4, 14:18, 14:21, 15:3, 15:6, 15:10, 15:24, 15:25, 16:3, 16:12, 16:18, 18:22, 21:24, 22:10, 22:14, 25:6, 25:7, 25:11, 26:12, 26:18, 28:4, 28:8, 28:9, 30:3, 30:24, 31:5, 31:6, 31:13, 31:14, 31:15, 31:21, 31:22, 33:15, 33:17, 35:10, 36:5, 36:13, 39:8, 39:17, 40:8, 40:9, 41:15, 41:20, 41:23, 41:25, 42:4, 42:14, 43:6, 44:14, 45:21, 45:22, 46:21, 48:6, 49:10, 49:18
**case-to-case** [1] - 15:6
**cases** [20] - 6:1, 7:24, 15:3, 15:4, 15:5, 15:20, 15:25, 16:2, 17:2, 20:14, 22:3, 22:15, 27:24, 28:19, 30:17, 37:6, 37:23, 40:7, 40:10, 45:19
**CASUALTY** [1] - 1:7
**causes** [1] - 13:21
**certain** [1] - 11:2
**certainly** [6] - 6:15, 16:7, 30:14, 35:22, 40:15, 47:16
**certainty** [1] - 25:20
**certify** [1] - 50:11
**challenging** [1] -

18:25
**chance** [2] - 4:16, 48:2
**change** [1] - 43:19
**changes** [1] - 10:22
**character** [2] - 17:16, 19:8
**Chief** [1] - 1:13
**choice** [22] - 13:19, 16:20, 16:23, 18:6, 18:14, 20:15, 28:19, 35:2, 36:12, 37:3, 37:4, 37:6, 37:11, 37:23, 43:1, 43:6, 43:7, 43:13, 43:15, 43:17, 43:23, 48:21
**choices** [1] - 28:12
**choose** [1] - 18:18
**Circuit** [16] - 5:2, 5:7, 6:22, 7:5, 7:12, 7:14, 7:17, 10:2, 13:23, 14:2, 26:24, 26:25, 27:1, 27:3, 33:23, 42:25
**circuits** [1] - 7:13
**circumstance** [2] - 14:4, 33:22
**circumstances** [5] - 26:19, 32:6, 47:21, 48:8, 49:9
**cited** [2] - 6:8, 31:14
**citizens** [3] - 46:23, 46:24, 47:1
**CIVIL** [1] - 1:4
**claim** [14] - 7:2, 7:20, 7:21, 8:4, 8:8, 9:18, 9:22, 10:4, 11:9, 12:12, 21:5, 23:25, 44:12, 44:13
**claims** [20] - 7:4, 7:16, 7:21, 7:22, 8:10, 8:20, 9:1, 9:12, 9:14, 9:16, 9:17, 9:20, 9:25, 20:2, 20:25, 21:6, 21:10, 39:18, 48:22
**clause** [2] - 6:19, 6:20
**clear** [4] - 34:12, 34:24, 35:7, 37:23
**client** [1] - 23:24
**clients** [2] - 32:24, 33:4
**close** [1] - 18:1
**CNA** [4] - 19:20, 21:8, 21:10, 22:16
**co** [1] - 3:3
**Co** [2] - 13:23, 40:8
**co-counsel** [1] - 3:3
**coercive** [4] - 7:3, 7:22, 8:10, 39:18
**cognizable** [1] - 13:21
**collapse** [1] - 30:22

**colleague** [1] - 3:15
**colleagues** [1] - 3:25
**Coltec** [1] - 7:24
**Columbia** [1] - 2:4
**coming** [3] - 18:5, 36:15, 36:16
**comments** [1] - 34:10
**commonly** [1] - 40:14
**Communications** [1] - 6:5
**companies** [4] - 14:8, 21:7, 24:12, 34:15
**company** [3] - 37:8, 37:12, 37:14
**COMPANY** [2] - 1:7, 1:7
**compelling** [1] - 27:5
**compels** [1] - 15:13
**competing** [1] - 37:10
**complaint** [4] - 5:21, 8:21, 9:7, 19:18
**complex** [2] - 38:7, 48:10
**component** [1] - 24:1
**components** [1] - 4:21
**conceded** [1] - 47:25
**concedes** [2] - 47:11, 47:12
**conceive** [1] - 21:25
**concern** [3] - 12:17, 13:5, 41:5
**concerned** [1] - 14:16
**concerns** [1] - 17:9
**concession** [1] - 33:14
**conclude** [1] - 25:16
**conclusion** [1] - 36:19
**condition** [1] - 44:24
**conduct** [2] - 19:25, 21:14
**conducted** [1] - 19:24, 21:6
**confer** [2] - 49:23, 49:25
**confidence** [1] - 45:20
**confirmed** [1] - 6:22
**conflict** [6] - 25:16, 35:1, 35:15, 35:16, 35:18, 41:2
**conflicts** [1] - 48:4
**congestion** [2] - 22:23, 46:14
**connection** [16] - 18:17, 20:20, 26:11, 26:12, 26:15, 29:3, 29:9, 29:10, 29:11, 30:1, 30:5, 30:12, 31:12, 31:17, 31:18, 36:20
**connections** [2] - 29:17, 37:10

**consider** [3] - 39:23, 44:23, 48:18
**considerable** [1] - 28:20
**consideration** [3] - 20:16, 43:16, 43:18
**considerations** [4] - 5:12, 22:22, 29:17, 46:12
**considered** [7] - 17:5, 34:4, 40:13, 44:11, 45:15, 46:20, 47:22
**consolidated** [1] - 16:3
**contained** [2] - 5:21, 8:21
**contemplated** [1] - 34:3
**contemplates** [1] - 32:16
**contend** [1] - 37:21
**contested** [1] - 42:13
**contesting** [1] - 19:4
**context** [8] - 13:6, 13:10, 14:2, 15:3, 15:19, 41:3, 43:6, 48:5
**Continental** [2] - 2:25, 3:1
**CONTINENTAL** [1] - 1:7
**Continued** [1] - 2:1
**continues** [1] - 19:24
**contract** [4] - 8:25, 10:1, 45:25, 47:2
**contracts** [1] - 44:20
**contrary** [1] - 45:10
**control** [1] - 25:23
**controversies** [1] - 23:2
**controversy** [2] - 23:3, 23:4
**convenience** [15] - 11:13, 11:17, 16:22, 17:10, 18:3, 21:12, 21:16, 22:9, 40:22, 40:23, 42:10, 44:22, 45:13, 45:14, 48:22
**convenienced** [1] - 20:19
**convenient** [1] - 45:3
**core** [1] - 27:7
**corporate** [4] - 43:8, 46:23, 46:24, 46:25
**Corporation** [2] - 3:15, 18:16
**corporation** [8] - 17:4, 18:17, 23:6, 24:9, 29:5, 31:19, 43:9, 43:12
**CORPORATION** [1] -

1:3
**corporations** [1] - 17:19
**correct** [9] - 4:1, 9:7, 11:3, 17:20, 17:21, 32:25, 33:2, 35:2, 49:6
**corresponding** [1] - 19:19
**CORROON** [1] - 1:15
**Corroon** [1] - 3:14
**costs** [1] - 8:14
**Counsel** [2] - 1:20, 2:5
**counsel** [5] - 2:24, 3:3, 5:18, 25:1, 27:23, 31:14, 33:6, 33:14, 40:25
**count** [1] - 21:17
**country** [1] - 7:13
**couple** [1] - 14:16
**coupled** [1] - 33:15
**course** [4] - 14:7, 29:10, 38:6, 42:7
**Court** [24] - 3:5, 7:1, 7:19, 8:23, 9:11, 10:3, 12:5, 13:3, 26:21, 26:23, 26:24, 27:14, 31:8, 32:17, 32:20, 35:14, 35:19, 40:7, 42:10, 44:23, 46:14, 50:13, 50:14
**COURT** [50] - 1:1, 2:17, 2:20, 3:10, 3:12, 3:21, 3:24, 4:3, 4:8, 4:13, 4:15, 6:12, 7:7, 7:9, 9:6, 10:5, 10:11, 10:13, 10:16, 10:24, 11:1, 13:12, 14:19, 16:10, 17:17, 17:22, 18:20, 18:25, 23:13, 23:18, 24:20, 24:22, 25:15, 29:4, 32:1, 32:22, 33:3, 33:8, 33:11, 35:1, 35:25, 36:21, 36:25, 38:12, 38:14, 38:20, 39:5, 49:24, 50:3, 50:6
**court** [69] - 2:16, 5:6, 7:16, 8:16, 9:15, 9:16, 10:21, 11:9, 11:12, 11:15, 11:21, 11:23, 12:2, 12:11, 12:15, 12:25, 13:1, 13:5, 14:9, 14:16, 14:18, 16:4, 16:5, 16:6, 16:12, 22:23, 23:14, 23:19, 26:3, 26:4, 26:5, 26:6, 26:14, 26:15, 26:17, 26:18, 27:18, 27:19, 27:20, 28:1, 30:14,

30:16, 30:19, 32:7, 32:8, 32:11, 32:16, 35:5, 35:11, 36:15, 36:18, 38:6, 38:8, 38:11, 39:8, 39:25, 40:18, 41:1, 41:5, 41:6, 41:7, 41:23, 41:24, 47:6

**Court's** [3] - 5:2, 8:1, 12:19

**courtroom** [1] - 3:9

**Courts** [2] - 7:17, 10:2

**courts** [13] - 13:20, 13:21, 22:24, 22:25, 23:6, 26:7, 34:2, 34:4, 34:8, 38:3, 44:5, 47:10

**cover** [4] - 20:3, 29:22, 29:23, 37:16

**coverage** [17] - 8:12, 9:20, 9:21, 21:5, 23:8, 24:11, 24:17, 25:12, 25:14, 29:22, 29:25, 32:13, 35:10, 35:21, 40:20, 44:15, 47:4

**covered** [3] - 8:18, 30:10, 47:17

**covers** [1] - 8:22

**credit** [1] - 32:4

**critical** [3] - 25:6, 25:7, 27:13

**cross** [2] - 4:15, 45:23

**cuts** [1] - 30:20

## D

**damages** [3] - 8:24, 9:2, 9:24

**date** [1] - 50:1

**DAVID** [1] - 1:16

**David** [1] - 3:13

**Davis** [1] - 13:23

**day-to-day** [1] - 15:7

**days** [3] - 5:13, 6:13, 6:19

**deal** [1] - 48:16

**dealing** [1] - 8:15

**decide** [3] - 7:16, 8:16, 32:17

**decided** [4] - 25:13, 26:14, 30:13, 30:25

**decides** [1] - 16:12

**deciding** [6] - 23:2, 23:7, 24:8, 24:16, 39:15, 39:17

**decision** [10] - 9:4, 12:18, 21:20, 24:13, 26:25, 31:6, 38:16, 38:24, 42:6, 49:13

**decisions** [3] - 10:1,

16:13, 26:23

**declaration** [4] - 8:22, 9:21, 11:21, 40:18

**declarations** [1] - 14:8

**declaratory** [13] - 7:3, 7:21, 8:1, 8:8, 9:8, 9:18, 9:24, 12:6, 12:12, 12:24, 39:18, 40:4, 41:10

**Declaratory** [5] - 13:17, 13:18, 14:1, 14:17, 15:12

**decline** [3] - 10:6, 39:13, 39:19

**declining** [1] - 13:3

**deemed** [2] - 6:5, 6:9

**deeper** [1] - 18:3

**defect** [2] - 5:8, 6:2

**defects** [3] - 4:25, 5:3, 5:16

**defendant** [6] - 16:23, 19:13, 19:15, 33:19, 39:2, 49:6

**defendants** [29] - 2:24, 4:7, 4:22, 9:6, 12:10, 14:22, 16:19, 17:15, 19:8, 19:19, 20:4, 20:7, 20:17, 20:19, 21:20, 22:9, 24:22, 31:16, 33:19, 42:17, 42:21, 43:20, 44:8, 45:1, 45:9, 45:10, 49:3, 49:23, 50:3

**Defendants** [2] - 1:8, 2:5

**defendants'** [8] - 24:1, 41:14, 42:1, 42:9, 43:24, 44:2, 44:16, 48:24

**defense** [3] - 5:17, 8:13, 32:4

**deference** [1] - 43:19

**definitively** [1] - 37:23

**DELAWARE** [1] - 1:2

**Delaware** [87] - 1:10, 17:3, 17:4, 17:19, 17:20, 18:1, 18:17, 18:18, 19:10, 19:15, 19:23, 20:1, 20:3, 20:5, 21:15, 22:24, 23:4, 23:6, 24:9, 24:15, 25:4, 25:17, 25:20, 25:22, 26:5, 26:11, 26:12, 26:15, 26:16, 28:12, 28:14, 28:15, 28:24, 28:25, 29:2, 29:5, 29:10, 30:16, 31:13, 31:16, 32:11, 32:24, 33:7, 33:15, 34:7, 34:8, 35:2, 35:5, 35:11,

35:15, 35:17, 35:18, 35:19, 36:5, 36:20, 37:5, 37:15, 37:18, 37:23, 41:24, 42:5, 43:7, 43:9, 43:12, 43:13, 44:14, 45:3, 45:6, 45:8, 45:11, 45:12, 46:5, 46:6, 46:22, 47:5, 47:6, 47:18, 48:2, 48:4, 49:11

**delay** [3] - 6:4, 6:6, 6:9

**denial** [2] - 33:17, 44:15

**denied** [3] - 31:14, 39:9, 41:21

**deny** [1] - 15:9

**denying** [5] - 39:10, 39:11, 41:14, 42:3, 49:5

**deposed** [1] - 22:2

**deprived** [1] - 47:1

**describing** [1] - 12:19

**desire** [1] - 14:7

**determination** [1] - 25:14

**determine** [2] - 8:4, 35:20

**determined** [2] - 8:23, 35:6

**determining** [2] - 10:3, 34:6

**difference** [2] - 25:22, 35:18

**differences** [1] - 35:3

**different** [2] - 34:16, 38:2

**difficulty** [1] - 33:15

**digging** [1] - 5:23

**DILWORTH** [1] - 1:22

**Dilworth** [1] - 2:24

**directly** [2] - 7:14, 24:4, 34:22

**directors** [5] - 18:16, 29:5, 29:9, 43:12, 46:24

**disappoint** [1] - 49:14

**discovery** [2] - 35:13, 36:21

**discrete** [1] - 45:22

**discretion** [28] - 7:1, 7:15, 7:20, 8:4, 9:11, 9:17, 10:3, 10:6, 12:5, 12:16, 12:21, 13:6, 13:9, 13:14, 14:6, 14:25, 15:21, 26:21, 26:22, 26:24, 27:2, 33:24, 39:19, 39:20, 39:24, 48:19, 49:8

**discretionary** [1] -

31:7

**discussed** [1] - 20:13

**discussion** [1] - 3:18

**dismiss** [1] - 15:20

**dismissal** [1] - 12:13

**dismissed** [1] - 16:4

**disposed** [1] - 22:10

**dispositive** [2] - 12:5, 45:24

**dispute** [8] - 20:23, 25:13, 32:12, 43:10, 44:9, 46:25, 47:2, 47:6

**disputes** [1] - 46:23

**disputing** [1] - 18:20

**DISTRICT** [2] - 1:1, 1:2

**District** [22] - 2:4, 7:17, 10:2, 12:19, 13:3, 14:5, 18:21, 22:24, 26:23, 30:17, 40:6, 40:9, 42:2, 42:4, 42:14, 42:20, 44:3, 44:6, 48:11, 49:11, 50:14

**disturbed** [2] - 16:21, 43:1

**doctrine** [1] - 27:11

**domicile** [1] - 34:16

**done** [1] - 5:4

**down** [1] - 31:11

**draw** [1] - 13:20

**drawn** [1] - 16:15

**drive** [1] - 8:20

**duplicative** [3] - 11:25, 12:3, 41:2

**during** [1] - 6:13

**dynamics** [1] - 10:21

## E

**Eastern** [2] - 14:5, 40:9

**effect** [1] - 40:10

**efficient** [1] - 4:12

**effort** [2] - 33:21, 36:19

**eight** [2] - 37:8, 40:13

**either** [12] - 7:8, 8:3, 8:7, 11:25, 12:1, 22:19, 22:20, 22:21, 22:22, 22:23, 34:19, 44:13

**electronically** [2] - 22:17

**Eleventh** [1] - 5:7

**eliminate** [1] - 10:9

**emphasized** [1] - 42:25

**encompasses** [1] - 44:7

**encourage** [1] - 12:22

**end** [1] - 45:19

**endeavor** [1] - 35:20

**endorsements** [3] - 25:11, 29:21, 34:13

**ends** [1] - 50:9

**enforceability** [2] - 22:21, 46:10

**engage** [1] - 45:12

**engaging** [2] - 16:1, 20:1

**enhancing** [2] - 18:17, 18:18

**enter** [1] - 47:2

**entered** [3] - 23:14, 25:12, 25:25

**entirely** [1] - 38:3

**entitled** [7] - 17:6, 20:15, 24:17, 28:20, 32:9, 43:15, 47:3

**equal** [1] - 23:1

**equally** [1] - 11:22

**er** [2] - 7:6, 7:10

**especially** [2] - 8:19, 9:13, 15:5

**ESQ** [5] - 1:16, 1:16, 1:19, 1:22, 2:3

**essentially** [3] - 19:9, 32:2, 46:21

**evaluate** [1] - 35:23

**evaluated** [1] - 6:1

**evaluating** [1] - 19:17

**event** [1] - 41:18

**evident** [1] - 15:2

**exacerbated** [1] - 15:8

**exact** [1] - 33:22

**exactly** [3] - 13:4, 13:10, 13:13

**examined** [1] - 35:9

**example** [4] - 9:13, 15:24, 26:10, 37:7

**excess** [2] - 8:15, 9:1

**exchanged** [1] - 22:18

**exclusively** [1] - 19:9

**exercise** [14] - 7:19, 9:11, 10:3, 10:17, 12:21, 13:14, 14:6, 14:25, 31:8, 38:6, 39:13, 39:20, 40:25, 48:18

**exercised** [1] - 32:15

**exercising** [3] - 12:5, 39:23, 40:4

**exhaustive** [1] - 42:19

**exist** [1] - 11:7

**existed** [1] - 20:22

**expect** [2] - 30:24, 50:6

**expectation** [1] - 22:25

**expertise** [6] - 26:4,

26:6, 27:19, 27:20,
34:1, 38:8
**explain** [2] - 7:25,
41:13
**express** [1] - 20:17
**expressly** [1] - 42:18
**extension** [1] - 5:18
**extent** [10] - 4:10,
15:9, 15:13, 16:11,
23:5, 23:9, 34:23,
35:16, 35:23, 45:15
**extremely** [1] - 38:22

## F

**F2d** [1] - 13:23
**face** [2] - 5:17, 43:21
**facilities** [1] - 37:8
**fact** [9] - 7:2, 15:6,
28:3, 28:16, 31:12,
38:2, 40:2, 45:12,
45:21
**Factor** [2] - 40:17,
41:9
**factor** [38] - 11:14,
11:18, 11:20, 12:4,
17:22, 21:2, 21:3,
22:4, 22:12, 23:11,
24:5, 24:7, 28:3,
29:15, 34:3, 34:9,
34:22, 34:24, 41:16,
43:5, 43:22, 44:10,
44:11, 44:21, 44:23,
45:13, 45:15, 46:1,
46:7, 46:9, 46:11,
46:13, 46:15, 47:20,
47:24, 48:7, 48:15,
48:18
**factors** [39] - 10:10,
11:2, 11:8, 12:14,
14:12, 17:18, 18:4,
18:12, 19:6, 20:7,
20:10, 22:20, 27:23,
28:5, 28:23, 30:14,
30:21, 39:11, 39:12,
39:23, 39:24, 40:5,
40:13, 40:21, 40:25,
41:5, 41:18, 42:18,
42:19, 42:25, 43:3,
46:16, 46:21, 48:21,
48:23, 49:1, 49:4,
49:7
**facts** [2] - 37:21, 44:14
**factual** [1] - 23:15
**failed** [5] - 20:7, 41:19,
42:22, 44:17, 49:3
**failure** [1] - 36:3
**faith** [6] - 9:13, 9:20,
9:22, 9:25, 29:23,
29:25
**familiar** [3] - 27:24,

30:19, 42:8
**familiarity** [3] - 47:22,
48:11, 48:25
**favor** [20] - 11:8,
16:22, 21:2, 21:3,
22:13, 24:5, 26:3,
30:20, 40:3, 40:15,
40:18, 41:13, 42:19,
43:3, 43:25, 44:10,
44:21, 46:2, 46:17,
47:24
**favorite** [3] - 16:14
**favors** [4] - 47:20,
48:15, 49:4
**February** [1] - 1:10
**Federal** [5] - 13:17,
13:18, 14:1, 14:17,
15:12
**federal** [28] - 9:16,
11:6, 11:11, 11:21,
11:23, 12:2, 12:11,
13:1, 13:20, 14:9,
14:10, 14:11, 15:21,
16:6, 16:12, 26:3,
26:6, 27:19, 32:15,
34:7, 34:8, 40:18,
41:5, 41:23, 42:1,
48:14
**fencing** [2] - 12:7,
41:11
**fer** [1] - 7:6
**file** [5] - 12:10, 12:25,
16:5, 17:5, 26:14
**filed** [5] - 5:12, 5:17,
9:8, 9:15, 11:15,
16:6, 27:10, 27:11,
28:21, 32:8
**filing** [1] - 12:24
**finally** [2] - 34:10,
47:22
**financial** [2] - 44:24,
45:9
**fine** [3] - 3:22, 4:15
**firm** [4] - 2:23, 3:4,
3:8, 3:16
**first** [17] - 4:21, 6:14,
10:9, 11:20, 15:16,
18:4, 18:13, 19:2,
25:5, 26:2, 35:11,
35:14, 39:7, 39:14,
42:12, 43:5, 43:22
**Florida** [126] - 6:4,
8:13, 12:1, 12:11,
14:22, 17:25, 18:21,
20:18, 20:20, 20:22,
20:23, 21:1, 21:6,
21:17, 22:24, 23:3,
23:9, 23:17, 23:19,
23:20, 24:6, 24:7,
24:8, 24:11, 24:12,
24:13, 24:14, 24:15,
25:4, 25:6, 25:7,

25:8, 25:10, 25:13,
25:14, 25:16, 25:23,
25:24, 26:6, 26:16,
28:13, 28:18, 29:2,
29:3, 29:8, 29:13,
29:17, 29:19, 29:20,
29:21, 30:3, 30:4,
30:12, 30:15, 30:18,
30:19, 30:20, 31:1,
31:2, 31:3, 31:4,
31:20, 31:21, 31:22,
32:12, 32:13, 33:7,
34:7, 34:11, 34:13,
35:4, 35:5, 35:7,
35:8, 35:12, 35:22,
35:24, 36:4, 36:7,
36:8, 36:10, 36:13,
36:14, 36:18, 37:12,
37:14, 37:16, 37:17,
37:22, 41:15, 42:2,
42:14, 42:20, 44:3,
44:14, 45:1, 45:4,
45:5, 47:7, 47:10,
47:11, 47:12, 47:15,
47:16, 47:25, 48:4,
48:6, 48:11, 48:12,
48:13
**Florida's** [1] - 30:11
**focus** [1] - 49:8
**following** [1] - 2:15
**footnote** [2] - 12:18,
12:23
**FOR** [1] - 1:2
**foregoing** [1] - 50:11
**foreign** [3] - 24:12,
26:7, 35:15
**form** [1] - 13:18
**forum** [39] - 6:18,
6:20, 12:8, 12:18,
12:23, 13:5, 13:8,
14:2, 14:10, 14:15,
14:20, 15:8, 15:11,
15:15, 16:23, 18:6,
18:14, 18:19, 20:15,
25:17, 26:9, 26:13,
28:19, 32:2, 32:6,
32:14, 32:18, 32:20,
33:20, 33:22, 42:1,
43:1, 43:6, 43:15,
43:17, 43:23, 43:24,
48:22, 48:24
**forums** [2] - 46:18,
46:19
**Foster** [1] - 5:3, 6:18,
6:21
**four** [1] - 31:16
**fraud** [5] - 23:16,
23:18, 23:25, 24:3,
47:9
**fundamentally** [1] -
45:7
**furnish** [1] - 13:19

## G

**Gaffigan** [1] - 1:25,
50:13
**generally** [2] - 5:10,
38:6
**given** [9] - 20:18, 26:2,
38:23, 41:16, 43:18,
43:25, 44:4, 44:6,
49:17
**govern** [5] - 25:14,
29:22, 48:1, 48:3,
48:6
**governing** [2] - 44:4,
44:18
**granted** [3] - 5:18,
16:21, 43:4
**Graphic** [1] - 6:5
**great** [2] - 24:21,
48:16
**greater** [1] - 48:11
**GREGORY** [1] - 1:4
**grounds** [1] - 5:8
**GROUP** [1] - 1:3
**guess** [1] - 31:9
**guideposts** [1] - 28:5
**guilty** [1] - 32:3

## H

**hac** [1] - 3:8
**hand** [1] - 47:7
**handlers** [1] - 21:11
**handling** [1] - 21:6
**happy** [1] - 4:9
**hard** [1] - 27:18
**Hartford** [1] - 7:25
**head** [1] - 25:2
**hear** [1] - 32:2
**heard** [1] - 34:2
**hearing** [2] - 2:16,
50:9
**Hearing** [1] - 1:11
**heart** [4] - 8:3, 8:7,
8:9, 9:18
**heavier** [1] - 10:22
**heavy** [2] - 16:19, 17:6
**held** [1] - 2:16
**help** [1] - 32:4
**helpful** [3] - 38:15,
38:22, 50:7
**hereby** [1] - 50:11
**hit** [1] - 25:2
**holders** [1] - 35:23
**home** [7] - 17:2, 17:6,
18:18, 18:19, 21:7,
23:3, 33:18
**Honor** [51] - 2:19,
2:22, 3:11, 3:13,

3:18, 3:23, 4:2, 4:4,
4:18, 6:17, 7:5, 8:2,
8:11, 11:14, 13:25,
14:11, 15:9, 15:14,
15:17, 16:11, 16:12,
16:25, 17:13, 17:24,
19:12, 19:18, 20:23,
21:2, 22:8, 23:23,
24:19, 24:24, 25:18,
27:8, 27:14, 29:6,
31:14, 31:24, 33:10,
33:13, 33:16, 34:5,
34:25, 36:1, 36:2,
37:5, 37:20, 39:3,
39:4, 50:4
**Honor's** [7] - 3:6,
14:14, 17:9, 24:5,
27:25, 31:6, 49:22
**HONORABLE** [1] -
1:13
**hope** [1] - 30:24
**hornbook** [1] - 37:3

## I

**identified** [7] - 5:7,
5:24, 13:5, 21:22,
33:23, 42:18, 46:4
**identify** [1] - 21:21
**Illinois** [1] - 21:9,
21:10, 36:17, 45:2
**imagine** [1] - 36:15,
36:16
**immediately** [1] -
34:11
**impact** [2] - 15:10,
15:15
**implicate** [4] - 20:11,
23:25, 24:2, 47:18
**implicated** [5] - 20:23,
21:1, 47:13, 48:1,
48:5
**implicates** [1] - 47:15
**implications** [1] -
14:24
**implicitly** [1] - 38:9
**important** [6] - 7:25,
25:24, 28:4, 42:23,
43:5, 43:22
**importantly** [1] - 40:1
**impose** [1] - 45:8
**IN** [2] - 1:1, 1:2
**inappropriate** [3] -
16:8, 19:11, 32:19
**INC** [1] - 1:6
**include** [1] - 19:10
**included** [1] - 7:20
**including** [5] - 7:24,
17:2, 20:1, 31:21,
42:18
**inconvenienced** [3] -

18:7, 18:9, 18:10
**inconvenient** [1] - 45:6
**incorporated** [9] - 21:9, 21:10, 26:11, 28:15, 28:24, 29:8, 31:16, 34:19, 36:16
**INDEMNITY** [1] - 1:7
**independent** [3] - 8:3, 8:7, 8:10
**indicate** [1] - 23:24
**indicated** [1] - 22:10
**indicates** [2] - 45:8, 49:16
**indicating** [1] - 14:14
**indication** [1] - 22:11
**individual** [7] - 17:19, 24:10, 24:11, 28:7, 28:9, 43:11, 45:4
**individuals** [4] - 18:5, 21:21, 29:4, 46:25
**informed** [1] - 3:1
**initial** [2] - 14:14, 46:1
**inordinate** [1] - 33:14
**inquiries** [1] - 42:12
**instant** [1] - 47:13
**instead** [3] - 12:15, 12:24, 41:25
**instruction** [1] - 16:7
**insufficient** [1] - 21:4
**insurable** [1] - 30:9
**Insurance** [3] - 13:23, 36:6, 40:8
**INSURANCE** [1] - 1:6
**insurance** [26] - 8:11, 14:8, 19:23, 19:25, 20:2, 21:7, 22:3, 22:15, 23:8, 24:11, 24:12, 24:17, 30:6, 34:15, 35:21, 37:10, 37:12, 37:14, 40:20, 41:3, 43:10, 44:15, 44:20, 45:25, 47:1, 47:3
**insured** [12] - 12:25, 29:20, 30:4, 31:1, 36:7, 36:9, 37:3, 37:15, 37:16, 47:14, 47:17
**insureds** [1] - 14:8
**insurer** [3] - 12:24, 29:24, 36:24
**Intellectual** [6] - 16:15, 16:16, 17:1, 17:3, 17:14, 19:12
**intended** [1] - 9:16
**interest** [26] - 14:11, 17:11, 23:2, 23:7, 23:10, 23:21, 24:8, 24:16, 28:2, 28:8, 31:10, 32:17, 32:21,

40:22, 41:3, 42:11, 46:22, 47:8, 47:12, 47:20, 48:25, 49:8, 49:9, 49:10, 49:15
**interests** [5] - 17:23, 25:3, 28:11, 28:13, 46:18
**international** [1] - 19:14
**interplay** [1] - 12:9
**interpretation** [1] - 30:8
**interpreting** [2] - 35:8, 45:24
**interrelated** [1] - 4:11
**introduce** [1] - 3:3
**investigating** [1] - 20:2
**involves** [1] - 31:22
**involving** [6] - 15:3, 15:4, 22:15, 32:13, 46:23
**irrelevant** [6] - 11:5, 11:14, 11:16, 11:18, 11:25, 14:12
**Island** [3] - 24:10, 29:14, 45:1
**issue** [23] - 6:3, 7:18, 16:18, 19:19, 20:15, 25:2, 26:2, 26:21, 27:5, 27:18, 30:8, 30:22, 31:22, 35:21, 37:15, 37:17, 37:24, 38:7, 41:22, 42:16, 47:15, 49:16, 49:24
**issued** [11] - 24:11, 25:8, 25:9, 28:17, 29:19, 32:12, 34:11, 34:22, 36:6, 37:8, 44:8
**issues** [10] - 5:23, 11:6, 21:24, 35:10, 38:24, 39:14, 41:1, 41:2, 45:23
**issuing** [1] - 20:2
**Item** [1] - 10:9
**itself** [2] - 19:8, 34:12
**ITT** [2] - 7:24, 33:17

**J**

**Jersey** [4] - 18:1, 23:10, 24:10, 45:1
**Jones** [1] - 3:15
**JONES** [1] - 1:16
**judge** [2] - 30:17, 32:20
**Judge** [2] - 1:13, 47:23
**Judge's** [1] - 48:11
**judgment** [26] - 7:21,

8:1, 9:8, 9:18, 9:24, 12:6, 12:12, 12:24, 20:21, 22:21, 23:14, 23:18, 24:2, 24:12, 24:18, 25:11, 25:25, 30:4, 31:8, 31:9, 32:13, 36:13, 41:10, 46:10, 47:10, 48:14
**Judgment** [5] - 13:17, 13:18, 14:1, 14:17, 15:12
**judicata** [1] - 12:8
**Jumara** [3] - 21:20, 28:1, 42:18
**jurisdiction** [16] - 5:1, 10:6, 10:17, 13:3, 17:5, 18:21, 31:7, 32:9, 33:7, 34:20, 35:13, 38:6, 39:13, 39:20, 40:4, 42:14
**jurisdictions** [3] - 26:8, 35:11, 35:16
**justice** [10] - 17:11, 28:2, 28:8, 31:11, 32:18, 32:21, 42:11, 49:9, 49:10, 49:15
**justification** [1] - 14:6
**justified** [1] - 33:17
**justify** [1] - 6:11
**justifying** [3] - 12:16, 13:6, 33:23

**K**

**Kaiser** [5] - 8:17, 17:25, 18:8, 23:8, 45:5
**KAISER** [1] - 1:4
**keep** [12] - 7:1, 7:20, 8:5, 9:17, 10:4, 10:16, 10:18, 12:21, 15:10, 16:12, 27:16, 49:10
**keeping** [1] - 10:22
**keeps** [1] - 27:14
**key** [6] - 25:19, 27:24, 30:7, 30:8, 31:22, 35:10
**kind** [3] - 13:8, 28:5, 30:21
**knowable** [6] - 6:14, 6:15, 6:20, 6:23
**known** [2] - 6:20, 27:11
**knows** [1] - 37:5

**L**

**lack** [4] - 11:4, 11:6, 13:2, 14:11

**language** [3] - 17:12, 19:7, 45:25
**large** [1] - 22:16
**last** [1] - 33:13
**laughed** [1] - 36:18
**law** [69] - 10:7, 14:9, 20:23, 21:1, 24:7, 25:7, 25:14, 25:16, 25:17, 25:20, 25:22, 25:23, 26:4, 26:6, 26:7, 26:16, 27:18, 29:21, 30:1, 30:3, 30:4, 30:15, 30:18, 32:10, 34:1, 34:2, 35:1, 35:2, 35:4, 35:6, 35:7, 35:9, 35:12, 35:17, 35:18, 35:19, 35:20, 35:22, 36:4, 36:12, 36:17, 36:18, 37:3, 37:4, 37:6, 37:9, 37:11, 37:17, 37:19, 37:22, 37:23, 37:25, 38:3, 38:8, 38:9, 38:11, 47:13, 47:23, 47:25, 48:3, 48:6, 48:12, 48:17, 49:1
**Law** [1] - 36:6
**laws** [1] - 48:5
**lawsuit** [2] - 8:17, 20:21
**learned** [1] - 6:13
**least** [4] - 20:24, 23:14, 47:16, 47:25
**leaving** [1] - 11:9
**led** [1] - 47:9
**ledger** [1] - 29:18
**legal** [7] - 27:5, 45:23, 45:24, 48:10
**legitimate** [5] - 17:4, 18:14, 43:8, 43:13, 44:3
**LEONARD** [1] - 1:13
**less** [2] - 26:5, 43:18
**lessen** [1] - 15:14
**lessened** [1] - 15:11
**liability** [2] - 35:9, 35:23
**LIABILITY** [1] - 1:7
**liberally** [1] - 16:21
**LIBERTY** [1] - 1:6
**Liberty** [4] - 2:24, 3:1, 8:14, 22:16
**light** [1] - 7:2
**Lighting** [10] - 3:14, 8:17, 17:1, 18:16, 23:5, 25:9, 29:8, 31:2, 34:12, 36:9
**LIGHTING** [1] - 1:3
**lightly** [2] - 16:20, 43:1

**likelihood** [1] - 11:20
**likely** [1] - 6:23
**limb** [1] - 27:4
**limit** [3] - 4:17, 5:5, 5:9
**line** [3] - 28:1, 31:5, 40:11
**list** [1] - 42:19
**literally** [1] - 14:21
**litigants** [1] - 12:22
**litigate** [2] - 32:12, 32:24
**litigated** [1] - 25:12
**litigating** [4] - 19:15, 20:5, 33:15, 45:8
**litigation** [7] - 8:12, 11:25, 12:3, 31:1, 33:18, 41:2, 43:9
**LLP** [3] - 1:15, 1:22, 2:3
**local** [5] - 23:2, 46:18, 47:20, 48:24
**located** [9] - 20:3, 21:11, 29:24, 30:23, 34:17, 44:5, 44:25, 45:2, 46:5
**location** [4] - 22:14, 30:20, 44:7, 46:8
**locations** [1] - 22:7
**logical** [2] - 32:10, 32:11
**logically** [1] - 32:9
**look** [9] - 28:7, 28:10, 29:16, 29:18, 30:21, 35:11, 35:14, 37:4, 42:7
**looked** [3] - 5:16, 21:24, 40:14
**looking** [1] - 26:1
**lookout** [1] - 13:8
**looks** [1] - 7:17
**loss** [7] - 30:1, 36:11, 36:12, 37:16, 37:18, 47:14, 47:17
**LSGC** [2] - 43:8, 44:7

**M**

**maintain** [1] - 13:9
**maintained** [1] - 22:18
**maintains** [1] - 44:7
**Massachusetts** [1] - 45:2
**master** [1] - 9:7
**material** [1] - 19:24
**matter** [10] - 5:1, 25:21, 26:13, 30:8, 30:9, 35:17, 36:24, 37:2, 46:1
**matters** [2] - 14:9, 25:21

**McKool** [1] - 3:16
**MCKOOL** [1] - 1:18
**mean** [4] - 10:18, 11:7, 32:1, 32:6
**meaning** [1] - 20:24
**means** [3] - 12:7, 43:14, 46:17
**meant** [1] - 10:18
**mediations** [1] - 44:17
**meet** [6] - 20:4, 20:7, 21:4, 43:20, 49:23, 49:25
**meeting** [1] - 39:12
**mentioned** [2] - 21:14, 30:16
**Merit** [1] - 1:25
**merits** [2] - 27:13, 48:15
**met** [1] - 42:17
**method** [2] - 12:7, 41:10
**Middle** [9] - 18:21, 22:24, 30:17, 42:1, 42:13, 42:20, 44:3, 44:6
**might** [4] - 12:20, 12:22, 36:12, 41:16
**mind** [1] - 46:16
**Minnesota** [1] - 6:6
**minute** [1] - 26:1
**misrepresentation** [1] - 47:9
**misrepresentations** [1] - 30:5
**mixed** [9] - 7:2, 7:15, 7:21, 8:8, 9:12, 10:4, 26:22, 39:17
**moment** [2] - 13:12, 41:14
**month** [1] - 6:4
**morning** [7] - 2:17, 2:18, 2:23, 3:12, 3:13, 24:23, 24:25
**most** [8] - 39:6, 40:1, 40:13, 40:14, 41:8, 43:5, 43:22, 45:19
**motion** [39] - 3:19, 4:20, 4:23, 5:13, 5:21, 5:22, 5:24, 6:9, 6:11, 6:17, 12:9, 14:25, 15:5, 15:9, 15:10, 15:14, 15:15, 15:19, 16:9, 16:17, 16:19, 18:24, 22:11, 25:5, 27:9, 27:22, 30:25, 31:15, 33:18, 34:4, 34:6, 34:9, 34:23, 38:2, 39:7, 39:9, 41:14, 41:20, 42:9
**motions** [13] - 3:2,

4:5, 4:6, 4:16, 6:2, 15:4, 15:5, 16:13, 17:7, 39:6, 45:23, 45:24, 49:17
**movant** [1] - 6:21
**moved** [1] - 6:19
**MR** [48] - 2:22, 3:11, 3:13, 3:23, 4:2, 4:4, 4:10, 4:14, 4:18, 6:15, 7:8, 7:10, 9:10, 10:8, 10:12, 10:15, 10:20, 10:25, 11:4, 13:16, 15:2, 16:11, 17:21, 17:24, 18:23, 19:2, 23:17, 23:23, 24:21, 24:24, 25:18, 29:6, 32:5, 33:2, 33:6, 33:10, 33:13, 35:5, 36:1, 36:2, 36:23, 37:2, 38:13, 39:3, 39:4, 49:21, 50:2, 50:4
**must** [3] - 19:15, 21:20, 43:2
**mutual** [1] - 4:8
**Mutual** [1] - 40:8

# N

**nail** [1] - 25:2
**name** [1] - 2:23
**named** [1] - 36:9
**national** [1] - 19:14
**nationally** [2] - 21:13, 45:10
**Nationwide** [1] - 40:8
**nature** [2] - 38:23, 45:24
**necessarily** [2] - 24:3, 24:8
**necessary** [2] - 21:21, 45:18
**necessitate** [1] - 8:2
**need** [4] - 8:22, 13:8, 24:6, 39:23
**needed** [2] - 13:19, 46:6
**negotiated** [1] - 44:20
**negotiations** [1] - 37:1
**neutral** [14] - 18:11, 21:13, 22:4, 22:5, 22:20, 23:11, 40:16, 40:24, 46:9, 46:11, 46:13, 46:15, 46:17, 49:1
**new** [2] - 13:18, 13:19
**New** [12] - 1:19, 17:25, 21:9, 21:11, 23:10, 24:10, 37:14, 44:16, 44:19, 45:1, 45:2
**next** [3] - 6:25, 46:8,

46:18
**NO** [1] - 1:8
**nobody** [2] - 45:17, 46:2
**non** [4] - 5:3, 5:8, 6:2, 42:19
**non-defect** [2] - 5:8, 6:2
**non-defects** [1] - 5:3
**non-exhaustive** [1] - 42:19
**note** [3] - 34:18, 42:23, 43:17
**NOTE** [1] - 2:15
**noted** [1] - 47:25
**notes** [1] - 50:11
**nothing** [6] - 6:13, 27:8, 31:13, 32:19, 32:25, 45:7
**notice** [1] - 5:16
**November** [1] - 40:9
**number** [4] - 7:17, 10:9, 10:10, 16:13

# O

**objection** [4] - 4:14, 4:22, 5:11, 39:2
**obligation** [1] - 11:22
**obtain** [1] - 9:2
**obvious** [1] - 27:9
**obviously** [1] - 43:24
**OF** [1] - 1:2
**officers** [5] - 18:16, 29:4, 29:9, 43:12, 46:24
**offices** [1] - 21:7
**Official** [1] - 50:13
**often** [6] - 9:12, 15:22, 19:11, 26:7, 38:4, 38:7
**once** [1] - 11:5
**one** [32] - 4:16, 5:7, 5:11, 7:18, 11:18, 16:2, 17:24, 20:11, 21:25, 22:8, 23:23, 24:14, 25:6, 26:10, 26:20, 28:3, 28:4, 28:14, 28:25, 29:1, 30:7, 31:12, 31:18, 31:19, 37:25, 42:12, 43:5, 45:4, 45:5, 45:16, 48:9
**ones** [2] - 11:2, 32:8
**oOo** [1] - 2:13
**open** [1] - 2:16
**operate** [2] - 19:9, 21:13, 45:10
**operating** [1] - 29:12
**operations** [2] - 19:14,

19:16
**operative** [1] - 44:14
**opinion** [1] - 43:20
**opinions** [1] - 27:25
**opportunity** [1] - 49:23
**opposed** [1] - 16:19
**opposite** [1] - 27:19
**opposition** [1] - 18:23
**Oral** [2] - 1:11, 50:9
**oral** [2] - 2:15, 49:16
**order** [4] - 39:6, 43:3, 49:16, 49:25
**orders** [1] - 50:7
**ordinarily** [1] - 17:7
**originally** [1] - 16:5
**Osenbach** [2] - 14:4, 15:24
**otherwise** [3] - 35:3, 41:16, 45:9
**ought** [1] - 30:13
**outside** [1] - 46:5
**outweighed** [1] - 40:5
**overall** [1] - 18:13
**overcome** [2] - 40:5, 41:19

# P

**P.C** [1] - 1:18
**p.m** [1] - 50:9
**paid** [1] - 8:14
**Palm** [1] - 6:4
**papers** [1] - 22:9
**paragraph** [2] - 19:21, 19:22
**paragraphs** [1] - 19:18
**parallel** [15] - 10:14, 10:20, 11:4, 12:2, 12:17, 12:20, 13:2, 13:7, 13:10, 14:13, 27:15, 33:24, 40:2, 41:6, 41:7
**paramount** [3] - 20:16, 43:15, 43:18
**part** [2] - 32:22, 39:6
**particular** [2] - 14:20, 28:9
**particularly** [3] - 46:24, 48:10, 48:12
**parties** [22] - 6:8, 11:13, 16:22, 17:10, 17:15, 18:4, 21:12, 21:13, 21:17, 40:22, 42:11, 42:23, 43:2, 44:22, 44:24, 45:13, 45:21, 46:9, 46:11, 46:13, 46:14, 48:23
**party** [3] - 21:19, 22:1, 32:7

**PAXSON** [1] - 1:22
**Paxson** [1] - 2:24
**pay** [2] - 23:21, 30:7
**pending** [3] - 8:12, 41:1, 44:5
**Pennsylvania** [2] - 14:5, 40:9
**per** [1] - 23:15
**perceived** [1] - 14:21
**perfectly** [1] - 30:15
**perhaps** [1] - 45:23
**period** [2] - 5:5, 6:3
**permanent** [1] - 25:17
**permitted** [1] - 7:19
**persuade** [2] - 39:12, 39:24
**pertinent** [1] - 42:17
**petition** [1] - 27:10
**phonetic** [1] - 7:6
**phonetic)** [1] - 7:11
**physical** [1] - 44:24
**physically** [2] - 44:25, 45:2
**place** [18] - 15:16, 18:13, 21:8, 24:9, 25:10, 28:16, 28:17, 29:11, 29:14, 29:20, 31:1, 32:11, 34:16, 34:19, 36:10, 44:8, 44:16, 44:18
**plain** [1] - 33:21
**plaintiff** [8] - 31:16, 39:11, 40:11, 41:8, 43:8, 45:5, 47:11, 47:12
**plaintiff's** [1] - 28:19
**plaintiffs** [21] - 4:1, 4:19, 17:18, 18:5, 26:10, 26:14, 28:15, 29:1, 31:12, 31:19, 31:20, 32:1, 33:12, 36:3, 41:19, 43:11, 43:14, 44:19, 44:25, 47:3, 49:19
**Plaintiffs** [2] - 1:5, 1:20
**plaintiffs'** [16] - 16:20, 16:23, 20:15, 39:7, 39:16, 41:20, 43:1, 43:6, 43:7, 43:15, 43:17, 43:23, 44:1, 48:21
**plead** [1] - 32:3
**pleased** [1] - 3:3
**point** [6] - 22:8, 25:6, 26:25, 27:8, 45:17, 48:9
**pointed** [2] - 25:8, 27:8, 27:15
**points** [1] - 25:7
**policies** [3] - 20:2,

44:8, 46:19
**policy** [32] - 8:18, 8:22, 23:7, 25:8, 28:17, 29:19, 29:25, 30:8, 30:9, 30:11, 30:12, 30:19, 31:23, 32:12, 34:11, 34:12, 34:21, 35:8, 35:23, 36:6, 36:8, 37:1, 37:7, 37:15, 37:18, 38:1, 47:5, 47:15, 47:17, 47:18, 47:20, 48:25
**policyholder** [2] - 24:14, 24:15
**policyholders** [3] - 20:3, 23:8, 24:17
**pose** [2] - 19:15, 20:5
**position** [3] - 3:2, 24:1, 31:25
**potential** [2] - 35:1, 35:11
**potentially** [1] - 30:23
**POTTER** [1] - 1:15
**Potter** [1] - 3:14
**practical** [2] - 22:22, 46:12
**precise** [1] - 40:17
**predicate** [1] - 9:23
**predicated** [1] - 14:20
**preference** [8] - 4:5, 4:8, 20:17, 43:24, 44:1, 44:2, 44:4, 48:24
**preferred** [2] - 42:1, 48:22
**prejudice** [2] - 6:10, 16:5
**preliminary** [1] - 19:6
**preparing** [1] - 5:22
**prerequisite** [2] - 9:23, 9:24
**present** [1] - 3:2
**presenting** [1] - 3:4
**presumption** [5] - 10:16, 27:14, 27:16, 40:3, 41:19
**pretty** [1] - 38:5
**prevail** [1] - 16:24
**prevent** [3] - 12:6, 13:2, 41:9
**primary** [1] - 8:15
**principal** [2] - 21:8, 24:9, 25:10, 28:16, 28:17, 29:11, 29:14, 29:19, 34:16, 34:19, 36:10, 44:7
**prism** [1] - 16:16
**private** [1] - 20:9
**pro** [2] - 3:8, 37:3
**pro-insured** [1] - 37:3

**procedural** [2] - 12:7, 41:11
**procedure** [2] - 49:22, 49:24
**proceeding** [15] - 10:21, 11:5, 11:11, 12:3, 12:17, 12:20, 13:7, 13:10, 14:13, 27:15, 33:25, 40:2, 41:6, 41:7, 50:11
**Proceedings** [1] - 38:19
**proceedings** [2] - 10:14, 13:2
**pronounced** [1] - 7:6
**proper** [1] - 5:4
**properly** [1] - 13:21
**proposal** [1] - 49:18
**proposed** [1] - 50:1
**prove** [1] - 19:15
**provide** [1] - 12:7
**proving** [1] - 20:5
**public** [15] - 20:9, 22:20, 30:9, 30:11, 30:12, 30:19, 31:23, 40:22, 46:19, 47:5, 47:15, 47:16, 47:18, 47:20, 48:25
**purely** [1] - 14:9
**purpose** [5] - 13:16, 13:17, 14:1, 14:17, 15:12
**purposes** [1] - 21:18
**put** [5] - 2:20, 11:5, 14:3, 32:4, 47:19
**puts** [1] - 41:22
**putting** [1] - 24:4

**Q**

**questioning** [1] - 25:2
**questions** [7] - 11:6, 24:19, 31:24, 33:8, 49:20, 49:21, 50:3
**quite** [1] - 22:25
**quote** [2] - 14:4, 19:23
**quoting** [2] - 12:23, 16:4, 19:12, 40:7

**R**

**race** [1] - 12:8
**raised** [1] - 4:22
**rare** [1] - 38:5
**rather** [2] - 11:10, 38:25
**rational** [3] - 43:8, 43:14, 44:3
**rationale** [3] - 38:3, 38:4, 38:10

**re** [1] - 16:5
**re-file** [1] - 16:5
**reach** [1] - 42:6
**readily** [1] - 6:21
**ready** [1] - 49:18
**really** [7] - 9:7, 20:14, 27:21, 28:7, 32:9, 40:14, 41:8
**reason** [10] - 13:14, 14:7, 20:6, 26:2, 26:17, 27:5, 27:17, 27:21, 38:1, 39:1
**reasonable** [2] - 25:13, 37:21
**reasoning** [2] - 7:23, 41:17
**reasons** [1] - 26:20
**rebut** [1] - 4:16
**rebuttal** [1] - 24:20
**receive** [1] - 14:8
**received** [1] - 5:20
**recess** [4] - 38:16, 38:17, 38:19, 50:8
**recognition** [2] - 8:1, 17:9
**recognize** [3] - 20:20, 27:25, 30:17
**recognized** [6] - 5:3, 7:12, 10:21, 17:1, 17:13, 20:14
**recognizes** [1] - 17:3
**recognizing** [1] - 38:9
**reconvened** [1] - 38:19
**record** [7] - 2:21, 3:24, 32:23, 32:25, 44:16, 45:7, 49:14
**records** [4] - 22:7, 22:14, 22:17, 46:8
**reduces** [1] - 41:15
**refer** [2] - 6:17, 19:17
**reference** [1] - 5:6
**regard** [1] - 25:24
**regarding** [1] - 44:17
**region** [1] - 19:9
**regional** [3] - 17:15, 19:8, 33:19
**Registered** [1] - 1:25
**registered** [1] - 33:4
**Rei** [1] - 7:6
**Rei-fer** [1] - 7:6
**Reif** [2] - 7:6, 7:10
**Reif-er** [2] - 7:6, 7:10
**Reifer** [12] - 7:12, 7:16, 10:10, 10:21, 12:15, 12:18, 13:5, 14:16, 33:23, 40:5, 40:6, 40:7
**Rein** [2] - 3:4, 3:8
**REIN** [1] - 2:3
**reject** [2] - 7:20, 15:14

**rejection** [1] - 6:11
**relate** [1] - 40:21
**related** [2] - 5:23, 41:2
**relates** [3] - 43:10, 47:2
**relationship** [1] - 41:5
**relative** [4] - 11:17, 17:10, 34:7, 44:24
**relevant** [10] - 11:2, 11:7, 11:10, 25:20, 28:20, 29:12, 34:5, 34:22, 34:23, 38:3
**relief** [6] - 7:3, 8:9, 9:24, 13:19, 39:18, 39:19
**remaining** [1] - 49:1
**remand** [45] - 3:19, 4:3, 4:20, 5:13, 5:24, 6:9, 6:11, 6:19, 6:24, 7:1, 8:5, 13:6, 14:18, 15:4, 15:13, 15:15, 15:18, 15:19, 15:23, 16:1, 16:7, 16:8, 16:19, 25:5, 26:2, 26:20, 26:22, 27:2, 27:9, 27:17, 27:21, 34:4, 34:6, 34:9, 34:23, 38:2, 38:5, 39:7, 39:16, 39:25, 40:15, 40:18, 41:4, 41:13, 41:21
**remanded** [4] - 15:25, 16:3, 38:4, 41:20
**remanding** [1] - 38:10
**remedies** [2] - 11:18, 40:24
**remedy** [3] - 15:19, 15:23, 16:8
**remiss** [1] - 23:24
**removal** [9] - 5:4, 5:14, 5:16, 6:18, 6:22, 9:17, 15:22, 15:24, 27:10
**remove** [2] - 13:1, 32:15
**removed** [1] - 5:15
**render** [1] - 24:13
**rendered** [1] - 24:2
**reply** [2] - 18:24, 29:23
**Reporter** [1] - 1:25, 50:13
**REPORTER'S** [1] - 2:15
**request** [6] - 13:6, 39:16, 42:3, 49:5, 49:18, 49:22
**requested** [1] - 5:18
**required** [2] - 34:1, 40:11
**requires** [2] - 44:23, 48:17

**res** [1] - 12:8
**researching** [1] - 6:16
**resident** [9] - 17:24, 17:25, 23:9, 24:14, 24:15, 24:16, 29:2, 31:20, 45:5
**residents** [2] - 17:19, 23:7
**resolve** [2] - 11:21, 40:19
**resolved** [3] - 9:5, 45:23, 47:6
**resolving** [1] - 47:13
**respect** [9] - 4:20, 5:10, 5:12, 9:19, 18:12, 21:8, 21:12, 23:1, 33:20
**respective** [2] - 25:3, 28:13
**respects** [1] - 31:6
**respond** [1] - 2:18
**response** [4] - 5:20, 6:17, 23:23, 25:1
**rest** [1] - 29:16
**restraint** [1] - 41:1
**result** [1] - 28:1
**reversal** [1] - 9:3
**revert** [1] - 13:25
**Rhode** [3] - 24:10, 29:14, 45:1
**Richard** [1] - 3:3
**RICHARD** [2] - 1:4, 2:3
**rightly** [1] - 36:17
**rights** [1] - 23:7
**risk** [2] - 12:3, 14:20
**rule** [3] - 4:25, 37:3, 39:20
**ruling** [2] - 5:2, 8:20
**rulings** [1] - 49:17
**run** [2] - 4:6, 12:3
**rushed** [1] - 32:8
**rushing** [1] - 32:7

**S**

**sake** [1] - 14:23
**sale** [1] - 30:5
**satisfies** [1] - 8:9
**save** [1] - 24:20
**scale** [2] - 14:12, 19:14
**schedule** [1] - 50:1
**scheduling** [1] - 49:18
**SCIENCE** [1] - 1:3
**Science** [10] - 3:14, 8:17, 17:1, 18:16, 23:5, 25:9, 29:8, 31:2, 34:12, 36:9
**screams** [1] - 31:21
**se** [1] - 23:15

seat [1] - 38:20
**Second** [1] - 27:3
**second** [3] - 16:3, 31:9, 44:10
**Section** [1] - 42:8
**securities** [2] - 30:6, 48:13
**Securities** [1] - 23:17, 35:24
**see** [3] - 5:17, 32:25, 50:6
**seeking** [4] - 8:19, 9:1, 29:25, 43:2
**seem** [1] - 47:14
**selection** [2] - 6:18, 6:20
**sell** [1] - 19:23
**selling** [1] - 20:1
**sense** [1] - 32:10
**separate** [1] - 8:2
**separately** [1] - 4:6
**sequence** [1] - 3:19
**serve** [1] - 17:11
**served** [1] - 28:8
**serves** [1] - 28:2
**settlement** [1] - 40:23
**seven** [1] - 6:4
**Seventh** [1] - 27:1
**several** [2] - 48:20, 48:23
**shop** [1] - 12:23
**shopping** [17] - 12:18, 13:5, 13:8, 14:2, 14:15, 14:20, 15:8, 15:11, 15:15, 26:9, 26:14, 32:2, 32:6, 32:14, 32:18, 33:21, 33:22
**short** [1] - 23:23, 45:19
**shorter** [1] - 6:2
**shortly** [1] - 50:7
**show** [7] - 7:9, 36:25, 42:17, 42:21, 42:22, 43:2, 49:3
**showing** [1] - 40:12
**shows** [5] - 32:23, 35:13, 36:4, 36:19, 36:21
**side** [6] - 9:25, 10:1, 28:14, 29:18, 49:12, 49:14
**sides** [2] - 3:21, 38:14
**significance** [1] - 9:9, 9:10
**significant** [3] - 20:18, 23:20, 28:21
**similar** [1] - 31:5
**simply** [4] - 32:15, 37:20, 38:10, 39:22
**SIMPSON** [15] - 2:3,

4:14, 24:24, 25:18, 29:6, 32:5, 33:2, 33:6, 33:10, 36:2, 36:23, 37:2, 38:13, 39:4, 50:4
**Simpson** [1] - 3:3
**single** [1] - 30:18
**sister** [1] - 10:1
**slight** [1] - 41:16
**slightly** [5] - 41:13, 43:19, 47:20, 47:24, 48:15
**SMITH** [1] - 1:18
**Smith** [1] - 3:16
**Snapper** [1] - 5:6
**solution** [1] - 16:1
**someone** [1] - 36:15
**sometimes** [2] - 22:1, 22:2
**somewhat** [2] - 4:11, 42:24
**soon** [1] - 5:16
**sorry** [1] - 22:8
**sort** [1] - 23:15
**sought** [3] - 8:9, 19:13, 25:12
**sound** [1] - 33:21
**special** [5] - 14:10
**specific** [5] - 14:15, 15:6, 15:7, 21:21, 28:3
**split** [1] - 7:13
**standard** [5] - 16:16, 17:8, 18:2, 20:14, 33:16
**standards** [2] - 17:6, 33:16
**STARK** [1] - 1:13
**Starr** [7] - 2:25, 3:1, 19:20, 21:8, 21:10, 22:16, 34:18
**STARR** [1] - 1:7
**start** [3] - 4:3, 10:8, 25:5
**starting** [1] - 3:19
**state** [57] - 9:15, 10:14, 11:4, 11:9, 11:15, 11:22, 12:2, 12:20, 12:25, 13:2, 13:7, 13:10, 13:21, 14:9, 14:13, 14:18, 16:5, 23:22, 26:3, 26:4, 26:5, 26:14, 26:15, 26:18, 27:18, 27:20, 29:24, 29:25, 30:1, 30:16, 30:20, 32:11, 33:24, 34:1, 34:8, 34:17, 36:11, 37:25, 38:8, 38:9, 38:11, 39:8, 39:25, 40:2, 41:1, 41:6,

41:7, 44:5, 47:23, 48:5, 48:12, 48:25
**State** [3] - 19:25, 37:25, 38:1
**state's** [2] - 30:1, 38:2
**statement** [1] - 10:18
**STATES** [1] - 1:1
**states** [4] - 19:22, 28:12, 35:20, 37:9
**statistically** [1] - 45:18
**statute** [10] - 17:12, 19:7, 23:16, 24:2, 25:24, 32:16, 42:9, 48:13, 48:14, 49:7
**statutory** [1] - 42:9
**stay** [2] - 15:20, 42:4
**staying** [2] - 36:5, 41:23
**stenographic** [1] - 50:11
**step** [3] - 26:1, 28:10, 29:16
**Stewart** [1] - 3:7
**still** [7] - 7:15, 9:11, 12:20, 15:13, 19:5, 28:18, 29:13
**strong** [5] - 43:19, 43:21, 46:22, 47:7, 47:8
**stronger** [1] - 31:17
**strongly** [4] - 16:22, 42:19, 43:3, 49:4
**subject** [4] - 5:1, 5:5, 5:8, 12:13
**submit** [1] - 36:3
**substantial** [3] - 19:25, 21:14, 45:12
**substantive** [1] - 48:3
**succinct** [2] - 38:15, 38:22
**sued** [3] - 17:1, 18:15, 32:19
**sues** [1] - 17:4
**suggest** [1] - 7:23
**suggesting** [1] - 48:9
**suit** [1] - 17:5
**sum** [1] - 48:20
**summarizes** [1] - 31:25
**support** [8] - 21:16, 22:18, 22:21, 22:22, 23:10, 23:11, 32:25
**supports** [1] - 15:15
**Supreme** [1] - 8:1
**susceptible** [1] - 16:7
**Svitesic** [1] - 40:8

## T

**terms** [8] - 7:13,

10:22, 18:12, 20:24, 30:9, 32:6, 35:7, 38:1
**test** [5] - 7:19, 8:4, 8:8, 17:9, 21:18
**tests** [2] - 7:23, 20:10
**Texas** [10] - 21:10, 22:4, 34:17, 34:19, 35:12, 36:22, 36:23, 37:1, 37:8, 37:13
**Thad** [1] - 2:23
**THADDEUS** [1] - 1:22
**THE** [51] - 1:1, 1:2, 2:17, 2:20, 3:10, 3:12, 3:21, 3:24, 4:3, 4:8, 4:13, 4:15, 6:12, 7:7, 7:9, 9:6, 10:5, 10:11, 10:13, 10:16, 10:24, 11:1, 13:12, 14:19, 16:10, 17:17, 17:22, 18:20, 18:25, 23:13, 23:18, 24:20, 24:22, 25:15, 29:4, 32:1, 32:22, 33:3, 33:8, 33:11, 35:1, 35:25, 36:21, 36:25, 38:12, 38:14, 38:20, 39:5, 49:24, 50:3, 50:6
**themselves** [2] - 18:4, 21:17
**therefore** [5] - 8:2, 11:11, 29:8, 39:20, 49:18
**thinks** [1] - 46:2
**Third** [11] - 5:2, 6:22, 7:5, 7:12, 7:14, 13:22, 14:2, 26:24, 26:25, 33:23, 42:24
**third** [1] - 44:11
**three** [8] - 4:21, 26:10, 28:14, 28:25, 29:1, 31:12, 31:19, 43:14
**threshold** [3] - 17:8, 17:14, 30:7
**timed** [1] - 6:6
**timeliness** [5] - 4:23, 5:10, 5:12, 6:1, 27:7
**timely** [3] - 6:5, 6:7, 39:16
**tip** [1] - 14:12
**today** [5] - 3:1, 3:17, 38:22, 42:24, 49:13
**together** [5] - 14:3, 41:18, 46:20, 47:19, 48:18
**Tomkins** [2] - 15:25, 16:2
**Tompkins** [1] - 7:24
**took** [3] - 31:1, 43:11, 44:18

**transcript** [2] - 7:9, 50:11
**transfer** [56] - 5:21, 5:22, 6:17, 12:10, 14:21, 15:4, 15:5, 15:9, 15:10, 15:14, 16:9, 16:13, 16:17, 16:21, 17:7, 17:11, 18:9, 18:11, 18:24, 19:10, 19:13, 20:11, 21:2, 21:3, 22:6, 22:13, 22:19, 23:12, 27:22, 31:15, 32:16, 33:17, 34:6, 41:15, 41:25, 42:4, 42:10, 42:19, 43:2, 43:3, 43:4, 43:23, 43:25, 44:10, 44:21, 45:13, 46:2, 46:7, 46:17, 47:20, 47:24, 48:15, 48:21, 48:24, 49:4, 49:5
**Travelers** [1] - 13:23
**treatment** [1] - 8:2
**Trial** [1] - 47:23
**trial** [12] - 21:19, 21:22, 22:1, 22:3, 22:12, 23:14, 45:16, 45:18, 45:19, 46:3, 46:6
**tribunals** [1] - 13:20
**true** [4] - 6:12, 27:20, 35:15, 50:11
**truly** [1] - 17:15
**try** [1] - 32:7
**turf** [4] - 17:2, 17:6, 18:18, 33:18
**turn** [3] - 4:7, 45:22, 48:11
**turning** [4] - 6:25, 16:9, 19:5, 27:22
**turns** [1] - 48:3
**two** [14] - 4:5, 6:9, 7:23, 11:14, 14:3, 16:2, 28:12, 32:20, 39:5, 39:14, 42:12, 43:11, 46:20
**type** [1] - 14:15
**typically** [1] - 22:2

## U

**U.S** [1] - 50:14
**U.S.C** [1] - 42:8
**ultimately** [1] - 39:10
**unable** [1] - 46:5
**unavailability** [1] - 22:12
**unavailable** [3] - 21:19, 21:22, 45:16
**uncertainty** [2] -

11:21, 40:19

**unclear** [2] - 4:24, 25:18

**under** [14] - 5:2, 10:1, 10:7, 21:20, 24:2, 25:24, 26:18, 32:10, 34:24, 35:24, 47:21, 48:7, 48:13, 49:9

**underlying** [20] - 8:12, 8:17, 8:23, 9:3, 9:5, 18:12, 20:21, 20:25, 23:13, 25:11, 31:1, 35:9, 36:13, 40:19, 43:9, 44:4, 44:18, 47:10, 48:13

**undermine** [1] - 18:2

**UNDERWRITERS** [1] - 1:6

**undisputed** [1] - 33:3

**undue** [3] - 32:23, 45:8, 45:9

**unique** [3] - 19:16, 20:6, 32:23

**UNITED** [1] - 1:1

**unless** [6] - 16:21, 25:20, 27:5, 31:24, 39:1, 48:3

**unlike** [1] - 31:14

**unquestionably** [2] - 29:21, 40:19

**unsettled** [1] - 27:5

**untimely** [4] - 6:9, 6:11, 6:23, 27:12

**unusual** [3] - 19:16, 20:6, 32:23

**unwilling** [1] - 46:5

**up** [2] - 4:16, 49:2

**useful** [2] - 28:5

**usual** [2] - 26:2, 27:17

## V

**vanilla** [1] - 33:21

**Ventures** [6] - 16:15, 16:16, 17:1, 17:3, 17:14, 19:13

**venue** [1] - 16:20

**vice** [1] - 3:8

**view** [3] - 4:25, 44:13, 46:20

**viewed** [1] - 16:17

**viewing** [1] - 17:13

## W

**wait** [2] - 12:25, 38:25

**waited** [1] - 6:19

**wants** [1] - 49:12

**warranted** [1] - 20:12

**Washington** [1] - 2:4

**weak** [2] - 36:4, 36:19

**WEAVER** [4] - 1:22, 2:22, 3:11, 3:23

**Weaver** [1] - 2:23

**Wednesday** [1] - 1:10

**weigh** [12] - 7:14, 11:8, 11:11, 40:14, 40:15, 40:17, 41:4, 46:2, 46:17, 48:17, 48:21, 48:23

**weighs** [10] - 21:2, 21:3, 22:5, 22:13, 24:5, 41:12, 43:23, 43:25, 45:13, 46:7

**weight** [8] - 20:18, 28:20, 41:16, 44:1, 48:7, 48:16, 49:3, 49:4

**Weinberg** [4] - 8:18, 17:25, 18:10, 23:11

**WEINBERG** [1] - 1:4

**whereas** [1] - 16:25

**Wiley** [2] - 3:4, 3:7

**WILEY** [1] - 2:3

**willing** [1] - 41:12

**Wilmington** [1] - 1:10

**witness** [3] - 21:20, 21:25, 22:3

**witnesses** [14] - 17:10, 21:16, 22:9, 22:12, 30:23, 30:24, 30:25, 31:3, 42:11, 45:14, 45:16, 46:4, 48:23

**world** [1] - 37:7

**worried** [1] - 14:3

**worst** [1] - 22:4

**write** [1] - 19:23

## Y

**year** [1] - 6:9

**York** [8] - 1:19, 21:9, 21:11, 37:14, 44:16, 44:19, 45:2

## Z

**Ziffer** [2] - 3:16, 4:19

**ZIFFER** [30] - 1:19, 4:4, 4:10, 4:18, 6:15, 7:8, 7:10, 9:10, 10:8, 10:12, 10:15, 10:20, 10:25, 11:4, 13:16, 15:2, 16:11, 17:21, 17:24, 18:23, 19:2, 23:17, 23:23, 24:21, 33:13, 35:5, 36:1, 39:3, 49:21, 50:2