IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARTHREX, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 22-cv-00465-CFC |
| | : |
| NATIONAL UNION FIRE INSURANCE | : |
| COMPANY OF PITTSBURGH, PA, and | : |
| FEDERAL INSURANCE COMPANY, | : |
| | : |
| Defendants. | : |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

HEYMAN ENERIO
GATTUSO & HIRZEL LLP
Kurt M. Heyman (# 3054)
Aaron M. Nelson (# 5941)
300 Delaware Ave., Ste 200
Wilmington DE 19801
(302) 472-7300
kheyman@hegh.law
anelson@hegh.law
*Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

SMITH, KATZENSTEIN
& JENKINS LLP
Robert J. Katzenstein (# 378)
Julie M. O'Dell (#6191)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
RJK@sklaw.com
jodell@skjlaw.com
*Attorneys for Defendant Federal Insurance Company*

| | |
|---|---|
| OF COUNSEL: | OF COUNSEL: |
| CARLTON FIELDS, P.A.<br>Steven J. Brodie<br>Aaron S. Weiss<br>Daniel G. Enriquez<br>2 MiamiCentral<br>700 NW 1st Avenue, Ste 1200<br>Miami, FL 33136<br>(305) 530-0050<br>sbrodie@carltonfields.com<br>aweiss@carltonfields.com<br>denriquez@carltonfields.com | LLOYD, GRAY, WHITEHEAD & MONROE<br>Stephen E. Whitehead<br>Jennifer W. Wall<br>Mallory S. Hall<br>880 Montclair Road, Suite 100<br>Birmingham, AL  35213<br>Telephone: 205-967-8822<br>steve@lgwmlaw.com<br>jwall@lgwmlaw.com<br>mhall@lgwmlaw.com |

Dated:  June 2, 2022

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

    A.    The First-Filed Rule Is a Red Herring......................................................2

    B.    Arthrex Does Not Sufficiently Address this Court's Treatment of the *Jumara* Factors in *Paycom*..........................................................4

        1.    *Jumara* Factors 1 and 2................................................................4

        2.    *Jumara* Factor 3 ..........................................................................5

        3.    *Jumara* Factor 4 ..........................................................................6

        4.    *Jumara* Factor 5 ..........................................................................6

        5.    *Jumara* Factors 6 and 7................................................................7

        6.    *Jumara* Factor 8 ..........................................................................8

        7.    *Jumara* Factor 9 ..........................................................................8

        8.    *Jumara* Factors 10, 11, and 12.....................................................9

        9.    Interest of Justice Factor ..........................................................10

CONCLUSION...................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*,
   2008 WL 4852683 (D. N.J. Nov. 6, 2008) ........................................................... 4

*Burstein v. Applied Extrusion Tech., Inc.*,
   829 F. Supp. 106 (D. Del. 1992) ........................................................................ 6

*Ceradyne, Inc. v. RLI Ins. Co.*,
   2021 WL 3145171 (D. Del. July 26, 2021) ............................................ 1, 6, 9, 11

*Freedom Mortg. Corp. v. Irwin Fin. Corp.*,
   2009 WL 763899 (D. Del. Mar. 23, 2009) ......................................................... 3

*Keating Fibre Intern., Inc. v. Weyerhaeuser Co., Inc.*,
   416 F. Supp. 2d 1048 (E.D. Pa. 2006) ................................................................ 4

*Ludlow Mfg. & Sales Co. v. Textile Workers Union of Am. (CIO)*,
   108 F. Supp. 45 (D. Del. 1952) .......................................................................... 3

*P Tech, LLC v. Arthrex, Inc.*,
   2022 WL 1490733 (D. Del. May 11, 2022) ............................................. 6, 7, 8, 9

*Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
   2022 WL 1063845 (D. Del. Apr. 8, 2022) .................................................. *passim*

*Petroleum, Inc. v. Federated Mut. Ins. Co.*,
   135 F.3d 750 (11th Cir. 1998) ...................................................................... 10-11

*Young v. Young*,
   12 So. 2d 885 (Fla. 1943) ............................................................................... 2-3

**Statutes**

28 U.S.C. §1404(a) ................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 42(a) ......................................................................... 8

# INTRODUCTION

As National Union[1] and Federal argue in their brief in support of a §1404(a) transfer, this is an insurance coverage lawsuit filed by a Florida-based company against out-of-state insurers that should be transferred to the MD Florida.

The day before Arthrex filed this case, this Court granted a §1404(a) transfer in a substantively identical insurance coverage dispute in *Paycom Software, Inc. v. Travelers Cas. & Sur. Co. of Am.* ("*Paycom*"), 2022 WL 1063845 (D. Del. Apr. 8, 2022), which was consistent with a decision in similar circumstances issued last year by Judge Noreika in *Ceradyne, Inc. v. RLI Ins. Co.* ("*Ceradyne*"), 2021 WL 3145171 (D. Del. July 26, 2021).

This case, *Paycom*, and *Ceradyne* share the following common threads: All three are insurance coverage disputes where (1) the policyholders are corporations that are headquartered outside of Delaware; (2) the insurers are neither incorporated in nor headquartered in Delaware; (3) the dispute is over insurance coverage for underlying litigation that took place outside of Delaware; and (4) the only tie to Delaware is that the policyholder corporation is incorporated in Delaware.

This action should be transferred under the guidance of *Paycom* and *Ceradyne*.

---

[1] Unless otherwise indicated, capitalized terms carry the same meaning as provided in the Insurers' Opening Brief (D.I. 20).

Moreover, the first-filed rule—if it applies at all—does not distinguish this action from *Paycom*. As the Insurers noted in their Opening Brief, in *Paycom*, the insurer had not filed a competing action in Oklahoma, yet this Court found that transfer was appropriate under §1404(a). It thus would be incongruous to *deny* transfer of a similar case with a similar *Jumara* analysis where the only difference is that the Insurers in this case filed a competing action in a different district.

A.   **The First-Filed Rule Is a Red Herring**

The Court should view this case under the traditional *Jumara* factors, as opposed to through the first-filed lens—particularly because the cases were filed only *one* day apart. Moreover, the Insurers filed their case in Florida on the *first* day that Florida Supreme Court precedent allowed. On February 9, 2022, Arthrex and the Insurers conducted an unsuccessful mediation over the coverage dispute; mediation was "terminated" on February 9, 2022. The National Union Policy includes a "cooling-off" period that requires a set amount of time to pass after mediation terminates and before a lawsuit can be filed.

Florida Supreme Court precedent states that the "cooling-off" period did not expire until *after* a full sixty days had passed since the termination of the mediation, *i.e.*, on April 10, 2022. Arthrex, however, jumped the gun and filed this action on April 9, 2022, *e.g.*, *on* the 60th day following mediation—not *after* the 60th day. Thus, the Insurers properly filed their action in Florida on April 10, 2022. *Young v.*

2

*Young*, 12 So. 2d 885, 886 (Fla. 1943) (concluding that a "period [to take an action] does not mature until midnight of the last day" because "the period must actually intervene between the day of the act charged and the day that the advantage may be taken."). Thus, the Insurers' action is the *only* action that was actually filed after the cooling off period expired in compliance with the insurance policy.

This Court need not make a definitive ruling on Florida law[2] with respect to computing time. Rather, it should simply decline to view this forum dispute under the first-filed rule, particularly where the actions were filed, at most, one day apart, and where the "cooling-off" period precluded filing before the Insurers filed their action in Florida on April 9, 2022. Instead, the analysis should turn on the traditional *Jumara* factors.

As Arthrex notes, there is indeed substantial authority within this Circuit confirming that most significant emphasis should be placed on the *Jumara* factors when evaluating §1404(a) transfers. (*See* D.I. 22, at 4-5); *see also, e.g.*, *Freedom Mortg. Corp. v. Irwin Fin. Corp.*, 2009 WL 763899, at *5-6 (D. Del. Mar. 23, 2009)

---

[2]   There is a strong indication that Delaware law would be the same on this issue. *Ludlow Mfg. & Sales Co. v. Textile Workers Union of Am. (CIO)*, 108 F. Supp. 45, 49-50 n.6 (D. Del. 1952) (interpreting a "cooling-off" provision in an agreement which stated that there was no obligation to refrain from striking "if within thirty (30) days *after* February 15, 1951, no agreement is reached" and concluding that this language meant that a strike could not have occurred "prior to the *expiration* of 30 days *after* February 15.").

(applying §1404 convenience factors after determining that the first-filed rule applied); *Keating Fibre Intern., Inc. v. Weyerhaeuser Co., Inc.*, 416 F. Supp. 2d 1048, 1052-53 (E.D. Pa. 2006) (same). *See also Allianz Life Ins. Co. of N. Am. v. Estate of Bleich*, 2008 WL 4852683, at *4 (D. N.J. Nov. 6, 2008).

### B. Arthrex Does Not Sufficiently Address this Court's Treatment of the *Jumara* Factors in *Paycom*

Consistent with their proffer that similar cases should produce similar results, the Insurers have carefully studied both the Court's ruling in *Paycom* and the briefs that preceded the Court's rulings.

#### 1. *Jumara* Factors 1 and 2

As for *Jumara* factor 1 (plaintiff's forum preference), both sides select the aspect of *Paycom* that suits their argument, and the Insurers note the Court's statement that "a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer." *Paycom*, 2022 WL 1063845, at *3. And as for *Jumara* factor 2 (defendants' forum preference), while Arthrex diminishes the factor, the Insurers simply note that, in *Paycom*, this Court found that "[t]his factor favors transfer." *Id.*

4

### 2.     *Jumara* Factor 3

As for *Jumara* factor 3 (where the claim arose), the guiding principle is the Court's ruling in *Paycom* that it was "undisputed that (1) nothing occurred in Delaware giving rise to the claims, (2) the SEC issued subpoenas to Paycom in Oklahoma, and (3) the insurance policies at issue were issued to Paycom in Oklahoma." *Id*. at *4.

Arthrex devotes attention to where their insurance broker (allegedly) negotiated the terms of the Policies. That is an argument that Paycom also made, but this Court did not rely on that argument. *See* **Exhibit A**, Paycom's Reply Brief, at 4-5. Likewise, it was in the *Paycom* record that the insurance policy in that case was issued to be mailed to the policyholder (Paycom) in Oklahoma through its broker. That is the same as in this case, where the insurance policy's mailing address is in Florida. *Id.*

Likewise, both Subpoenas were addressed to Arthrex in Florida, returnable in Florida, and sought corporate documents from Arthrex, whose headquarters is in Florida. (D.I. 20, at 2-3). The fact that Arthrex's Massachusetts-based attorney apparently agreed to accept service of one subpoena by email does not change the fact that that Subpoena was making a demand on a Florida-based company to respond to a subpoena issued in Florida.

5

### 3. *Jumara* Factor 4

With respect to *Jumara* factor 4—the convenience of the parties as indicated by their relative physical and financial condition, in *Paycom*, this Court found this factor was neutral. *Paycom,* 2022 WL 1063845, at *4. While Arthrex calls attention to Judge Noreika's recent decision in a patent case involving Arthrex and another Delaware corporation,[3] in *Ceradyne*—an insurance coverage dispute—Judge Noreika found this factor neutral. *Ceradyne*, 2021 WL 3145171, at *6.

### 4. *Jumara* Factor 5

As for *Jumara* factor 5—the convenience of witnesses—the reality is that no identified witness lives in Delaware, and it appears likely most of them live in the MD Florida. While Arthrex now suggests it can "guarantee" that all of its current employees will travel to Delaware,[4] when discussing the same factor just a few month ago with respect to its own employees, Arthrex noted that "some people who would not have been worried about travel before the pandemic are now reluctant to travel [and that] [t]ransfer to the Middle District of Florida would prevent the need for witnesses to undergo prolonged air travel that could lead to increased exposure

---

[3]  *P Tech, LLC v. Arthrex, Inc.*, 2022 WL 1490733 (D. Del. May 11, 2022).

[4]  Notwithstanding this guarantee, the interests of justice would be better served by transferring the action where their attendance could be assured by a subpoena, "not merely presumed." *Burstein v. Applied Extrusion Techs., Inc.*, 829 F. Supp. 106, 113 (D. Del. 1992).

to the COVID-19 virus which may be minimized by remaining in Florida." **Exhibit B**, Arthrex's Opening Brief in *P Tech*, at 10-11. The Insurers agree with that sentiment.

Likewise, Arthrex cannot guarantee the testimony in Delaware of *former* Arthrex employees, including Dr. Jeffrey Wyman, who is (1) specifically mentioned in the FCA Lawsuit; (2) no longer employed by Arthrex; yet, (3) remains a resident of the MD Florida. (D.I. 20, at 15-16).

Moreover, Arthrex's suggestion that non-party insurance brokers who are not located Delaware will need to be called "because the other persons with comparable knowledge are counsel," is another red herring. While this is several steps ahead, since Arthrex has raised the issue, the Insurers note that *factual* testimony regarding when and what the DOJ communicated to Arthrex's counsel would not be privileged.

     5.     ***Jumara* Factors 6 and 7**

With respect to *Jumara* factor 6 (location of books and records) and factor 7 (enforceability of judgment) this Court found both of these factors neutral in *Paycom*. The parties agree that Third Circuit case law supports that position. *See* (D.I. 22, at 14-15).

### 6. *Jumara* Factor 8

As for *Jumara* factor 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), Arthrex first argues that a transfer to Florida will complicate its ability to pursue a bad faith claim. That issue, however, is really a choice-of-law issue, <u>not</u> a choice-of-forum issue. And as for coordination between the cases, the Insurers noted in response to Arthrex's transfer motion in the MD Florida, that (1) it may be more efficient to stay ruling on the competing transfer motion in the Florida Action until this Court resolves the §1404(a) motion in this case; and (2) if this Court transfers this action to the MD Florida, the next step would presumably be to consolidate the actions under Rule 42(a).

As for the burdens of witnesses and counsel, the Insurers simply note what Arthrex stated in *P Tech*: "It is less expensive for Arthrex…to litigate in Florida where [it] operates its principal place of business," and that "[l]itgation [in] the Middle District of Florida would also interfere less with Arthrex's operations…because witnesses will not need to travel to Delaware, taking time away from their normal duties." **Exhibit B**, at 11-12.

### 7. *Jumara* Factor 9

Arthrex contends that factor 9 (court congestion) is neutral. In *Paycom*, this Court found that this factor "weighs strongly in favor of transfer." *Paycom*, 2022 WL 1063845, at *3. While the Insurers are mindful of Judge Noreika's treatment of

this issue in *P Tech*, unlike this Court in *Paycom*, Judge Noreika did not cite the weighted filings. Likewise, unlike the Insurers' Opening Brief, Arthrex's briefs in *P Tech* did not call Judge Noreika's attention to the twelve Senior District Judges in the MD Florida who maintain active chambers, which many courts have cited when evaluating this factor. **Exhibit B**, at 12-13.

### 8. *Jumara* Factors 10, 11, and 12

Arthrex's treatment of *Jumara* factors 10 (interest in deciding local controversies at home), 11 (public policies of the fora), and 12 (familiarity of trial judge with applicable law) are a fight upstream against *Paycom* and *Ceradyne*. As the Insurers noted, this Court has rejected the proposition that Delaware has a public policy interest in having insurance coverage disputes of this type adjudicated in Delaware. *Paycom*, 2022 WL 1063845, at *6 (quoting *Ceradyne*, 2021 WL 3145171, at *9).

Arthrex tries to fight the "local controversy" point by focusing on where, by pure happenstance, various insurance brokers were when they mailed the Policies to Arthrex in Florida. First, that same argument was made—and not relied on by this Court—in *Paycom*. *See* **Exhibit A**, at 4-5. And, at bottom, the Policies were issued to a company headquartered in Florida, addressed for mailing in Florida and contain a Florida Amendatory Endorsement conforming various provisions to Florida law.

As for the public policy prong, Arthrex makes an argument that is focused on differences between Delaware and Florida choice of law. As this Court noted in *Paycom*, such choice of law questions are premature on a §1404(a) transfer motion. (D.I. 22, at 15-16); *Paycom*, 2022 WL 1063845, at *7.

Contrary to Arthrex's assertions, Arthrex's indemnification of its executives is not the issue in this case. Rather, the question is whether the Policies require the Insurers to indemnify Arthrex, a Florida-based company, for expenses it incurred in responding to the MD Florida Subpoenas and for paying to settle the FCA Lawsuit, which arose from its alleged fraudulent conduct in Florida.

As for factor 12 (familiarity with applicable law), the Insurers agree with this Court's statement in *Paycom* that this factor should be neutral. Arthrex does not dispute this point.

### 9.   Interest of Justice Factor

Arthrex's final argument is that transfer would mean that "two similar cases would be pending in the [MD Florida] but potentially governed by different law [and] [n]o clear rules exist for escaping this procedural thicket." (D.I. 22, at 21). However, if this case is transferred the MD Florida and consolidated with the action the Insurers filed, the court will be bound by binding circuit precedent on this exact question that provides that the "court should balance the interests of each state in

having its laws apply and apply the law of the state with the greater interests" *Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 753 (11th Cir. 1998).

## CONCLUSION

The Insurers conclude where they started: deciding this transfer motion differently from *Ceradyne* and *Paycom* will leave insurers and policyholders without clear rules to determine where these types of cases should be pursued. The *Jumara* factors are designed to avoid this very situation—a party prematurely filing in a jurisdiction that has minimal connection to the dispute in order to obtain favorable choice of law.

Fundamentally, this is a dispute about insurance benefits that a Florida-based company wants to be paid, in Florida, for expenses incurred responding to subpoenas to it that were returnable in Florida and for a settlement of a False Claims Act case, which arose from its alleged fraudulent conduct in Florida. This case should be transferred and litigated in Florida. Choice of law is not an issue that needs to be determined at this time.

| HEYMAN ENERIO GATTUSO & HIRZEL LLP | SMITH, KATZENSTEIN & JENKINS LLP |
|---|---|
| /s/ Aaron M. Nelson | /s/ Robert J. Katzenstein |
| Kurt M. Heyman (# 3054) | Robert J. Katzenstein (# 378) |
| Aaron M. Nelson (# 5941) | Julie M. O'Dell (#6191) |
| 300 Delaware Ave., Ste 200 | 1000 West Street, Suite 1501 |
| Wilmington DE 19801 | Wilmington, DE 19801 |
| (302) 472-7300 | (302) 652-8400 |
| kheyman@hegh.law | RJK@sklaw.com |
| anelson@hegh.law | jodell@skjlaw.com |
| *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.* | *Attorneys for Defendant Federal Insurance Company* |
| OF COUNSEL: | OF COUNSEL: |
| CARLTON FIELDS, P.A. | LLOYD, GRAY, WHITEHEAD & MONROE |
| Steven J. Brodie | Stephen E. Whitehead |
| Aaron S. Weiss | Jennifer W. Wall |
| Daniel G. Enriquez | Mallory S. Hall |
| 2 MiamiCentral | 880 Montclair Road, Suite 100 |
| 700 NW 1st Avenue, Ste 1200 | Birmingham, AL 35213 |
| Miami, FL 33136 | Telephone: 205-967-8822 |
| (305) 530-0050 | steve@lgwmlaw.com |
| sbrodie@carltonfields.com | jwall@lgwmlaw.com |
| aweiss@carltonfields.com | mhall@lgwmlaw.com |
| denriquez@carltonfields.com | |

Dated: June 2, 2022