# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PAYCOM SOFTWARE, INC.,

               Plaintiff,

v.

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA
AND QBE INSURANCE CORPORATION,

               Defendants.

Case No.: 1:21-cv-01403-CFC

## DEFENDANTS TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA'S AND QBE INSURANCE CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE

Dated: December 17, 2021

*Of Counsel for Travelers:*

Thomas J. Judge
Charles W. Chotvacs
(*pro hac vice* applications to be submitted)
DYKEMA GOSSETT PLLC
1301 K Street, N.W., Suite 1100 West
Washington, D.C.  20005
(202) 906-8600
TJudge@dykema.com
CChotvacs@dykema.com

Robert J. Katzenstein (No. 378)
Julie M. O'Dell (No. 6191)
SMITH KATZENSTEIN &
JENKINS LLP
1000 N. West Street, Suite 1501
Wilmington, DE  19801
(302) 652-8400
rjk@skjlaw.com
jmo@skjlaw.com

*Attorneys for Defendants Travelers*
*Casualty and Surety Company of*
*America, and QBE Insurance*
*Corporation*

*Of Counsel for QBE:*

Kimberly M. Melvin
Matthew W. Beato
(*pro hac vice* applications to be submitted)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000
kmelvin@wiley.law
mbeato@wiley.law

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................1

II.    ARGUMENT.........................................................................1

       A.    Plaintiff's Choice of Forum Is Not Dispositive ....................................1

       B.    Defendants' Choice of Forum Is Entitled to Consideration.................3

       C.    The Claim Did Not Arise in Delaware, It "Arose Elsewhere" ............4

       D.    Oklahoma Is the More Convenient Forum.............................................5

       E.    Delaware Is Not More Convenient for the Witnesses..........................6

       F.    No Books and Records Are Located in Delaware ................................8

       G.    Practical Considerations for Trial Favor Transfer to Oklahoma ..........8

       H.    The Western District of Oklahoma Is a Much Less
           Congested District ................................................................................8

       I.    Local Interests Weigh in Favor of Transfer .......................................10

       J.    No Delaware Public Policy Is Supported by Litigating in
           this Jurisdiction..................................................................................10

       K.    Both Jurisdictions Are Capable of Presiding Over this
           Coverage Action.................................................................................11

III.   CONCLUSION...................................................................11

# <u>TABLE OF AUTHORITIES</u>

*Andrews Int'l v. Indian Harbor Ins. Co.*,
   C.A. No. 12-775-LPS, 2013 U.S. Dist. LEXIS 141589
   (D. Del. Sept. 30, 2013) ...............................................................................4, 6, 10

*Ceradyne, Inc. v. RLI Ins. Co.*,
   C.A. No. 20-1398 (MN), 2021 U.S. Dist. LEXIS 138477
   (D. Del. July 26, 2021) ...................................................................2, 4, 6, 10, 11

*Express Mobile, Inc. v. Web.com Grp., Inc.*,
   C.A. No. 19-cv-1936-RGA, 2020 U.S. Dist. LEXIS 123056
   (D. Del. July 14, 2020) ...........................................................................................2

*Inter-City Prods. Corp. v. Ins. Co. of N. Am.*,
   C.A. No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886
   (D. Del. Jan. 26, 1993)......................................................................................5–6

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ...............................................................................2, 4

*NXP USA, Inc. v. IMPINJ, Inc.*,
   C.A. No. 19-1875-RGA, 2020 U.S. Dist. LEXIS 174612
   (D. Del. Sept. 23, 2020).........................................................................................2

*Wellpath, LLC v. Evanston Ins. Co.*,
   C.A. No. 20-4885, 2021 U.S. Dist. LEXIS 164412
   (E.D. Pa. Aug. 30, 2021)...................................................................................4, 10

# I.   **INTRODUCTION**

This insurance coverage action belongs in Oklahoma.[1]   The only nexus Paycom or the underlying facts have with Delaware is that it is Paycom's state of incorporation—nothing more.   Notwithstanding, Paycom contends that it is more appropriate to litigate here than in Oklahoma, where Paycom is headquartered and has its principal place of business, the policies were issued, and the subpoenas for which Paycom seeks coverage largely were served.   Unable to identify any significant contacts between this action and Delaware, Paycom's opposition notes some tangential connection between this action and other states, such as New York and Illinois.   None of those connections outweigh the strong connection with Oklahoma, and, more importantly, they confirm that this action has no significant connection to Delaware.   As such, this Court should transfer this action to the U.S. District Court for the Western District of Oklahoma.

# II.   **ARGUMENT**

## A.   **Plaintiff's Choice of Forum Is Not Dispositive**

Paycom emphasizes what it says is the "paramount consideration" a plaintiff's choice of forum should be given, and argues that it chose Delaware because it is incorporated in Delaware, this action should be decided under Delaware law, and Delaware courts have experience adjudicating D&O coverage disputes.   (Opp. at 4–

---

[1] Paycom does not dispute that Oklahoma is a proper venue.

1

6).  The latter two purported reasons for selecting Delaware are taken into account under other *Jumara* factors, so they should carry no weight here; leaving Paycom's incorporation as the sole Delaware nexus.  *See Ceradyne, Inc. v. RLI Ins. Co.*, C.A. No. 20-1398 (MN), 2021 U.S. Dist. LEXIS 138477, at *13–14 (D. Del. July 26, 2021) (declining to consider potentially governing law under choice of forum factor).  However, this Court as well as other Third Circuit district courts have repeatedly held that where the plaintiff has chosen a jurisdiction where it is not physically located or where the operative facts underlying the case did not occur, its choice of forum "will still be the most important factor [but] will not dominate the balancing to the same extent as it otherwise might."  *Express Mobile, Inc. v. Web.com Grp., Inc.*, C.A. No. 19-cv-1936-RGA, 2020 U.S. Dist. LEXIS 123056, at *4 (D. Del. July 14, 2020); *accord Ceradyne*, 2021 U.S. Dist. LEXIS 138477, at *14.  Here, Paycom's choice of forum is the only factor that weighs against transfer—"but not as strongly as if [Paycom] had some connection . . . other than incorporation."  *NXP USA, Inc. v. IMPINJ, Inc.*, C.A. No. 19-1875-RGA, 2020 U.S. Dist. LEXIS 174612, at *6 (D. Del. Sept. 23, 2020).  And the weight given to Paycom's forum choice is inadequate to deny transfer where other factors weigh considerably in favor of transfer.

## B. Defendants' Choice of Forum Is Entitled to Consideration

Paycom contends that the Insurers' choice of forum should not be considered and is neutral because there is no legitimate reason for litigating this coverage action in Oklahoma and neither Insurer is located there. (Opp. at 7–8). The contention is erroneous.

Oklahoma has a significant connection to the facts underlying this case. First, the Policies were issued to Paycom, which is headquartered in Oklahoma City. Second, the coverage sought is for fees incurred by Paycom in responding to subpoenas issued to Paycom (in Oklahoma) and certain Paycom officers and employees (the majority of which are located in Oklahoma). Third, Paycom's alleged securities law violations at issue in the SEC Investigation and subsequent Cease-and-Desist Order (the "SEC Order")[2] concerned Paycom's allegedly insufficient internal accounting controls. (SEC Order at 2–4). While Paycom notes that the SEC Order alleges that a number of offices were involved in the underlying reselling practice, it was Paycom's purported corporate failure (as an SEC registered company headquartered in Oklahoma City) to institute controls that was the impetus for the SEC Investigation and Paycom's claim for coverage.

---

[2] The SEC Order can be found at: https://www.sec.gov/litigation/admin/2021/34-92527.pdf.

In sum, the Insureds, the Policies, and the facts underlying the claim are all logically connected to Oklahoma. Moreover, the fact that the Insurers are not located in Oklahoma does not detract from the reasonableness of their chosen forum. *See Wellpath, LLC v. Evanston Ins. Co.*, C.A. No. 20-4885, 2021 U.S. Dist. LEXIS 164412, at \*11 (E.D. Pa. Aug. 30, 2021) (weighing factor in favor of transfer even though insurer was not located in transferee jurisdiction); *Ceradyne*, 2021 U.S. Dist. LEXIS 138477, at \*14–15 (same). The Insurers have legitimate reasons for preferring Oklahoma.

### C. The Claim Did Not Arise in Delaware, It "Arose Elsewhere"

Paycom contends that its claim for coverage arose "outside of Oklahoma" and, therefore, this factor is neutral. (Opp. at 8–10). However, the relevant factor is "whether the claim arose elsewhere," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), and Paycom does ***not*** contend that its claim arose in Delaware.

Relying on a bench ruling transcript, Paycom leaps to the unfounded conclusion that the location from where an insurer issues its coverage correspondence is the most germane fact in determining where the claim arose. (Opp. at 8). However, courts in this District have considered a number of facts in addressing where the claim arose, including where the policies were negotiated or issued, and where the events underlying the claim and giving rise to the coverage action occurred. *See, e.g.*, *Andrews Int'l v. Indian Harbor Ins. Co.*, C.A. No. 12-

775-LPS, 2013 U.S. Dist. LEXIS 141589, at *6–7 (D. Del. Sept. 30, 2013) (considering where policies were issued and underlying litigation occurred).  None of those touch points involve Delaware.  Instead, the Policies were issued to Paycom in Oklahoma, and the SEC Investigation involved Paycom's accounting failures in Oklahoma.

Paycom further argues that the majority of events resulting in its claim for coverage occurred outside of Oklahoma, including where Paycom made its productions and the witness interviews took place.  (Opp. at 9–10).  However, Paycom does not dispute that the subpoena recipients were primarily located in Oklahoma, and the fact that productions or interviews occurred elsewhere does not minimize the claim's Oklahoma nexus.

### D.    Oklahoma Is the More Convenient Forum

Paycom asserts that Delaware is the most convenient forum because it chose to sue here and litigating in Delaware would not impose an undue burden on the Insurers' operations.  (Opp. at 11).  Initially, there is nothing to demonstrate that litigating in Delaware is more convenient for Paycom.  As this Court stated long ago, "the plaintiff's inconvenience resulting from litigation of the case in the plaintiff's chosen forum, or its convenience resulting from transfer to the proposed transferee district, is a proper factor to be considered in performing the discretionary balancing of interests required by section 1404(a)."  *See Inter-City Prods. Corp. v. Ins. Co. of*

*N. Am.*, C.A. No. 90-717-SLR, 1993 U.S. Dist. LEXIS 886, at *12 (D. Del. Jan. 26, 1993). Thus, courts routinely transfer cases to jurisdictions where plaintiff insureds have their principal place of business based on considerations of convenience. *See, e.g.*, *id.*; *Andrews Int'l*, 2013 U.S. Dist. LEXIS 141589, at *7–8.

Secondly, the analysis is not as limited as Paycom contends; rather, courts in this District consider the parties' physical location, the logistical costs to the parties in traveling to Delaware (as opposed to Oklahoma), and the financial wherewithal of the parties to bear those costs. *See Ceradyne*, 2021 U.S. Dist. LEXIS 138477, at *15–16. The fact that the Insurers are not located in Oklahoma does not mean that it would not be more convenient to the parties overall to litigate where Paycom and its principals are located.

Finally, counsel's location does not tip the analysis. The instances requiring trial counsel to personally appear in court are limited and will require travel, whether to Delaware or Oklahoma. And retaining new local counsel is a mundane, uncomplicated task for the parties.

### E.    Delaware Is Not More Convenient for the Witnesses

Paycom does not contend that Delaware is more convenient for any witnesses. Instead, Paycom suggests that witness testimony likely will be unnecessary because the case primarily involves policy interpretation, and even if the case does go to trial, the insurance representatives and brokers are located outside of Oklahoma. (Opp. at

6

12–13).  However, Paycom does not stipulate that it will not introduce evidence of Paycom's purported intent or expectations when entering into the policies, which would come from Paycom (located in Oklahoma).  Further, if coverage were found to apply, Paycom's complaint seeks compensatory and consequential damages, which necessarily would require damages evidence by Paycom.  At bottom, it simply is too early for the Court to determine that testimony will not be necessary or the scope of any testimony should the case proceed to trial.

Paycom further argues that the Insurers have failed to identify any witnesses that would be unavailable for trial in Delaware, and that the witnesses the Insurers did "generically" identify are current Paycom employees.   (Opp. at 13–14).  However, this litigation is just getting underway, with a scheduling conference set for February, and initial disclosures yet to be exchanged.   Notwithstanding, the Insurers identified generically (because there is a confidentiality agreement with Paycom in place)[3] nine current *and former* Paycom officers and employees who received subpoenas, and for which Paycom has sought reimbursement under the Policies in responding thereto.  The majority of those individuals are located in Oklahoma (outside this Court's subpoena power), and regardless of whether they are

---

[3] *See* Decl. of Matthew Paque, D.I. 21, at ¶ 5 (noting that Paycom provided documents to Travelers "pursuant to a confidentiality agreement").

current or former Paycom officers or employees, there is no Rule that requires
Paycom to compel their attendance at trial to serve as defense witnesses.

### F. No Books and Records Are Located in Delaware

It is undisputed that no relevant documents are in Delaware. (Opp. at 14–15).

### G. Practical Considerations for Trial Favor Transfer to Oklahoma

Paycom argues that practical considerations that could make the trial easy,
expeditious, or inexpensive weigh against transfer because most of the pertinent
coverage events occurred outside Oklahoma and counsel is located in D.C. and
Delaware. (Opp. at 16). While the Insurers disagree with Paycom's assertion
regarding the location of pertinent events, that is irrelevant when considering where
trial is most practicable. Rather, what is important is where the parties, potential
witnesses, and documents are located, and all three point to Oklahoma as the most
practical choice. Further, the location of trial counsel is essentially irrelevant
because lead D.C. trial counsel for both parties will have to travel and stay for
multiple days out of state regardless of whether trial is in Delaware or Oklahoma.

### H. The Western District of Oklahoma Is a Much Less Congested District

Paycom fails in its attempt to downplay the marked difference in congestion
between this District and the Western District of Oklahoma. (Opp. at 17). Paycom
disingenuously argues that civil trials "take marginally longer to reach trial in this

District," but there is nothing marginal about a more than one-year difference in time. To counter this glaring difference, Paycom hypothesizes that this case is unlikely to proceed to trial, and argues that the time it generally takes for civil cases to reach disposition is shorter in this District (7 months) as compared to the Western District (8.9 months). However, Paycom's figures address the median time for all cases—both those for which no court action was taken as well as those involving court action. *See* https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/06/30.[4] Of the 1,700 civil cases disposed of in this District in the 12-month period ending June 30, 2021, 34% (575 cases) were disposed of with no court action within an average of 2.7 months (as opposed to 41% of cases disposed of with no court action within an average of 7.5 months in the Western District). (*Id.*). If anything, the more appropriate statistic is the median time for disposition *with court action* before pretrial, and the median time in those cases is longer in this District (9.5 months compared to 8.1 months in the Western District). (*Id.*). Regardless, no one can predict how this case will unfold, and whether it is disposed of by motion or trial, the Western District affords a less congested venue.

---

[4] Paycom relies on tables showing each District's general caseload profile, *see* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/06/30-1; however, the above-referenced table more specifically addresses by District the median time intervals from filing to disposition of civil cases.

## I.     Local Interests Weigh in Favor of Transfer

Paycom argues that Oklahoma does not have a greater interest in adjudicating this action because not all of the parties are Oklahoma citizens and because Delaware has an interest in adjudicating D&O coverage disputes involving Delaware corporations.  (Opp. at 17–19).  However, as the Insurers' cited caselaw (*Ceradyne*, *Wellpath*, *Andrews Int'l*, and *Day*) demonstrates, the jurisdiction where the insured is located (as opposed to merely incorporated) has a stronger interest in protecting its resident insureds, especially when the harm to the insured is felt there (and Paycom was not harmed in Delaware where it has no physical presence).  Notably, the Travelers Policy has an Oklahoma Changes Endorsement, so the Policy itself sought to conform to Oklahoma regulatory requirements.  (Travelers Policy, End. No. PCDO-17032-0316).  And, as the *Ceradyne* Court recognized, the fact that this case may involve D&O insurance is of no import because "this is an insurance coverage dispute based on a contract[,] [i]t does not turn on issues related to Delaware corporate law."  2021 U.S. Dist. LEXIS 138477, at *22.

## J.     No Delaware Public Policy Is Supported by Litigating in this Jurisdiction

Paycom cherry-picks one sentence from an oral argument transcript to argue that Delaware has a well-established public policy interest in adjudicating coverage disputes under D&O policies issued to Delaware corporations.  (Opp. at 20–21).  Paycom grossly mischaracterizes that authority.   The case did not purport to

10

pronounce any special Delaware public policy specifically regarding D&O coverage disputes one way or the other. In contrast, the *Ceradyne* Court directly addressed and rejected the argument Paycom makes here in no uncertain terms: "Although Delaware clearly has a public policy interest in the capabilities and conduct of officers and directors of Delaware corporations, this public policy is not directly related to insurance coverage disputes." 2021 U.S. Dist. LEXIS 138477, at *23.

### K. Both Jurisdictions Are Capable of Presiding Over this Coverage Action

Paycom contends that judges in the Western District of Oklahoma are less experienced and capable of presiding over coverage disputes involving D&O insurance, especially if another jurisdiction's law applies. (Opp. at 21–22). However, there is nothing unique about the fact that this action involves D&O insurance. An insurance policy is a contract, and Article III judges, whether appointed to the Western District or this District, are more than capable of presiding over matters of contract interpretation.

## III. <u>CONCLUSION</u>

For all the reasons set forth above as well as in their opening brief, the Insurers respectfully request that this Court grant their motion and transfer this action to the Western District of Oklahoma.

11

Dated: December 17, 2021          SMITH KATZENSTEIN & JENKINS LLP


   */s/ Robert J. Katzenstein*
Robert J. Katzenstein (No. 378)
Julie M. O'Dell (No. 6191)
1000 N. West Street, Suite 1501
Wilmington, DE  19801
(302) 652-8400
rjk@skjlaw.com
jmo@skjlaw.com

*Attorneys for Defendants Travelers Casualty
and Surety Company of America, and
QBE Insurance Corporation*

*Of Counsel for Travelers:*

Thomas J. Judge
Charles W. Chotvacs
(*pro hac vice* applications to be submitted)
DYKEMA GOSSETT PLLC
1301 K Street, N.W., Suite 1100 West
Washington, D.C.  20005
(202) 906-8600
TJudge@dykema.com
CChotvacs@dykema.com

*Of Counsel for QBE:*

Kimberly M. Melvin
Matthew W. Beato
(*pro hac vice* applications to be submitted)
WILEY REIN LLP
1776 K Street, N.W.
Washington, D.C.  20006
(202) 719-7000
kmelvin@wiley.law
mbeato@wiley.law

13

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| P TECH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 21-968-LPS |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| ARTHREX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE TO THE MIDDLE DISTRICT OF FLORIDA

Kelly E. Farnan(# 4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

OF COUNSEL:

Megan S. Woodworth
Robert C Tapparo
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000

*Attorneys for Defendant Arthrex, Inc.*

Manny J. Caixeiro
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9656

Robert E. Bugg
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 370-6241

Dated: September 22, 2021

# <u>TABLE OF CONTENTS</u>

<b>Page</b>

TABLE OF AUTHORITIES .................................................................................... iii

I.     INTRODUCTION ................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................... 2

    A.    Procedural History ................................................................ 2
    B.    P Tech Has Strong Ties to the Middle District of Florida ............................. 2
    C.    Arthrex Has Strong Ties to the Middle District of Florida ............................. 3
    D.    Relevant Third Parties Are in the Middle District of Florida ......................... 3

III.    LEGAL STANDARD ......................................................................... 3

IV.    THE MIDDLE DISTRICT OF FLORIDA IS A MORE CONVENIENT FORUM ............................................................................................. 5

    A.    The Middle District of Florida is an Appropriate Venue ................................ 5
    B.    The *Jumara* Factors Favor Transfer ......................................... 6

        a.    Private Interest Factors .............................................. 6

            i.    Factor 1: Plaintiff's Choice of Forum Should Be Given Little Deference Given its Lack of Presence in this District .............................................. 6

            ii.    Factor 2: Defendant's Preference is to Litigate in the Middle District of Florida, Where Arthrex's Witnesses and Evidence are Located ......................... 7

            iii.    Factor 3: Plaintiff's Claims Did Not Arise in Delaware ....................................................... 7

            iv.    Factor 4: The Relative Inconvenience to the Parties Favors Transfer to the Middle District of Florida ............... 8

            v.    Factor 5: Convenience of Witnesses Favors Transfer to the Middle District of Florida ....................... 9

            vi.    Factor 6: Location of Books and Records Favors Transfer to Florida ............................................ 11

        b.    Public Interest Factors .............................................. 11

            i.    Factor 7: Enforceability of the Judgement is Neutral ....................................................... 11

ii.      Factor 8: Practical Considerations ......................................... 11

iii.     Factor 9: Administrative Difficulties in Getting the
Case to Trial.......................................................................... 12

iv.     Factor 10: Local Interests Favor Transfer............................. 13

v.      Factor 11: Public Policies of the Fora................................... 13

vi.     Factor 12: Familiarity with Applicable State Law................. 14

V. CONCLUSION .................................................................................... 14

RLF1 26045393v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Reimbursement Mgmt., LLC v. Plaisance*,
No. 17-667 (MN), 2019 WL 2502931 (D. Del. June 17, 2019) ...............................................12

*Applied Predictive Techs., Inc. v. MarketDial, Inc.*,
No. 18-963-CFC, 2019 WL 2745724 (D. Del. July 1, 2019) .................................................12

*Auto Equity Loans of Delaware, LLC v. Shapiro*,
No. 18-1470 (MN), 2019 WL 4169794 (D. Del. Sept. 3, 2019)................................................5

*Blackbird Tech LLC v. Cloudflare, Inc.*,
No. CV 17-283, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ...............................................5, 8

*Boram Pharm. Co. v. Life Techs. Corp.*,
No. 10-31-HB, 2010 WL 2802727 (D. Del. July 14, 2010) .....................................................9

*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*,
C.A. No. 20-1102-LPS (D. Del.), D.I. 29 .................................................................................6

*Citrix Systems, Inc. v. Parallel Networks Licensing, LLC*,
No. 19-2005-LPS (D. Del. May 8, 2020), D.I. 21, Report ......................................................7

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 15-1108- .......................................................................................................................5, 7, 10

*Express Mobile, Inc. v. Web.com Group, Inc.*,
No. 19-CV-1936-RGA, 2020 WL 3971776 (D. Del. July 14, 2020) .............................4, 5, 10

*FG SRC LLC v. Xilinx, Inc.*,
No. CV 20-601-LPS, 2021 WL 495614 (D. Del. Feb. 10, 2021)......................................5, 78

*In Re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)..........................................................................................9, 10

*Genetic Techs. Ltd. v. Natera, Inc.*,
No. CV 12-1737-LPS, 2014 WL 1466471 (D. Del. Apr. 15, 2014)........................................9

*Good Tech. Corp. v. Air Watch, LLC*,
No. 14-1092-LPS-CJB, 2015 WL 296501 (D. Del. Jan. 21, 2015).........................................8

*Good Tech. Corp. v. Mobilelron, Inc.*,
No. 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015).....................................10

*Harris v. Lord & Taylor LLC*,
No. 18-521 (MN), 2019 WL 1854562 (D. Del. Apr. 25, 2019) ..............................................4

RLF1 26045393v.1

*In re Hoffmann–La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)...............................................................................13

*In re HP Inc.*,
  826 Fed.App'x. 899, 2020 WL 5523561 (Fed. Cir. Sept. 15, 2020) ........................13

*In re Hulu*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................10

*Intell. Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012)......................................................................8, 14

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995)..................................................................................2, 4, 6

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  No. 11-400-GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013) ...................................11

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011)..............................................................................2, 6

*McRo, Inc v. Activision Blizzard, Inc*,
  No. 12-1508-LPS-CJB, 2013 WL 6571618 (D. Del. Dec. 13, 2013)....................7, 8

*Nalco Co. v. AP Tech Grp. Inc.*,
  No. 13-1063-LPS, 2014 WL 3909114 (D. Del. Aug. 8, 2014)..................................5

*Nottenkamper v. Modany*,
  No. 14-672-GMS, 2015 WL 1951571 (D. Del. Apr. 29, 2015)...............................12

*NXP United States, Inc. v. Impinj, Inc.*,
  No. 19-1875-RGA, 2020 U.S. Dist. LEXIS 174612 (D. Del. Sep. 23, 2020) ..........8

*NXP USA, Inc. v. Impinj, Inc.*,
  No. CV 19-1875-RGA, 2020 WL 5665257 (D. Del. Sept. 23, 2020) ................7, 13

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
  126 F. Supp. 3d 430 (D. Del. 2015)..........................................................................7

*In Re Samsung Elecs. Co., Ltd.*,
  2 F.4 1371, 1380 (Fed. Cir. 2021)...........................................................................13

*Selene Commc'n Techs., LLC v. Trend Micro Inc.*,
  No. CV 14-435-LPS, 2015 WL 237142 (D. Del. Jan. 16, 2015).........................5, 6

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1970)........................................................................................6

iv

*Symantec Corp. v. Zscaler, Inc.*,
   No. CV 17-806, 2017 WL 3262246 (D. Del. July 31, 2017) ............................................6, 7, 8

*In re Toa Techs., Inc.*,
   543 F. App'x 1006 (Fed. Cir. 2013) ...............................................................................13

*Ultravision Techs., LLC v. RMG Networks Holding Corp.*,
   No. 18-1333-CFC, 2019 WL 1985110 (D. Del. May 6, 2019) .............................................12

*Virentem Ventures, LLC v. YouTube, LLC*,
   No. 18-917 (MN), 2019 WL 2131877 (D. Del. May 16, 2019) ............................................12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ..........................................................................9

*W.R. Berkley Corp. v. Niemela*,
   No. 17-0032-GMS, 2017 WL 4081871 (D. Del. Sept. 15, 2017)..........................................12

*Werner v. Hive Media Group, LLC*,
   CV 20-1176-LPS, 2021 WL 3662902 (D. Del. Aug. 18, 2021)..............................................3

**Statutes**

28 U.S.C. § 1400 ................................................................................................................5

# I.      INTRODUCTION

This is a patent litigation between two companies with headquarters in the Middle District of Florida, concerning products that were developed in the Middle District of Florida, and involving witnesses and evidence that are located in the Middle District of Florida.  Neither party has any physical place of business in Delaware, and no evidence or witnesses are believed to be located in Delaware.  The Middle District of Florida is the most convenient and natural venue for this litigation, therefore Arthrex asks the Court to transfer venue to that District.

This case has substantial and meaningful connections to the Middle District of Florida, where Arthrex maintains its principal place of business and global headquarters.  Ex. A, Sodeika Decl. ¶ 2.  The products at issue in this case—the Arthrex *Internal*Brace™, FiberTak® Suture Anchor, and Suture Tensioner with Tensiometer—were designed, developed and manufactured in the Middle District of Florida, by Arthrex engineers and other persons who reside and work in the Middle District of Florida.  *Id*. ¶¶ 3-5.  This includes third parties, who were formerly employed by Arthrex, and are not subject to trial subpoenas in Delaware.  *Id*. ¶¶ 7-9.  Moreover, the persons with primary responsibility for marketing, sales and financial matters relevant to the Accused Products are all located in the Middle District of Florida.  *Id*. ¶ 5.  Similarly, all of Arthrex's relevant documents and physical evidence are located in the Middle District of Florida.  *Id*. ¶ 11.

It would not inconvenience P Tech to litigate this matter in the Middle District of Florida, in large part because P Tech's principal place of business is *also* located in the Middle District of Florida and P Tech is unlikely to have any sources of proof or witnesses in Delaware.  Dkt. No. 1 at ¶ 1.  Dr. Peter Bonutti, the sole member of P Tech and inventor of each Asserted Patent lives in Florida.  Ex. B, Bonutti Decl. ¶ 2.  Notably, as further evidence that the Middle District of Florida is not inconvenient for P Tech, Dr. Bonutti, through another of his companies, previously filed suit

against Arthrex in the Middle District of Florida. *See Bonutti Skeletal Innovations LLC v. Arthrex, Inc.* MDFL-6:13-cv-00620.

The case has no connection to this District, other than the fact that the parties are incorporated in Delaware. But as the Federal Circuit found: "[n]either § 1404 nor *Jumara* list a party's state of incorporation as a factor in the venue inquiry. It is certainly not a dispositive fact in the venue transfer analysis." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011). Because all but one of the private and public interest factors are either neutral or weigh in favor of transfer (some weighing strongly in favor of transfer), and only the Plaintiff's choice of forum weighs slightly against transfer, this case should be litigated in the Middle District of Florida, and Arthrex respectfully asks this Court to transfer it there.

## II. FACTUAL BACKGROUND

### A. Procedural History

On June 30, 2021, P Tech, LLC ("P Tech") filed a complaint alleging that several of Arthrex's products—the *Internal*Brace™, FiberTak® Suture Anchor, and AR-1529 Suture Tensioner with Tensiometer (collectively "the Accused Products")—infringe one or more claims of U.S. Patent Nos. 10,881,440 ("the '440 patent"), 10,376,259 ("the '259 patent"), 9,814,453 ("the '453 patent"); 9,999,449 ("the '449 patent"), 9,579,129 ("the '129 patent"), and 10,517,584 ("the '584 patent") (collectively, "the Asserted Patents"). Dkt. No. 1 at ¶¶ 51-184.

### B. P Tech Has Strong Ties to the Middle District of Florida

P Tech operates its principal place of business in Riverview, Florida, in the Middle District of Florida. Dkt. No. 1 at ¶ 1. P Tech has no other ties to this District except that Delaware is its state of incorporation. P Tech's sole member and the inventor of the Asserted Patents, Dr. Peter Bonutti, resides in Florida and previously initiated and litigated a patent suit against Arthrex in the

2

Middle District of Florida through another of his corporate entities, Bonutti Skeletal Innovations. Bonutti Decl. ¶ 2; *Bonutti Skeletal Innovations LLC v. Arthrex, Inc*. MDFL-6-13-cv-00620.

### C. Arthrex Has Strong Ties to the Middle District of Florida

Arthrex is headquartered in Naples, Florida, in the Middle District of Florida. Ex. A, Sodeika Decl. ¶ 2. The design, development and manufacturing facilities are also located in the Middle District of Florida, as are all Arthrex personnel with relevant knowledge of the operation, manufacture, sale and marketing of the Accused Products and all relevant evidence and documents. *Id*. ¶¶ 3-5, 11. In contrast, Arthrex has no facilities, employees, evidence or sources of proof in the District of Delaware.[1] *Id*. ¶ 13.

### D. Relevant Third Parties Are in the Middle District of Florida

Two former Arthrex employees, Don Shuler and Bill Benavitz, have relevant knowledge of the design, development, and distribution of the Accused Products. *Id*. ¶ 7. Don Shuler and Bill Benavitz reside in the Middle District of Florida. *Id*. ¶ 10. These witnesses have discoverable and non-duplicative information regarding the design, development and operation of the Accused Products and Arthrex will seek to subpoena them to provide testimony at trial in this litigation.

## III.    LEGAL STANDARD

A district court may transfer a case to "any other district or division where it might have been brought" if transfer is "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). "This statutory provision provides district courts with discretion to adjudicate transfer motions according to 'individualized, case-by-case consideration[s] of convenience and fairness.'" *Werner v. Hive Media Group, LLC*, CV 20-1176-LPS, 2021 WL

---

[1] Arthrex works with surgeon consultants when developing some of its products, including the Accused Products. Arthrex is unaware of any surgeon consultants that assisted with the development of the Accused Products located in Delaware. Ex. A, Sodeika Decl. ¶ 6.

3662902, at *2 (D. Del. Aug. 18, 2021) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted)). Transfer is appropriate under § 1404(a) when, "on balance the litigation would more conveniently proceed and the interests of justice would be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The first step in the § 1404(a) analysis is to determine whether the case could have been brought in the transferee venue. *Id.* at 878-79. The Court then assesses the public and private interest factors outlined by the *Jumara* Court. *Id.* at 879-890. The *Jumara* private interest factors include: (1) the plaintiff's initial choice of forum; (2) the defendant's preference; (3) whether the claims arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial position; (5) the convenience of the witnesses; and (6) the location of records and other documents. *See Jumara*, 55 F.3d at 879. The public interest factors include: (1) the ability of the Court to enforce the judgment; (2) the practical considerations that could make the trial easy, expeditious, or less expensive; (3) the administrative difficulties posed by the relative congestion of the two dockets in the respective fora; (4) any local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the trial judge's familiarity with state law in diversity cases. *See id.* No one factor dominates. *See id.*

After weighing the public and private interest factors, the case is transferred if the movant establishes that the factors weigh in favor of transfer. *Express Mobile, Inc. v. Web.com Group, Inc.*, No. 19-CV-1936-RGA, 2020 WL 3971776, at *2 (D. Del. July 14, 2020) (transferring case where five factors weigh in favor of transfer and one disfavors transfer); *Harris v. Lord & Taylor LLC*, No. 18-521 (MN), 2019 WL 1854562, at *6 (D. Del. Apr. 25, 2019) (transferring case where "[f]ive factors weigh in favor in transferring the case, while one weighs against transfer and the

remaining six are neutral"); *Auto Equity Loans of Delaware, LLC v. Shapiro*, No. 18-1470 (MN), 2019 WL 4169794, at *10 (D. Del. Sept. 3, 2019) (transferring case where "[s]ix factors are neutral, one factor weighs against transfer, and five factors weigh in favor of transfer"); *Selene Commc'n Techs., LLC v. Trend Micro Inc.*, No. CV 14-435-LPS, 2015 WL 237142, at *1 (D. Del. Jan. 16, 2015) (transferring case where three factors definitively weighed in favor of transfer, two weighed against, and all others "are either neutral or slightly favor transfer"); *Nalco Co. v. AP Tech Grp. Inc.*, No. 13-1063-LPS, 2014 WL 3909114, at *1-2 (D. Del. Aug. 8, 2014) (transferring case where four factors favored transfer, one weighed against transfer and all other factors "are either neutral or favor transfer").

## IV.     THE MIDDLE DISTRICT OF FLORIDA IS A MORE CONVENIENT FORUM

### A.  The Middle District of Florida is an Appropriate Venue

For transfer to be appropriate, Arthrex must first show that "this action could have been brought in the proposed transferee venue." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 15-1108-LPS-CJB, 2017 WL 3189005, at *4 (D. Del. July 6, 2017).  In a patent infringement action, venue is proper in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *see also FG SRC LLC v. Xilinx, Inc.*, No. CV 20-601-LPS, 2021 WL 495614, at *3 (D. Del. Feb. 10, 2021).  This action could have been filed in the Middle District of Florida, where Arthrex has its principal place of business and where the products were designed and developed.  *See* § 1400(b); *Xilinx, Inc.*, 2021 WL 495614, at *3; *Blackbird Tech LLC v. Cloudflare, Inc*., No. CV 17-283, 2017 WL 4543783, at *4 (D. Del. Oct. 11, 2017).

### B.  The *Jumara* Factors Favor Transfer

The facts of this case warrant transfer.  Because both parties are located in the Middle District of Florida, relevant witnesses and sources of evidence are in the Middle District of Florida, the Accused Products were designed, developed and manufactured in Florida, and neither party nor any relevant third-party has any significant ties to Delaware, the convenience factors weigh strongly in favor of transfer.

#### a.  Private Interest Factors

##### i.  Factor 1: Plaintiff's Choice of Forum Should Be Given Little Deference Given its Lack of Presence in this District

Generally, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request."  *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  But "[w]hen a plaintiff brings its charges in a venue that is not its home forum … that choice of forum is entitled to less deference."  *In re Link_A_Media*, 662 F.3d at 1223; *Symantec Corp. v. Zscaler, Inc.*, No. CV 17-806, 2017 WL 3262246, at *3 (D. Del. July 31, 2017) (holding plaintiff's choice of forum "weighs minimally against transferring venue" despite incorporation there because it "does not have facilities, employees, or operations here"); *Selene Commc'n Techs.,* 2015 WL 237142, at *1 (holding that weight of this factor "is reduced" because although plaintiff is incorporated in Delaware its "principal place of business is in Shaker Heights, Ohio").  Like these Delaware cases, although P Tech is incorporated in Delaware, it appears to have no other connection to this District.  In fact, P Tech's principal place of business and its sole member are both located in the proposed transferee district.   Dkt. No. 1 at ¶ 1; Ex. B, Bonutti Decl. ¶ 2.

Courts in this District regularly grant motions to transfer venue despite the parties' incorporation in the state, provided the other *Jumanra* factors weigh in favor of transfer.  *See, e.g.*, *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, C.A. No. 20-1102-LPS (D. Del.), D.I. 29

transcript of January 25, 2021 telephone conference at 26–32; *NXP USA, Inc. v. Impinj, Inc*., No. CV 19-1875-RGA, 2020 WL 5665257, at *1 (D. Del. Sept. 23, 2020); *Express Mobile, Inc. v. Web.com Grp., Inc*., No. 19-CV-1936-RGA, 2020 WL 3971776, at *2 (D. Del. July 14, 2020); *Citrix Systems, Inc. v. Parallel Networks Licensing, LLC*, No. 19-2005-LPS (D. Del. May 8, 2020), D.I. 21, Report and Recommendation adopted, D.I. 23 (June 4, 2020); *Symantec*, 2017 WL 3262246, at *3. As discussed below, the other factors strongly outweigh P Tech's choice of forum in this case.

> ii. Factor 2: Defendant's Preference is to Litigate in the Middle District of Florida, Where Arthrex's Witnesses and Evidence are Located

Arthrex prefers the Middle District of Florida, where both parties are headquartered and where all of the relevant witnesses and evidence are located. Ex. A, Sodeika Decl. ¶¶ 2-3, 5, 7-11. As discussed below, the Middle District of Florida is a significantly more convenient forum for Arthrex and third-party witnesses. This factor favors transfer to the Middle District of Florida. *See McRo, Inc v. Activision Blizzard, Inc*, No. 12-1508-LPS-CJB, 2013 WL 6571618, at *4 (D. Del. Dec. 13, 2013) ("this Court has often held, the physical proximity of Defendants' places of business (and relatedly, to witnesses and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer"); *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015) (same).

> iii. Factor 3: Plaintiff's Claims Did Not Arise in Delaware

Patent infringement claims arise "wherever an infringing act takes place; however, the focus under this factor is typically on where the accused products were produced, designed, and manufactured." *Xilinx, Inc.*, 2021 WL 495614, at *4; *Papst*, 126 F. Supp. 3d at 439; *Contour*, 2017 WL 3189005, at *9. Here, all Arthrex activities related to the research, design, development, manufacturing and marketing of the Accused Products occurred in the Middle District of Florida.

Ex. A, Sodeika Decl. ¶¶ 3-5. Consequently, this factor favors transfer. *See Good Tech. Corp. v. Air Watch, LLC*, No. 14-1092-LPS-CJB, 2015 WL 296501, at *5-6 (D. Del. Jan. 21, 2015) (factor 3 favors transfer because research, design, development and marketing occurred in proposed transferee district despite accused products being marketed and sold nationwide); *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012) (same).

> iv. Factor 4: The Relative Inconvenience to the Parties Favors Transfer to the Middle District of Florida

When analyzing the relative convenience of the parties, the Court must consider "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *McRo*, 2013 WL 6571618, at *7.

It will be far more convenient for both Arthrex and P Tech employees and witnesses if this case is transferred to the Middle District of Florida as it is the principal place of business for both parties. Dkt. No. 1 at ¶ 1; Ex. A, Sodeika Decl. ¶ 2; *Symantec Corp. v. Zscaler, Inc.*, No. CV 17-806, 2017 WL 3262246, at *3 (D. Del. July 31, 2017) (finding that the convenience of the parties favored transfer where both parties were located in the transferee forum due to "[t]he associated logistical and operational costs…"). Arthrex would be inconvenienced by litigation over one thousand miles away, because several relevant employees will need to travel to Delaware for trial. *Blackbird*, 2017 WL 4543783 at *8 ("it would naturally be much more convenient and less costly for Defendants to litigate in [its home forum]."); *In Re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (employees and witnesses will not face the burden of lost productivity by attending trial rather than engaging in their ordinary business activities); *NXP United States, Inc. v. Impinj, Inc.*,

No. 19-1875-RGA, 2020 U.S. Dist. LEXIS 174612, at *7 (D. Del. Sep. 23, 2020) (courts consider the physical location and cost of travel when analyzing the convenience of the parties).

Nor can P Tech credibly argue that Delaware is relatively more convenient than its home forum in Florida.  Indeed, Peter Bonutti—sole member of P Tech and inventor of the Asserted Patents—previously filed a patent case against Arthrex in the Middle District of Florida through another of his corporate entities, thereby conceding the convenience of the district.  *Cf. Genetic Techs. Ltd. v. Natera, Inc.*, No. CV 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014) (filing prior complaints in transferee forum "effectively concede[s] the convenience" of the forum); *see also* Ex. B, Bonutti Decl. ¶ 2 (Dr. Bonutti declaring on behalf of himself and P Tech that "I currently reside, and plan on continuing to reside, in Florida.").  This should dispel any notion that it is at all inconvenient for P Tech to litigate in the Middle District of Florida.

v.  Factor 5: Convenience of Witnesses Favors Transfer to the Middle District of Florida

Convenience of the witnesses is a key consideration in deciding a motion to transfer.  *See Boram Pharm. Co. v. Life Techs. Corp.*, No. 10-31-HB, 2010 WL 2802727, at *2 (D. Del. July 14, 2010).  The Federal Circuit has found this factor critical to the transfer analysis.  *See, e.g.*, *Genentech,* 566 F.3d at 1343-44.  "Additional distance . . . means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 1343 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc)).

Arthrex has no relevant fact witnesses in Delaware; instead, all known Arthrex witnesses are in the Middle District of Florida.  Ex. A, Sodeika Decl. ¶¶ 5-6.  This includes Arthrex personnel with relevant knowledge of the design, development, sales and marketing of the Accused Products

9

who will be significantly inconvenienced by being forced to travel from Florida to Delaware.  *Id.* ¶ 5.  The Federal Circuit recently reiterated that even if these are party witnesses, "it hardly eliminates the inconvenience … it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home." *In re Hulu*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (quoting *Genetech*, 566 F.3d at 1343).  Dr. Peter Bonutti, P Tech's sole member and a named inventor on all Asserted Patents, also resides in Florida.  Ex. B, Bonutti Decl. ¶ 2.

Additionally, at least two-third party witnesses with relevant non-cumulative knowledge of the design and development of the Accused Products—Don Shuler and Bill Benavitz—also reside in the Middle District of Florida.  Ex. A, Sodeika Decl. ¶¶ 7-9.  Mr. Shuler was an employee of Arthrex for over 25 years who served as the Principal Product Engineer directly responsible for the conception and development of the accused Suture Tensioner and has unique knowledge about its design and application.  *Id.* ¶ 8.  Mr. Benavitz was an employee of Arthrex for nearly 20 years who served as the Senior Director of Product Management overseeing the design, development and marketing of several of the Accused Products and their use in shoulder and elbow applications. *Id.* ¶ 9.  These critical third-party witnesses are located outside of this Court's subpoena power but are within the subpoena power of the Middle District of Florida.  This Court has repeatedly found third-party witnesses located in the proposed transferee district favor transfer.  *See Good Tech. Corp. v. Mobilelron, Inc.*, No. 14-1308-LPS-CJB, 2015 WL 1458091, at *6 (D. Del. Mar. 27, 2015); *Contour*, 2017 WL 3189005, at *13.

Furthermore, as Judge Andrews recently recognized, "[s]ome people who would not have been worried about travel before the pandemic are now reluctant to travel." *Express Mobile*, *Inc. v. Web.com Grp., Inc.*, No. 19-1936-RGA, 2020 WL 3971776, at *4 (D. Del. July 14, 2020).

Transfer to the Middle District of Florida would prevent the need for witnesses to undergo prolonged air travel that could lead to increased exposure to the COVID-19 virus which may be minimized by remaining in Florida.

With **no** relevant sources of proof, fact witnesses or evidence in this District, this factor weighs heavily in favor of transfer to the Middle District of Florida.

vi.  <u>Factor 6: Location of Books and Records Favors Transfer to Florida</u>

Relevant documents and records are located in Naples, Florida, not Delaware.  As discussed above, all of Arthrex's relevant documents are in the Middle District of Florida.  Ex. A, Sodeika Decl. ¶ 11.  And Dr. Bonutti declared on behalf of himself and P Tech in another litigation, that Plaintiff also has relevant documents and records at its principle place of business in the Middle District of Florida.  *See* Ex. B, Bonutti Decl. ¶¶ 6, 10.  By contrast, no books or records are expected to be in Delaware.  This factor favors transfer to the Middle District of Florida.

**b.  Public Interest Factors**

i.  <u>Factor 7: Enforceability of the Judgement is Neutral</u>

Enforceability of the Judgement is not an issue in either jurisdiction.

ii.  <u>Factor 8: Practical Considerations</u>

Practical considerations that could make the trial easy, expeditious, or inexpensive favor transfer to the Middle District of Florida.  It is less expensive for Arthrex and P Tech to litigate in Florida where each entity operates its principal place of business.  *See Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *6 (D. Del. Jan. 7, 2013) (Because "the parties' aggregate litigation costs will be reduced by litigating in California … the 'practical considerations' factor weighs in favor of transfer.").  Litigation in the Middle District of Florida would also interfere less with Arthrex's operations (and presumably P Tech's) because witnesses

11

will not need to travel to Delaware, taking them away from their normal duties. When the only connection to Delaware is the parties' incorporation, and both parties and all relevant witnesses are in the transferee forum, "[t]his factor strongly favors transfer." *See Ultravision Techs., LLC v. RMG Networks Holding Corp.*, No. 18-1333-CFC, 2019 WL 1985110, at *3 (D. Del. May 6, 2019).

       iii.   Factor 9: Administrative Difficulties in Getting the Case to Trial

This case is still in its infancy and this Court has no familiarity with this matter. Arthrex is filing this Motion concurrently with its Answer to P Tech's Complaint so transfer would not cause any significant delay or waste judicial resources. *See Nottenkamper v. Modany*, No. 14-672-GMS, 2015 WL 1951571, at *5 (D. Del. Apr. 29, 2015).

The Middle District of Florida is less congested than this District: Delaware reports 942 weighted filings per judge averaging 31.2 months to trial compared with 592 weighted filings per judge averaging 26.7 months to trial in the Middle District of Florida. Ex. C.[2] Based on the higher case load and longer time to trial in Delaware, transfer is favored. *See Advanced Reimbursement Mgmt., LLC v. Plaisance*, No. 17-667 (MN), 2019 WL 2502931, at *4 (D. Del. June 17, 2019) ("[I]ncreased times from filing to . . . trial [is an] important factor[ ] that . . . influence[s] the court's calculus.") (quoting *W.R. Berkley Corp. v. Niemela*, No. 17-0032-GMS, 2017 WL 4081871, at *5 (D. Del. Sept. 15, 2017); *Virentem Ventures, LLC v. YouTube, LLC*, No. 18-917 (MN), 2019 WL 2131877, at *5 (D. Del. May 16, 2019) (greater average time to trial in the transferor district favored transfer); *Applied Predictive Techs., Inc. v. MarketDial, Inc*., No. 18-963-CFC, 2019 WL 2745724, at *5 (D. Del. July 1, 2019) (finding court congestion in Delaware

---

[2] Exhibit C is an excerpt from the June 2021 Federal Court Management Statistics report. The full version of the report is available at:
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf.

favors transfer); *NXP USA, Inc. v. IMPINJ, Inc.*, No. 19-1875-RGA, 2020 WL 5665257, at *4 (D. Del. Sept. 23, 2020) (same).

### iv.   Factor 10: Local Interests Favor Transfer

Local interest in this matter also weighs heavily in favor of transfer, because both of these parties operate their businesses from the Middle District of Florida.  In patent cases, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . .  if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."  *In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (citations omitted).  The Federal Circuit has held there is a "significant interest" in trying a case "in a venue in which the accused product was designed." *See In re Toa Techs., Inc.*, 543 F. App'x 1006, 1010 (Fed. Cir. 2013); *In re HP Inc.*, 826 Fed.App'x. 899, 2020 WL 5523561, at *1, *4 (Fed. Cir. Sept. 15, 2020) (noting that district court "correctly labeled the local interest factor in favor of transfer" where "specifically, the development of the accused products" occurred).  Here, that venue is the Middle District of Florida, where both parties have headquarters and Arthrex employs over 3000 local workers.  Ex. A, Sodeika Decl. ¶¶ 2, 12. This factor weighs in favor of transfer.  *See In Re Samsung Elecs. Co., Ltd.,* 2 F.4 1371, 1380 (Fed. Cir. 2021) (holding "[l]ocal interests are not a fiction," and finding that because most of the accused products were "researched, designed, and developed … in Northern California. These are significant factors that give the Northern District of California a legitimate interest in adjudicating the cases 'at home.'").

### v.   Factor 11: Public Policies of the Fora

This factor should be neutral.  *NXP USA, Inc*., 2020 WL 5665257, at *1 (Delaware's public policy of "promot[ing] incorporation in Delaware and to provide respected courts for the resolution

of business disputes involving Delaware corporations" does not weigh against transfer of a patent case); *Signal Tech, LLC*, 2012 WL 1134723 at *4.  Even if the Court finds that some public policy exists for Delaware entities to resolve disputes in Delaware, this factor is given "minimal weight." *Altera*, 842 F. Supp. 2d at 760.

> vi.   Factor 12: Familiarity with Applicable State Law

This case does not implicate state law. Therefore, this factor is neutral.

## V. CONCLUSION

Both parties are based in the Middle District of Florida and all relevant witnesses, documents, and sources of evidence are in the Middle District of Florida.  None are in Delaware. Accordingly, Arthrex respectfully requests that this case be transferred to the Middle District of Florida.

OF COUNSEL:

Megan S. Woodworth
Robert C. Tapparo
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000

Manny J. Caixeiro
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
(310) 229-9656

Robert E. Bugg
Venable LLP
1270 Avenue of the Americas
New York, NY 10020
(212) 370-6241
Dated:  September 22, 2021

*/s/ Kelly E. Farnan*
Kelly E. Farnan (# 4395)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com

*Attorneys for Defendant Arthrex, Inc.*

14